1   STEPHANIE M. HINDS (CABN 154284)
    United States Attorney
2   MICHELLE LO (NYRN 4325163)
    Chief, Civil Division
3   KENNETH W. BRAKEBILL (CABN 196696)
    Assistant United States Attorney
4   KELSEY J. HELLAND (CABN 298888)
    Assistant United States Attorney
5        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
6        Telephone: (415) 436-7167
         Facsimile: (415) 436-7169
7        Kenneth.Brakebill@usdoj.gov

8   Attorneys for the United States of America

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                          OAKLAND DIVISION
12

13  EDUARDO I.T., et al.,                 )  CASE NO. 4:22-cv-05333-DMR
                                          )
14            Plaintiffs,                 )  **NOTICE OF MOTION AND MOTION TO**
                                          )  **TRANSFER; MOTION TO DISMISS**
15       v.                               )  **PLAINTIFFS' COMPLAINT**
                                          )
16  UNITED STATES OF AMERICA,             )  Date:   January 26, 2023
                                          )  Time:   1:00 p.m.
17            Defendant.                   )  Place:  Remote via Videoconference or Zoom
                                          )
18  _____      )  The Hon. Donna M. Ryu

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................................................1

RELIEF REQUESTED .........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.   INTRODUCTION ........................................................................................................1

II.  FACTUAL AND LEGAL BACKGROUND .................................................................2

    A.   Statutory Framework for Noncitizens Entering the Country. ...............................2

    B.   Statutory Framework for Immigration Custody Relating to Unaccompanied
         Minors. .................................................................................................................3

    C.   Flores Agreement Requirements ............................................................................4

    D.   Executive Branch Directives Regarding Immigration Enforcement. ....................5

    E.   Detention, Separation and Reunification of Plaintiffs. .........................................6

        1.   Plaintiff Family One: Eduardo I.T. and Edwin E.I.I. .................................6

        2.   Plaintiff Family Two: Ignacio P.G. and Leonel Y.P.G. .............................7

        3.   Plaintiff Family Three: Benjamin J.R. and William A.J.M. ......................7

    F.   Subsequent Policy Changes. .................................................................................8

III. LEGAL STANDARDS .................................................................................................8

    A.   Transfer Under 28 U.S.C. § 1404(a). ....................................................................8

    B.   Dismissal for Lack of Subject Matter Jurisdiction. ..............................................9

IV.  ARGUMENT ..............................................................................................................10

    A.   The Court Should Transfer This Action to the District of Arizona. ....................10

        1.   Venue Is Proper in the District of Arizona. ............................................10

        2.   The Balance of Relevant Factors Strongly Favors Transfer to the
             District of Arizona. ................................................................................11

            a.   Most Operative Facts Alleged in Plaintiffs' Complaint
                 Occurred in Arizona. ...................................................................11

            b.   The Convenience and Interests of the Parties Favor Transfer to
                 the District of Arizona. ................................................................12

            c.   The Interests of Justice Favor Transfer to the District of
                 Arizona. .......................................................................................15

B.   In the Alternative, Plaintiffs' Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction. ....................................................................................16

   1.   Plaintiffs' Claims Are Barred By the Discretionary Function Exception. ..............................................................................................17

      a.   Legal Standard for Discretionary Function Exception Analysis. ..............17

      b.   The Decision to Detain Plaintiffs Separately Is Subject to Discretion Grounded in Policy Considerations..........................................19

      c.   Plaintiffs' Remaining Claims Concerning their Detentions Are Barred by the DFE. ..............................................................................23

      d.   Plaintiffs' Assertion of Unconstitutional Conduct Does Not Preclude Application of DFE in this Case. ..............................................24

   2.   Plaintiffs' Claims Relating to the Decision to Detain Them Separately From Their Children Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law. ........................................................26

   3.   Plaintiffs' Claims Are Barred Because There Is No Private-Person Analogue. ................................................................................................27

   4.   Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort Claims. ...................................................................................................28

   5.   Plaintiffs' Claims Based On Conduct at Private Facilities Are Barred by the FTCA's Independent Contractor Exclusion................................................29

V.   CONCLUSION...........................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.P.F. v. United States*,
492 F. Supp. 3d 989 (D. Ariz. 2020) ............................................................. 25, 27, 28

*Accardi v. United States*,
435 F.2d 1239 (3d Cir. 1970) ......................................................................... 26

*Adams v. United States*,
420 F.3d 1049 (9th Cir. 2005) ....................................................................... 28

*Antonelli v. Crow*,
No. 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012) ........................... 24

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*,
571 U.S. 49 (2013) ......................................................................................... 9

*Autery v. United States*,
424 F.3d 944 (9th Cir. 2005) ......................................................................... 30

*Baie v. Sec'y of*,
*Def.*, 784 F.2d 1375 (9th Cir. 1986) ............................................................... 21

*Bailor v. Salvation Army*,
51 F.3d 678 (7th Cir. 1995) ........................................................................... 21

*Barroca v. United States*,
No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) ......... 11, 12

*Barton v. Barr*,
140 S. Ct. 1442 (2020) ................................................................................... 2, 3

*Berkovitz v. United States*,
486 U.S. 531 (1988) ....................................................................................... 17, 18, 22

*Bhuiyan v. United States*,
772 F. App'x 564 (9th Cir. 2019) .................................................................. 28

*Borquez v. United States*,
773 F.2d 1050 (9th Cir. 1985) ....................................................................... 26

*Bromlow v. D & M Carriers, LLC*,
438 F. Supp. 3d 1021 (N.D. Cal. 2020) ......................................................... 9

*Bultema v. United States*,
359 F.3d 379 (6th Cir. 2004) ......................................................................... 24

*Bunikyte v. Chertoff*,
No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ............................ 4, 21

*C.M. v. United States*,
2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ................................................. 28

*Campos v. United States*,
888 F.3d 724 (5th Cir. 2018) ......................................................................... 23

*Canal A Media Holding, LLC v. United States Citizenship & Immigration Servs.*,
No. 17-cv-6491, 2018 WL 7297829 (C.D. Cal. Sept. 30, 2018) ................... 15, 16

*Chadd v. United States*,
794 F.3d 1104 (9th Cir. 2015) ....................................................................... 17

*Chen v. United States*,
854 F.2d 622 (2d Cir. 1988) ........................................................................... 27

*Clark v. Suarez Martinez*,
  543 U.S. 371 (2005), .......................................................................................... 20
*Cohen v. United States*,
  151 F.3d 1338 (11th Cir. 1998) ........................................................................ 21
*Comm. of Cent. Am. Refugees v. I.N.S.*,
  795 F.2d 1434 (9th Cir. 1986) .......................................................................... 20
*Commodity Futures Trading Comm'n v. Savage*,
  611 F.2d 270 (9th Cir. 1979) .............................................................................. 9
*Conrad v. United States*,
  447 F.3d 760 (9th Cir. 2006) ............................................................................ 12
*Cosby v. Marshals Service*,
  520 F. App'x 819 (11th Cir. 2013) ................................................................... 24
*Ctr. for Biological Diversity v. Kempthorne*,
  No. 08-cv-1339-CW, 2008 WL 4543043 (N.D. Cal. Oct. 10, 2008) ................. 9
*D.B. v. Poston*,
  119 F. Supp. 3d 472 (E.D. Va. 2015) ............................................................... 21
*Dalehite v. United States*,
  346 U.S. 15 (1953) ............................................................................................ 26
*Denson v. United States*,
  574 F.3d 1318 (11th Cir. 2009) ........................................................................ 25
*Dreier v. United States*,
  106 F.3d 844 (9th Cir. 1997) ............................................................................ 10
*Dupree v. United States*,
  247 F.2d 819 (3d Cir. 1957) ............................................................................. 26
*Elgamal v. Bernacke*,
  714 F. App'x 741 (9th Cir. 2018) ..................................................................... 28
*Elgamal v. United States*,
  No. 13-00967, 2015 WL 13648070 (D. Ariz. July 8, 2015) ............................ 28
*Est. of Smith v. Shartle*,
  18-00323-TUC-RCC, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020) ................ 28
*F.D.I.C. v. Meyer*,
  510 U.S. 471 (1994) .................................................................................... 10, 17
*Fazaga v. Fed. Bureau of Investigation*,
  965 F.3d 1015 (9th Cir. 2020) .......................................................................... 24
*FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*,
  592 F.2d 364 (7th Cir. 1979) ............................................................................ 26
*Fisher Bros. Sales, Inc. v. United States*,
  46 F.3d 279 (3d Cir. 1995) ............................................................................... 22
*Flores v. Lynch*,
  828 F.3d 898 (9th Cir. 2016) ..................................................................... 4, 5, 21
*Flores v. Rosen*,
  984 F.3d 720 (9th Cir. 2020) .............................................................................. 4
*Gandarillas-Zambrana v. BIA*,
  44 F.3d 1251 (4th Cir. 1995) ............................................................................ 20
*Garza v. United States*,
  161 F. App'x 341 (5th Cir. 2005) ..................................................................... 24
*GATX/Airlog Co. v. United States*,
  286 F.3d 1168 (9th Cir. 2002) .......................................................................... 18

*Gonzalez v. United States*,
  814 F.3d 1022 (9th Cir. 2016) ............................................................. 17, 19, 22
*Hansen v. Combined Transp., Inc.*,
  No. 13-cv-1298, 2013 WL 5969863 (W.D. Wash. Nov. 7, 2013)............... 12, 15
*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952).................................................................................... 20
*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982).................................................................................... 25
*Harrison v. Fed. Bureau of Prisons*,
  464 F. Supp. 2d 552 (E.D. Va. 2006) ......................................................... 24
*Hernandez v. United States*,
  83 F. App'x 206 (9th Cir. 2003) ................................................................. 21
*In re Sealed Case*,
  829 F.2d 50 (D.C. Cir. 1987)....................................................................... 20
*J.F.G. v. Hott*,
  921 F.3d 204 (4th Cir. 2019) ....................................................................... 25
*Joe Boxer Corp. v. R. Siskind & Co., Inc.*, No. C,
  98–4899 SI, 1999 WL 429549 (N.D. Cal. June 8, 1999) ............................ 15
*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ......................................................................... 9
*Kelly v. United States*,
  241 F.3d 755 (9th Cir. 2001) ....................................................................... 17
*Kennewick Irr. Dist. v. United States*,
  880 F.2d 1018 (9th Cir. 1989) ..................................................................... 19
*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994).................................................................................... 10
*Koval v. United States*,
  No. 2:13-CV-1630-HRH, 2013 WL 6385595 (D. Ariz. Dec. 6, 2013) ......... 11
*Lam v. United States*,
  979 F.3d 665 (9th Cir. 2020) ................................................................. 18, 19, 22
*Lee v. United States*,
  No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) .................. 28, 29
*Lehman v. Nakshian*,
  453 U.S. 156 (1981).................................................................................... 17
*Letnes v. United States*,
  820 F.2d 1517 (9th Cir. 1987) ..................................................................... 30
*Lineberry v. United States*,
  No. 3:08-cv-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009).................. 24
*Lipsey v. United States*,
  879 F.3d 249 (7th Cir. 2018) ....................................................................... 21
*Logue v. United States*,
  412 U.S. 521 (1973).................................................................................... 30
*Medina v. United States*,
  259 F.3d 220 (4th Cir. 2001) ....................................................................... 22
*Mejia-Mejia v. ICE*,
  18-1445 (PLF), 2019 WL 4707150 (D.D.C. Sept. 26, 2019) ...................... 22
*Miller v. United States*,
  163 F.3d 591 (9th Cir. 1998) ....................................................................... 18

*Mirmehdi v. United States*,
    689 F.3d 975 (9th Cir. 2012) ............................................................................... 20
*Morris v. Safeco Ins. Co.*,
    No. C 07-2890 PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ...................... 14
*Ms. L v. ICE*,
    302 F. Supp. 3d 1149 (C.D. Cal. 2018) ............................................................... 25
*Murillo v. United States Dep't of Justice*,
    No. CV 21-00425-TUC-CKJ, 2022 WL 16745333 (D. Ariz. Nov. 7, 2022) .................... 21
*Nordquist v. Blackham*,
    No. C06-5433 FDB, 2006 WL 2597931 (W.D. Wash. Sept. 11, 2006) ...................... 14, 15
*Nurse v. United States*,
    226 F.3d 996 (9th Cir. 2000) ............................................................... 17, 18, 19, 24
*Park v. Dole Fresh Vegetables, Inc.*,
    964 F. Supp. 2d 1088 (N.D. Cal. 2013) ............................................................... 14
*Patel v. United States*,
    398 F. App'x 22 (5th Cir. 2010) ......................................................................... 24
*Payne-Barahona v. Gonzalez*,
    474 F.3d 1 (1st Cir. 2007) ................................................................................. 25
*Peña Arita v. United States*,
    *470* F. Supp. 3d 663 (S.D. Tex. 2020) ........................................................ 21, 22, 23
*Powell v. United States*,
    233 F.2d 851 (10th Cir. 1956) ........................................................................... 26
*Reed ex rel. Allen v. U.S. Dep't of Interior*,
    231 F.3d 501 (9th Cir. 2000) ............................................................................. 18
*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)........................................................................................... 20
*Reynolds v. United States*,
    549 F.3d 1108 (7th Cir. 2008) ........................................................................... 19
*Robinson v. United States*,
    586 F.3d 683 (9th Cir. 2009) ............................................................................. 10
*Routh v. United States*,
    941 F.2d 853 (9th Cir. 1991) ............................................................................. 19
*Sabow v. United States*,
    93 F.3d 1445 (9th Cir. 1996) ............................................................................. 17
*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ........................................................................... 10
*Santana-Rosa v. United States*,
    335 F.3d 39 (1st Cir. 2003) ............................................................................... 21
*Sasso v. Milhollan*,
    735 F. Supp. 1045 (S.D. Fla. 1990) .................................................................... 20
*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
    343 F.3d 1036 (9th Cir. 2003) ............................................................................. 9
*Sickman v. United States*,
    184 F.2d 616 (7th Cir. 1950) ............................................................................. 26
*Sierra Club v. Whitman*,
    268 F.3d 898 (9th Cir. 2001) ............................................................................. 10
*Smith v. Corizon Health, Inc.*,
    No. 16-cv-00517-WHA, 2016 WL 1275514 (N.D. Cal. Apr. 1, 2016) ...................... 9

*Smith v. United States*,
  375 F.2d 243 (5th Cir. 1967) ............................................................................... 20
*Sorensen v. Daimler Chrysler AG*,
  No. C 02-4752 MMC (EDL), 2003 WL 1888866 (N.D. Cal. Apr. 11, 2003) ..................................... 15
*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................................................. 9
*Teplin v. United States*,
  No. 17-cv-02445-HSG, 2018 WL 1471907 (N.D. Cal. Mar. 26, 2018) ......................................... 17, 18
*Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*,
  594 F.2d 730 (9th Cir. 1979) ................................................................................ 10
*United States v. Armstrong*,
  517 U.S. 456 (1996) .......................................................................................... 19
*United States v. Dominguez-Portillo*,
  No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ................................................ 4, 21
*United States v. Gaubert*,
  499 U.S. 315 (1991) .................................................................................... passim
*United States v. Lopez-Flores*,
  63 F.3d 1468 (9th Cir. 1995) ................................................................................ 20
*United States v. Nixon*,
  418 U.S. 683 (1974) .......................................................................................... 20
*United States v. Olson*,
  546 U.S. 43 (2005) ........................................................................................... 27
*United States v. Orleans*,
  425 U.S. 807 (1976) ...................................................................................... 29, 30
*United States v. Testan*,
  424 U.S. 392 (1976) .......................................................................................... 17
*United States v. Varig Airlines*,
  467 U.S. 797 (1984) ...................................................................................... 18, 22
*Valdez v. United States*,
  56 F.3d 1177 (9th Cir. 1995) ................................................................................ 28
*Van Dinh v. Reno*,
  197 F.3d 427 (10th Cir. 1999) ............................................................................... 20
*W.S.R. v. Sessions*,
  318 F. Supp. 3d 1116 (N.D. Ill. 2018) ....................................................................... 25
*Walding v. United States*,
  955 F. Supp. 2d 759 (W.D. Tex. 2013) ........................................................................ 29
*Westbay Steel, Inc. v. United States*,
  970 F.2d 648 (9th Cir. 1992) ................................................................................ 27
*Whisnant v. United States*,
  400 F.3d 1177 (9th Cir. 2005) ............................................................................... 18
*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ............................................................................... 10
*Wilbur P.G. v. United States*,
  No. 4:21-cv-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022) ....................................... 16, 22
*Williams v. Bowman*,
  157 F. Supp. 2d 1103 (N.D. Cal. 2001) ....................................................................... 14

**Statutes**

6 U.S.C. § 279 ............................................................................................................. 3, 21

8 U.S.C. § 1231 ................................................................................................................ 20

8 U.S.C. § 1232 ........................................................................................................ 3, 4, 26

8 U.S.C. § 1325 .................................................................................................................. 5

28 U.S.C. § 1346 ..................................................................................................... 8, 17, 27

28 U.S.C. § 1402 ............................................................................................................ 9, 11

28 U.S.C. § 1404 ....................................................................................................... passim

28 U.S.C. § 2674 ............................................................................................................... 27

28 U.S.C. § 2680 ................................................................................................... 17, 19, 26

Arizona Revised Statutes § 46-455 .................................................................................. 28

**Rules**

Federal Rule of Civil Procedure 12 ................................................................................... 9

Federal Rule of Civil Procedure 45 ................................................................................. 14

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on January 26, 2023, at 1:00 p.m., or as soon thereafter as the parties may be heard, in the above-entitled Court, before the Honorable Donna M. Ryu, United States Magistrate Judge, Defendant United States of America ("Defendant") will and hereby does move this Court for an order transferring this matter to the District of Arizona pursuant to 28 U.S.C. § 1404(a), or, in the alternative, dismissing Plaintiffs' Complaint. Defendant's motion is based on this Notice; the following Memorandum of Points and Authorities; the supporting Declarations of Kelsey J. Helland and James De La Cruz submitted herewith; matters of which the Court takes judicial notice; and such oral argument and additional evidence as the Court may permit.

### RELIEF REQUESTED

Defendant seeks an order transferring this case to the District of Arizona pursuant to 28 U.S.C. § 1404(a), or, in the alternative, dismissing the Complaint.

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is an action under the Federal Tort Claims Act ("FTCA") alleging injuries to three parents and their respective children caused by Defendant's implementation of a policy to refer for prosecution all individuals suspected of illegally entering the United States at the United States–Mexico border (referred to herein as the "Zero-Tolerance Policy") in May 2018. Plaintiffs assert six causes of action under the laws of Arizona, Texas, New Mexico, and California, for intentional infliction of emotional distress, negligence, abuse of process, negligent supervision/breach of fiduciary duty, loss of consortium, and intentional interference with custodial relations arising out of Plaintiffs' separation after crossing into the United States. *See* ECF No. 1 ("Compl.") ¶¶ 186-210.

The United States has denounced the prior practice of separating children from their families at the United States–Mexico border and "condemn[ed] the human tragedy" that occurred because of the Zero-Tolerance Policy. Establishment of Interagency Task Force on the Reunification of Families, Exec. Order 14,011, § 1, 86 Fed. Reg. 8273, 8273 (Feb. 5, 2021). And this Administration has committed the federal government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly

necessary for the safety and well-being of the child or is required by law." *Id.* The Court should not, however, reach the merits of Plaintiffs' FTCA claims for two reasons.

First, the District of Arizona is the most appropriate forum for this litigation, and the Court should transfer this action to that District pursuant to 28 U.S.C. § 1404(a). Plaintiffs crossed the United States–Mexico border into the state of Arizona; the Plaintiff parents were separated from their children in Arizona; a substantial amount of the detention of Plaintiff parents occurred in Arizona; and one of the Plaintiff children was placed in a shelter in Arizona. None of the actionable conduct challenged in Plaintiffs' Complaint occurred in this District. The United States therefore respectfully requests that the Court transfer this action to the District of Arizona for all further proceedings, for the convenience of the parties and witnesses, and in the interest of justice.

If the Court determines not to transfer this case, Defendant respectfully requests that the Complaint be dismissed for lack of subject-matter jurisdiction. Any injuries caused by the Zero-Tolerance Policy and related initiatives are not compensable as torts under the FTCA because Congress has not waived the federal government's sovereign immunity from claims for money damages in these circumstances. Although the United States recognizes that district courts adjudicating FTCA claims arising out of the Zero-Tolerance Policy have to date reached differing conclusions on the threshold jurisdictional arguments presented in this motion to dismiss, the United States respectfully submits that on the better reading of the law, Congress has not waived sovereign immunity and Plaintiffs may not recover under the FTCA.

## II.    FACTUAL AND LEGAL BACKGROUND

### A.    Statutory Framework for Noncitizens[1] Entering the Country.

Under Section 1325 of Title 8 of the U.S. Code, when an individual enters the United States between official ports of entry, he or she may be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C. § 1325(a). A violation of § 1325(a) is a misdemeanor that is punishable by a fine and "imprison[ment]

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

1   not more than 6 months" for a first infraction. *Id.*

2       All noncitizens who arrive in the United States, including those who arrive between ports of

3   entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to

4   determine their admissibility to the United States. *Id.* §§ 1225(a)(1), (a)(3), (b). Individuals arriving at

5   the border or found in the United States within 14 days and 100 miles of the border who, following

6   inspection, are deemed inadmissible also are subject to expedited removal from the United States and

7   detention pending such removal. *See id.* §§ 1225(b)(1)(A)(i), (b)(1)(B)(iii)(IV). In some cases, the

8   Department of Homeland Security ("DHS") may exercise its discretion to release a noncitizen from

9   custody. *See, e.g.*, 8 C.F.R. § 235.3(b)(2)(iii).

10      **B.**    **Statutory Framework for Immigration Custody Relating to Unaccompanied Minors.**

12      Federal immigration law authorizes the United States to provide for the custody and care of

13  minor children entering the United States without authorization. Specifically, the Department of Health

14  and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement

15  of unaccompanied alien children who are in federal custody by reason of their immigration status." 6

16  U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien

17  child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States";

18  (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal

19  guardian in the United States [or] no parent or legal guardian in the United States is available to provide

20  care and physical custody." 6 U.S.C. § 279(g)(2).

21      Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in

22  the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such

23  child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien

24  child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the

25  best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR "shall not release such children upon

26  their own recognizance." 6 U.S.C. § 279(b)(2)(B). Rather, once in ORR custody, there are detailed

27  statutory and regulatory provisions that must be applied before the child is released to an approved

28  sponsor. *See* 8 U.S.C. § 1232(c)(3). Congress requires that "an unaccompanied alien child may not be

1   placed with a person . . . unless the Secretary of Health and Human Services makes a determination that

2   the proposed custodian is capable of providing for the child's physical and mental well-being" and that

3   "[s]uch determination shall, at a minimum, include verification of the custodian's identity and

4   relationship to the child, if any, as well as an independent finding that the individual has not engaged in

5   any activity that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances, a

6   home study is required. *Id.* § 1232(c)(3)(B).

7       **C.      Flores Agreement Requirements.**

8       In 1996, the federal government entered into a settlement agreement referred to as the "Flores

9   Agreement." *See, e.g.*, *Flores v. Sessions*, No. 85-cv-4544, ECF No. 101 (C.D. Cal. Feb. 2, 2015)

10  (*Flores I*). The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of

11  minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir.

12  2016) (*Flores II*) (citing Flores Agreement ¶ 9). Under a binding interpretation of the Ninth Circuit, the

13  Flores Agreement "unambiguously" applies both to unaccompanied minors and to minors who are

14  encountered together with their parents or legal guardians. *Id.* at 901. Under the Flores Agreement, the

15  government must expeditiously transfer any minor who cannot be released from custody to a non-

16  secure, licensed facility. *Id.* at 902-03 (quoting Flores Agreement ¶ 12). The government must also

17  "make and record the prompt and continuous efforts on its part toward . . . release of the minor." *Flores*

18  *v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (*Flores III*) (quoting Flores Agreement ¶ 14).

19      Notably, the Flores Agreement applies only to minors. *Flores II*, 828 F.3d at 901. It "does not

20  address . . . the housing of family units and the scope of parental rights for adults apprehended with their

21  children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because

22  that would not be a 'release.'" *Id.* at 906; *see also United States v. Dominguez-Portillo*, No. 17-MJ-

23  4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[Flores] does not provide that parents are

24  entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").

25  Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release.

26  *Flores II*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v.*

27  *Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). Although the Flores

28  Agreement gives preference to the release of minors to a parent, this preference "does not mean that the

1    government must also make a parent available; it simply means that, if available, a parent is the first

2    choice." *Flores II*, 828 F.3d at 908.

3           **D.    Executive Branch Directives Regarding Immigration Enforcement.**

4           During the time period relevant to this action, the Executive Branch issued several directives

5    regarding enforcement of federal immigration laws. First, Executive Order No. 13767 was issued in

6    January 2017 and stated that "[i]t is the policy of the executive branch to . . . detain individuals

7    apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending

8    further proceedings regarding those violations[.]" Executive Order 13767 § 2(b), 82 Fed. Reg. 8793

9    (Jan. 30, 2017) ("EO 13767"). That Executive Order directed DHS to "ensure the detention of aliens

10   apprehended for violations of immigration law pending the outcome of their removal proceedings or

11   their removal from the country to the extent permitted by law," *id.* § 6, and to exercise its parole

12   authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all

13   circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public

14   benefit derived from such parole," *id.* § 11(d).

15          Second, on April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed

16   commitment to criminal immigration enforcement and directed that federal law enforcement prioritize

17   the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325. *See* U.S.

18   DOJ Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017),

19   *available at* https://www.justice.gov/opa/press-release/file/956841/download.

20          Third, on April 6, 2018, DOJ issued a "Memorandum for Federal Prosecutors along the

21   Southwest Border." U.S. DOJ News Release: Attorney General Announces Zero-Tolerance Policy for

22   Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (the "Zero-Tolerance

23   Memorandum"). The memorandum directed federal prosecutors along the Southwest border "to the

24   extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all

25   offenses referred for prosecution under section 1325(a)." *Id.* In addition, on May 4, 2018, the DHS

26   Secretary directed officers and agents to ensure that all adults, including parents or legal guardians

27   traveling with minor children, deemed prosecutable for improper entry in violation of 8 U.S.C.

28   § 1325(a) be referred to the DOJ for criminal prosecution. Consistent with EO 13767 and the April 2018

1   Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of adults –

2   including those traveling with children – who unlawfully entered the United States on the Southwest

3   border in violation of Section 1325. *See generally* Executive Order 13767. Minor children of those

4   adults were designated as UACs and were transferred to ORR custody as required by the TVPRA. *See*

5   *generally* William Wilberforce Trafficking Victims Protection Reauthorization Act (2013).

6         **E.    Detention, Separation and Reunification of Plaintiffs.**

7         According to the Complaint, Plaintiffs are "three pairs of indigenous Guatemalan fathers and

8   children" (Compl. ¶ 1):  Eduardo I.T. and his son Edwin E.I.I.; Ignacio P.G. and his son Leonel Y.P.G.;

9   and Benjamin J.R. and his son William A.J.M. (collectively "Plaintiffs"). *Id.* ¶¶ 8-10.[2]  Plaintiffs

10  illegally crossed the United States-Mexico border in May or June 2018. *See id.* ¶¶ 68, 106, 127. Shortly

11  after crossing the border into Arizona, Plaintiffs were apprehended by Arizona Border Patrol Agents

12  with U.S. Customs and Border Protection ("CBP") and initially held in CBP facilities in Arizona. *Id.*

13  ¶¶ 68, 106-07, 127-28. Plaintiffs allege that "[t]he government forcibly separated" each Plaintiff parent

14  from his child "in CBP's Arizona facilities." *Id.* ¶ 66.

15        **1.    Plaintiff Family One: Eduardo I.T. and Edwin E.I.I.**

16        Eduardo I.T. and his son Edwin E.I.I. entered the United States illegally on or about May 9,

17  2018, near San Luis, Arizona. Compl. ¶ 68. They were encountered and apprehended by Border Patrol

18  Agents in Arizona. *Id.* Eduardo I.T. and Edwin E.I.I. were transported to the Yuma Border Patrol Station

19  in Yuma, Arizona. *Id.* Eduardo I.T. remained in CBP custody in Yuma, Arizona, for approximately one

20  week, at which time he was allegedly transferred to a facility in San Diego, California. *Id.* ¶¶ 83-84. He

21  was transferred to the CBP Border Patrol Station in either Yuma or Wellton, Arizona. *Id.* ¶ 87. Eduardo

22  I.T. was subsequently transferred to ICE custody, at the Florence Correctional Facility in Florence,

23  Arizona. *Id.* ¶ 89. Thereafter, he was transferred to the Eloy, Arizona ICE Detention Facility. *Id.* ¶ 90.

24        Eduardo I.T. and Edwin E.I.I. were separated on or about May 9, 2018, at the Yuma Border

25  Patrol Station. *Id.* ¶ 70. Edwin E.I.I. was processed as a UAC, transferred into the care and legal custody

26  of ORR and placed at St. Peter-St. Joseph Children's Home, in San Antonio, Texas, on May 13, 2018.

27

28        [2] Solely for the purposes of these motions, Defendant accepts as true those portions of Plaintiff's Complaint cited herein, unless otherwise noted.

*Id.* ¶ 79; Declaration of James De La Cruz ("De La Cruz Decl.") ¶ 13. According to the Complaint, Edwin E.I.I. was separated from his father for nearly 15 weeks. Compl. ¶ 71. Edwin E.I.I. was discharged from ORR custody on or around July 23, 2018. De La Cruz Decl. ¶ 13. In August 2018, Eduardo I.T. and Edwin E.I.I. were reunited. Compl. ¶ 98. They were detained together at the Karnes County Residential Center in Karnes City, Texas. *Id.* ¶ 99. Over the next two weeks, they were interviewed by an asylum officer from U.S. Citizenship and Immigration Services ("USCIS") and subsequently released from ICE custody. *Id.* ¶¶ 99-100.

### 2.      Plaintiff Family Two: Ignacio P.G. and Leonel Y.P.G.

Ignacio P.G. and his son Leonel Y.P.G. allegedly entered the United States illegally on or about May 18, 2018, were encountered by Border Patrol Agents near San Luis, Arizona and apprehended for illegal entry. *See id.* ¶ 106. They were transported to the Yuma Border Patrol Station in Yuma, Arizona. *Id.* ¶ 107. Ignacio P.G. was criminally prosecuted in the District of Arizona for unlawfully entering the United States. Declaration of Kelsey J. Helland ("Helland Decl.") ¶ 2 & Ex. A; *but see* Compl. ¶ 123. Thereafter, Ignacio P.G. was allegedly transferred to the Otero County ICE Processing Center in Chaparral, New Mexico. Compl. ¶ 117. On or about July 19, 2018, Ignacio P.G. was released from custody. *Id.* ¶ 122.

Ignacio P.G. and Leonel Y.P.G. were allegedly separated on or about May 19, 2018, at the Yuma Border Patrol Station in Arizona. *Id.* ¶ 112. Leonel Y.P.G. was processed as a UAC, transferred into the care and legal custody of ORR and placed at Harlingen, Texas. Compl. ¶ 121; De La Cruz Decl. ¶ 14. According to the Complaint, Leonel Y.P.G. was separated from his father for nearly two months. Compl. ¶ 121. On or about July 19, 2018, Ignacio P.G. and Leonel Y.P.G. were reunited and released from custody. *Id.* ¶ 122; De La Cruz Decl. ¶ 14.

### 3.      Plaintiff Family Three: Benjamin J.R. and William A.J.M.

Benjamin J.R. and his son William A.J.M. entered the United States illegally on or about June 2, 2018, near San Luis, Arizona. Compl. ¶ 127. They were encountered by Border Patrol Agents, apprehended for illegal entry, and transported to the Yuma Border Patrol Station in Arizona. *Id.* ¶ 128. Benjamin J.R. was allegedly transferred to different facilities, including the Federal Correctional Institution Victorville, in Victorville, California, and the Adelanto ICE Processing Center in Adelanto,

California. *Id.* ¶¶ 142, 146, 147, 152. After receiving a credible fear interview in January 2019, Benjamin J.R. was released from ICE custody in March 2019 on a $10,000 bond. *Id.* ¶¶ 166-67.

Benjamin J.R. and William A.J.M. were separated on or about June 2, 2018. *Id.* ¶¶ 133, 139. William A.J.M. was processed as a UAC, transferred into the care and legal custody of the ORR and placed at the Southwest Key Program's Casa Kokopelli facility in Mesa, Arizona, on or around June 4, 2018. Compl. ¶¶ 150, 156; De La Cruz Decl. ¶ 15. In November 2018, William A.J.M. was released to family members in Oakland, California. Compl. ¶ 164; De La Cruz Decl. ¶ 15. According to the Complaint, Benjamin J.R. and William A.J.M. were separated for over nine months. Compl. 42:10-11. After Benjamin J.R. was released on bond in March 2019, he travelled to Oakland, California, and was reunited with William A.J.M. *Id.* ¶ 167.

### F.    Subsequent Policy Changes.

After assuming office, President Biden took action to undo the policies that led to Plaintiffs' separation and to reunify the families that were affected by those policies. On February 2, 2021, the President issued an Executive Order that condemned the "human tragedy" of the prior Administration's Zero-Tolerance Policy, and that committed the United States government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law." Family Reunification Task Force EO § 1. That Order created a Task Force to identify and reunify families separated under the Zero-Tolerance Policy, and to make recommendations for the potential provision of immigration benefits and mental-health services to those separated families. *Id.* § 4. In September 2022, the Task Force issued a report showing that 2,766 children had been reunified and that 191 additional children were in the process of being reunified by the Task Force. Interim Progress Report, Interagency Task Force on the Reunification of Families 6 (Sep. 30, 2022).

## III.    LEGAL STANDARDS

### A.    Transfer Under 28 U.S.C. § 1404(a).

The FTCA provides an avenue for individuals to sue the federal government for conduct that constitutes a tort under state law. The applicable substantive state law is "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Venue for an FTCA claim is governed by Title 28,

Section 1402(b), which permits such a claim to be prosecuted "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b).

However, Section 1404(a) of Title 28 of the United State Code provides for transfer to another district court:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

*See also Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*, 571 U.S. 49, 62-63 (2013). A district court's analysis under Section 1404(a) considers "both private factors, which go to the convenience of the parties and witnesses, and public factors which go to the interests of justice." *Smith v. Corizon Health, Inc.*, No. 16-cv-00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016). In undertaking this analysis, courts in the Ninth Circuit consider various case-specific factors:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Ctr. for Biological Diversity v. Kempthorne*, No. 08-cv-1339-CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008). The moving party bears the burden of establishing that the proposed transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). In evaluating a motion under Section 1404(a), a court may consider the allegations of the complaint as well as declarations submitted by the parties. *See Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1026 (N.D. Cal. 2020).

## B.    Dismissal for Lack of Subject Matter Jurisdiction.

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). Courts must consider the threshold issue of jurisdiction before addressing the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

1   94 (1998). Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal

2   court, they seek to invoke it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

3          "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*,

4   373 F.3d 1035, 1039 (9th Cir. 2004). The Court may dismiss an action under Rule 12(b)(1) if the

5   complaint does not allege facts sufficient to establish subject matter jurisdiction on its face or, even if

6   the complaint asserts grounds for jurisdiction on its face, the evidence does not support a finding of

7   jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A facial

8   attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke

9   federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge allows the court to

10  look beyond the complaint without "presum[ing] the truthfulness of the plaintiff's allegations." *White v.*

11  *Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The Court also can hear evidence outside the pleadings and

12  resolve factual disputes without treating the motion as one for summary judgment. *Robinson v. United*

13  *States*, 586 F.3d 683, 685 (9th Cir. 2009); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997).

14         A district court cannot hear a suit against the United States unless the government has waived

15  sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional

16  in nature," *id.*, meaning that a party's failure to establish a waiver of sovereign immunity is properly

17  resolved on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), *see*

18  *Robinson*, 586 F.3d at 685; *Sierra Club v. Whitman*, 268 F.3d 898, 905-06 (9th Cir. 2001).

19  **IV.    ARGUMENT**

20         **A.    The Court Should Transfer This Action to the District of Arizona.**

21         The United States moves to transfer this case to the District of Arizona "[f]or the convenience of

22  parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). Both steps of the Section

23  1404(a) analysis are satisfied because (1) the District of Arizona is the appropriate forum for this dispute

24  and (2) the balance of relevant factors favors litigating this action in that venue. Accordingly, this Court

25  need not consider the merits of Plaintiffs' allegations, and should instead transfer the case to the District

26  of Arizona for further proceedings there.

27                **1.    Venue Is Proper in the District of Arizona.**

28         Section 1404(a) permits transfer to any district where the case "might have been brought." 28

U.S.C. § 1404(a). Pursuant to 28 U.S.C. § 1402(b), venue is proper in the District of Arizona, where the majority of the allegedly tortious acts or omissions occurred. *See, e.g.*, *Barroca v. United States*, No. 19-cv-00699-MMC, 2019 WL 5722383, at *3 (N.D. Cal. Nov. 5, 2019) (granting motion to transfer venue under § 1404(a) in FTCA case where majority of allegations in plaintiff's complaint occurred in the transferee state); *Koval v. United States*, No. 2:13-CV-1630-HRH, 2013 WL 6385595, at *4 (D. Ariz. Dec. 6, 2013) (granting motion to transfer from District of Arizona to Eastern District of California where "[t]he only connection that this case has to Arizona is that plaintiff happened to move there sometime after the events upon which his claims are based occurred"); *see also* Part IV.A.2, *infra*.

> **2.    The Balance of Relevant Factors Strongly Favors Transfer to the District of Arizona.**

Section 1404(a) balances the convenience and interests of the parties and the judicial districts "in addition to the convenience of the witnesses." *See Barroca*, 2019 WL 5722383, at *2. Here, the convenience of the parties and witnesses substantially favors transfer to the District of Arizona. Other than the Plaintiffs, who currently reside in this District, most of the anticipated witnesses are located outside this District – indeed, many of them in the District of Arizona. While the Complaint does not name any individual agents or officers, it repeatedly alleges improper conduct by many different government officials in connection with Plaintiffs' arrests, separation, and detention. However, none of this conduct took place in this District and virtually none in the state of California.

> **a.    Most Operative Facts Alleged in Plaintiffs' Complaint Occurred in Arizona.**

Plaintiffs' Complaint underscores that this is a case in which the majority of the allegedly tortious acts occurred in Arizona. First, Arizona is the state where each Plaintiff parent and child illegally entered the United States. Compl. ¶ 66. Arizona is also the state where each Plaintiff parent and child were apprehended and detained after unlawful entry. *Id.* ¶¶ 66, 68, 106-07, 127-28.

Second, the alleged tortious act that is the centerpiece of Plaintiffs' Complaint—family separation—occurred in Arizona. The Complaint highlights that Plaintiffs' action is intended to address the alleged harms that flowed from the separation of each Plaintiff child from each Plaintiff parent. *See, e.g.*, Compl. ¶ 1 ("This damages action seeks justice for three pairs of indigenous Guatemalan fathers and children . . . . Over the course of at least three months in 2018, the United States adopted a policy of

intentionally separating immigrant families for the express purpose of causing those families emotional harm ('Family Separation Policy' or 'Policy').");  *id.* ¶ 2 ("Plaintiffs suffered extreme emotional distress upon forcible separation, during the weeks and months of sustained separation that followed, and continued to experience lasting psychological and emotional trauma even after they were reunified. This suffering was the stated purpose of the Family Separation Policy."). As Plaintiffs acknowledge, Arizona is the state where each of the three Plaintiff families were separated. *Id.* ¶ 66 ("The government forcibly separated these parents and children in CBP's Arizona facilities without notice or explanation.").

Third, Arizona is the state where a substantial portion of the detentions for the Plaintiff parents took place and where one of the three children was sheltered while in the custody and care of ORR. *See* Part II.E, *supra*. Although some individual Plaintiffs were also allegedly held for a period of time in New Mexico, Texas, and Southern California, *all* of them spent a substantial portion of their detention in Arizona. *Id.* And none of the relevant complained-of acts occurred in this District. Simply put, there was no alleged contact between any Plaintiffs and this District until after the Plaintiffs were released.

### b.  The Convenience and Interests of the Parties Favor Transfer to the District of Arizona.

Factor two[3] of the Ninth Circuit's test (which state is "most familiar with the governing law") favors transfer because Plaintiffs' causes of action primarily sound in the common law of Arizona, where the alleged torts occurred. *See, e.g.*, *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) ("In assessing the United States' liability under the FTCA, we are required to apply the law of the state in which the alleged tort occurred."); *Hansen v. Combined Transp., Inc.*, No. 13-cv-1298, 2013 WL 5969863, at *2 (W.D. Wash. Nov. 7, 2013) ("[B]ecause plaintiff brings more claims under Oregon law than Washington law, this factor favors transfer to Oregon."). Plaintiffs' claims will largely be decided under Arizona state law and, thus, the District of Arizona is likely the district "most familiar with the governing law." *Barroca*, 2019 WL 5722383, at *2 (determining that second factor of 1404(a) transfer analysis favored the District of Kansas because "the majority of the causes of action alleged in the complaint will be decided under Kansas law, and, consequently, the District of Kansas is likely the

---

[3] Factor one ("location where the relevant agreements were negotiated and executed") does not apply here because there were no "agreements" between the parties.

1    district 'most familiar with the governing law.'").

2    Factors four ("respective parties' contacts with the forum") and five ("contacts relating to the

3    plaintiff's cause of action in the chosen forum") favor transfer. As described *supra*, a substantial portion

4    of the conduct alleged in the Complaint occurred in Arizona. Plaintiffs' Complaint alleges minimal

5    contacts relating to Plaintiffs' causes of action in the Northern District of California, other than Plaintiffs

6    themselves. The first Plaintiff family had no contacts with this District until after their release from

7    detention. Compl. ¶ 100. The Complaint pleads 33 paragraphs about the alleged tortious conduct

8    directed at Eduardo I.T. and his son Edwin E.I.I. in Arizona, San Diego, California, and Texas, then

9    references the San Francisco Bay Area as the location at which they ultimately made their home. Compl.

10   ¶¶ 67-100. For the second Plaintiff family, the Complaint likewise alleges 17 paragraphs of tortious

11   conduct directed at Ignacio P.G. and his son Leonel Y.P.G. occurring in Arizona, New Mexico, and

12   Texas, before finally noting that, after they were released, they lived in Oakland, California. *Id.* ¶¶ 105-

13   22. For the third Plaintiff family, the Complaint alleges 21 paragraphs of tortious conduct directed at

14   Benjamin J.R. and William A.J.M. occurring in Arizona, and then mentions that Benjamin J.R. was

15   allegedly transferred to two facilities in *southern* California—Victorville and Adelanto—before he was

16   released. *Id.* ¶¶ 126-47, 152. The only references to this District in relation to these Plaintiffs is that,

17   "[i]n early November 2018, the government released William to family members in Oakland," *id.* ¶ 164,

18   and Benjamin subsequently traveled there to live with William, *id.* ¶ 167.

19   Factor eight ("ease of access to sources of proof") also clearly favors transfer to the District of

20   Arizona. As discussed, Arizona is where Plaintiffs entered the United States and is the location of

21   facilities where apprehension, initial detention, and separation occurred, as well as the location of one of

22   the shelter facilities where the minors resided while in the care and legal custody of ORR. Accordingly,

23   the critical witnesses who have knowledge of the facts regarding the government's allegedly tortious

24   conduct are located in or close to the District of Arizona. To the government's knowledge, no potential

25   government witnesses for the claims against it are in or near this District. While it is sometimes

26   presumed that employees of the government are available in any venue, this does not diminish the

27   burden to produce the numerous government witnesses for depositions and for trial in California.

28   Plaintiffs' allegations that they experienced some *ongoing* injuries in this District, *e.g.*, *id.* ¶ 205,

1   do not alter the analysis. While these allegations may be relevant to the issue of damages, that issue is

2   less important than liability in a Section 1404(a) transfer analysis in general tort cases. *See Morris v.*

3   *Safeco Ins. Co.*, No. C 07-2890 PJH, 2008 WL 5273719, at *5 (N.D. Cal. Dec. 19, 2008) (noting greater

4   importance of "material testimony tending to establish a basis to impose civil liability" than testimony

5   on "the severity of [plaintiff's] emotional distress (*i.e.*, plaintiff's damages)") in Section 1404(a) transfer

6   analysis); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108-09 (N.D. Cal. 2001) (damages witnesses in

7   this district "not as important to the litigation" as witnesses "relevant to the underlying question of

8   liability" in the transferee district).

9       Factor six ("differences in cost of litigating in the two forums") also favors transfer. It will cost

10  much more to litigate this case in the Northern District of California than it would in the District of

11  Arizona. The United States anticipates that, if this case proceeds past the motion-to-dismiss stage, a

12  significant amount of discovery will concern initial detention facilities located in Arizona. Further, the

13  United States may have to call a significant number of witnesses relating to the detentions and

14  separations that occurred at these facilities—including numerous CBP and ICE officials, officers and

15  agents as well as employees of the shelters where the two minors were housed—most of whom are in

16  the District of Arizona or other states besides California. Conducting site visits, meeting with witnesses,

17  flying back and forth from California to Arizona while accommodating witness, site and attorney time

18  will entail substantial costs. *See, e.g.*, *Nordquist v. Blackham*, No. C06-5433 FDB, 2006 WL 2597931,

19  at *4 (W.D. Wash. Sept. 11, 2006) ("Generally, litigation costs are reduced when venue is located near

20  most of the witnesses expected to testify or be deposed . . . . Here, all potential witnesses and parties,

21  save one, reside in northern Texas. Accordingly, this factor favors transfer."); *see also Park v. Dole*

22  *Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) (similar analysis).

23      Factor seven ("the availability of compulsory process") also favors transfer to the District of

24  Arizona. As explained in the Declaration of James De La Cruz, the facilities utilized by ORR for each of

25  the Plaintiff children were not government facilities, nor were the individuals working there government

26  employees. De La Cruz Decl. ¶¶ 4-5, 12. Accordingly, the government does not control these non-party

27  witnesses should they be unwilling to travel to California to testify; compulsory process would not be

28  available in the Northern District. *See* Fed. R. Civ. P. 45(c).

1    The only factor that favors maintaining this action in this District is Plaintiffs' choice of forum—

2    or factor three. Deference to a plaintiff's chosen venue is substantially reduced, however, where that

3    locale lacks any real connection to the activities alleged in the complaint. "[W]here the transactions

4    giving rise to the action lack a significant connection to the plaintiff's chosen forum, then the plaintiff's

5    choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum." *Joe*

6    *Boxer Corp. v. R. Siskind & Co., Inc.*, No. C 98–4899 SI, 1999 WL 429549, at *9 (N.D. Cal. June 8,

7    1999) (granting transfer); *see also Hansen*, 2013 WL 5969863, at *2; *Nordquist*, 2006 WL 2597931, at

8    *4 ("A plaintiff's choice of forum is given much less weight when the forum lacks any significant

9    contact with the activities alleged in the complaint. As previously noted, the business is located in

10   Texas, the Defendants reside in Texas, and the Plaintiff resided in Texas while operating the business

11   and during significant negotiations of the sale. This factor weighs heavily in favor of transfer."); *accord*

12   *Sorensen v. Daimler Chrysler AG*, No. C 02-4752 MMC (EDL), 2003 WL 1888866, at *3 (N.D. Cal.

13   Apr. 11, 2003) ("[E]ven where a plaintiff has chosen a forum close to his place of residence, district

14   courts have applied a 'general rule' that, in actions based on a claim of patent infringement, a plaintiff's

15   choice of forum is accorded little deference where the central facts of the lawsuit occur outside the

16   plaintiff's chosen forum."). That is precisely the case here. *See* p. 13, *supra* (noting the lack of

17   connection between the allegedly tortious conduct pled in Plaintiffs' Complaint and this District).

18   Plaintiffs' residency in this District cannot outweigh the substantial contacts Plaintiffs and Defendant

19   maintain with the District of Arizona. By contrast, the inconvenience to Defendant of litigating this case

20   in the Northern District of California instead of the District of Arizona would be significantly greater.

21                   **c.   The Interests of Justice Favor Transfer to the District of Arizona.**

22       Finally, the interests of justice also favor transfer. Plaintiffs' allegations focus significantly on

23   the behavior of government agents operating in the District of Arizona and the conditions of facilities

24   therein. The District of Arizona has the greater interest in keeping the people located in that District safe

25   from alleged government wrongdoing. *See, e.g.*, *Canal A Media Holding, LLC v. United States*

26   *Citizenship & Immigration Servs.*, No. 17-cv-6491, 2018 WL 7297829, at *4 (C.D. Cal. Sept. 30, 2018)

27   (finding that the transferee district "has a great interest in protecting its citizens from the unreasonable

28   actions of a government agency") (internal citations and quotations omitted).

MOTION TO TRANSFER; MOTION TO DISMISS
CASE NO. 4:22-CV-05333 DMR                              15

1   Defendant recognizes that Judge Westmore denied a similar motion to transfer earlier this year.

2   *See Wilbur P.G. v. United States*, No. 4:21-cv-04457-KAW, 2022 WL 3024319, at *3-4 (N.D. Cal. May

3   10, 2022). Defendant respectfully submits that Judge Westmore improperly prioritized the plaintiffs'

4   current residence over the case's deep ties to Arizona. *See id.* Judge Westmore also erred in her

5   assumption that Defendant had failed to brief the "interests of justice" factor. *Compare id.* at *4, with

6   No. 4:21-cv-04457-KAW, ECF No. 29 at 16 ("Finally, the interests of justice also favor transfer.").

7   Rather, the Northern District of Illinois demonstrated the better analysis when it recently

8   transferred a similar case to the Western District of Texas. *See D.A. v. United States*, No. 1:20-cv-03082,

9   ECF No. 85 (N.D. Ill. Aug. 11, 2022) (attached as Helland Decl. Ex. B). As Judge Pacold explained in

10  that case, "the location of material events weighs in favor of the Western District of Texas," because

11  "the majority of critical events occurred in the Western District of Texas, and that is where most of the

12  challenged conduct took place." Helland Decl. Ex. C at 8:19-25. Judge Pacold emphasized that the

13  plaintiffs were "originally arrested and detained," "held at a holding center," and "separated" in the

14  Western District of Texas. *Id.* at 9:8-17. Thus, "even though some events occurred in the Northern

15  District of Illinois, the bulk of events and the most important events occurred in the Western District of

16  Texas. This weighs in favor of transfer." *Id.* at 10:6-9. Therefore, while "the Northern District of Illinois

17  is plaintiffs' chosen forum," "[t]he heart of this controversy is ultimately based upon conduct and events

18  in the Western District of Texas, and it would clearly be more convenient and in the interests of justice

19  for this litigation to proceed there." *Id.* at 14:15-20.

20  So too here. The heart of this controversy is based on conduct and events that allegedly occurred

21  in Arizona. Therefore, Defendant requests that the Court transfer this matter to the District of Arizona.

22  **B.      In the Alternative, Plaintiffs' Claims Should Be Dismissed For Lack of Subject
            Matter Jurisdiction.**

23  If this Court determines not to transfer the case, Plaintiffs' claims should be dismissed. The

24  government does not defend the merits of the policies at issue in this case, which have now been

25  repudiated. Indeed, President Biden has condemned the "human tragedy" that resulted from the Zero-

26  Tolerance Policy. Family Reunification Task Force EO § 1. But Plaintiffs cannot prevail on their FTCA

27  claims because this Court lacks subject-matter jurisdiction under established legal principles.

28

MOTION TO TRANSFER; MOTION TO DISMISS
CASE NO. 4:22-CV-05333 DMR                    16

1

### 1.   Plaintiffs' Claims Are Barred By the Discretionary Function Exception.

2

#### a.   Legal Standard for Discretionary Function Exception Analysis.

3      The United States, as a sovereign entity, is immune from suit except insofar as it has specifically

4  and expressly consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quoting *United*

5  *States v. Testan*, 424 U.S. 392, 399 (1976)). "[T]he terms of [the government's] consent to be sued in

6  any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (internal quotes

7  and citations omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the

8  government for lack of subject matter jurisdiction. *See Meyer*, 510 U.S. at 475-76.

9      The FTCA is "a limited waiver of sovereign immunity." *Gonzalez v. United States*, 814 F.3d

10  1022, 1026 (9th Cir. 2016). The statute allows individuals to sue the United States when a federal

11  employee's conduct, within the scope of his or her employment, causes "injury or loss of property, or

12  personal injury or death." 28 U.S.C. § 1346(b)(1). However, the FTCA's waiver of sovereign immunity

13  is subject to exceptions. *See id.* § 2680.

14      When an exception applies, the United States retains its sovereign immunity, the court lacks

15  jurisdiction, and the claim must be dismissed. *See Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir.

16  2000). One such exception—the "discretionary function exception" ("DFE")—bars "[a]ny claim" that is

17  "based upon the exercise or performance or the failure to exercise or perform a discretionary function or

18  duty on the part of a federal agency or an employee of the Government, whether or not the discretion

19  involved be abused."  28 U.S.C. § 2680(a); *see also United States v. Gaubert*, 499 U.S. 315, 325 (1991);

20  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

21      The Supreme Court has set forth a two-part test to determine if the DFE applies. *Gaubert*, 499

22  U.S. at 328-32. Courts must first ask whether the challenged conduct "'involve[s] an element of

23  judgment or choice,' as determined by the 'nature of the conduct, rather than the status of the actor.'"

24  *Teplin v. United States*, No. 17-cv-02445-HSG, 2018 WL 1471907, at *4 (N.D. Cal. Mar. 26, 2018)

25  (quoting *Gaubert*, 499 U.S. at 322); *see also Berkovitz*, 486 U.S. at 536; *Chadd v. United States*, 794

26  F.3d 1104, 1109 (9th Cir. 2015). The first prong is met unless "'a federal statute, regulation, or policy

27  specifically prescribes a course of action for an employee to follow.'" *Sabow v. United States*, 93 F.3d

28  1445, 1451 (9th Cir. 1996) (quoting *Berkovitz*, 486 U.S. at 536); *see also Kelly v. United States*, 241

1   F.3d 755, 761 (9th Cir. 2001) ("[A] general regulation or policy . . . does not remove discretion unless it

2   specifically prescribes a course of conduct."); *Reed ex rel. Allen v. U.S. Dep't of Interior*, 231 F.3d 501,

3   504 (9th Cir. 2000) (since "[n]o federal statute, regulation, or policy require[d] a particular course of

4   action," the agency's actions "could be no other way than by the exercise of discretion").

5           Thus, where no federal statute, regulation or policy prescribes a specific course of action to

6   follow, the challenged conduct involves an element of judgment. *See Berkovitz*, 486 U.S. at 536. Even if

7   a regulation contains a mandate to do something, if that mandate involves judgment or choice, the

8   discretion element is satisfied. *See GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174-75 (9th Cir.

9   2002). Further, where the policies that inform the conduct at issue allow the exercise of discretion, the

10  agency's acts or failures to act are presumed to be discretionary. *Lam v. United States*, 979 F.3d 665,

11  674 (9th Cir. 2020). Finally, the applicable policies and authorities must be considered in context—"the

12  presence of a few, isolated provisions cast in mandatory language does not transform an otherwise

13  suggestive set of guidelines into binding agency regulations." *Id.* at 677.

14          Second, if the conduct involves choice or discretion, courts must next determine whether "the

15  judgment of the government employee [is] 'of the kind that the discretionary function exception was

16  designed to shield.'" *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499 U.S. at 322-23). The DFE

17  is designed to "'prevent judicial second-guessing of legislative and administrative decisions grounded in

18  social, economic, and political policy' through a tort action"—therefore, courts construe it as

19  "protect[ing] only governmental actions and decisions based on considerations of public policy." *Id.*; *see*

20  *also United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). Thus, the focus of this inquiry is

21  "whether the 'nature of the actions taken,' pursuant to an exercise of discretion, 'are susceptible to

22  policy analysis.'" *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499 U.S. at 325); *see also*

23  *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) (the discretion must be "susceptible to

24  social, economic, or political policy analysis"); *Nurse*, 226 F.3d at 1001 (explaining that the decision

25  "'need not *actually* be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a

26  policy analysis.'") (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)) (emphasis added

27  in *Nurse*).

28          The government need not "prove that it considered these factors and made a conscious decision

on the basis of them." *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989).

Indeed, under the second prong, the government actors' subjective motive is immaterial because "the

focus" of the inquiry "is 'not on the agent's subjective intent in exercising the discretion conferred by

statute or regulation,' but rather 'on the nature of the actions taken and on whether they are *susceptible*

to policy analysis.'" *Gonzalez*, 814 F.3d at 1027-28 (quoting *Gaubert*, 499 U.S. at 325) (emphasis

added). Where the relevant policies provide for discretion, it must be presumed that the government's

actions are grounded in policy when exercising that discretion. *Lam*, 979 F.3d at 681. And the statutory

text confirms that the exception applies "whether or not the discretion involved [was] abused" by United

States officials. 28 U.S.C. § 2680(a); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir.

2008) (the DFE applies even where there are allegations of "malicious and bad faith conduct" because

"subjective intent is irrelevant to [the] analysis").

       If both prongs of the *Gaubert/Berkovitz* test are met, the DFE applies, the United States retains

its sovereign immunity, the Court lacks jurisdiction, and the claim must be dismissed. *See Nurse*, 226

F.3d at 1000. This result applies even where the government may have been negligent in the

performance of such discretionary acts, as "[n]egligence is irrelevant to the discretionary function

inquiry." *Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991). The FTCA's limited waiver of

sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a

remedy on account of such discretionary acts even though negligently performed and involving an abuse

of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

### b. The Decision to Detain Plaintiffs Separately Is Subject to Discretion Grounded in Policy Considerations.

       Although Plaintiffs allege harm stemming from the government's decisions to apprehend parent

Plaintiffs, to prosecute the parents for unlawful entry, and to separate the parents from their children, the

government decisions at issue in Plaintiffs' Complaint are subject to the DFE because they involved an

element of judgment or choice and are susceptible to policy analysis.

       First, the decisions described in Plaintiffs' Complaint are discretionary. As the Supreme Court

has recognized, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce

the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed, "[t]he

Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (Williams, J., concurring in part) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("decisions concerning enforcement" are matters of "discretion"). And that prosecutorial discretion was in fact exercised here, where just one of the three adult Plaintiffs was criminally prosecuted. *See* Helland Decl. ¶ 2 & Ex. A.

Indeed, concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). There, the federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[4] "Congress has placed the responsibility of determining where aliens are detained *within the discretion* of the [Secretary]." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added); *see also Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

Decisions relating to noncitizens, including placement and detention, are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *United States v. Lopez-Flores*, 63 F.3d 1468, 1474 (9th Cir. 1995) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952)); *see also Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the

---

[4] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

1   discretion of the Attorney General and implicates issues of foreign policy, . . . it falls within [the

2   DFE].”); *accord Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are

3   susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003)

4   (“[A]ssignment to particular institutions or units . . . must be viewed as falling within the discretionary

5   function exception to the FTCA”); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998)

6   (decisions where to place prisoners are policy-based decisions protected by the DFE); *Bailor v.*

7   *Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-

8   based decisions protected by the DFE); *Murillo v. United States Dep't of Justice*, No. CV 21-00425-

9   TUC-CKJ, 2022 WL 16745333, at *7 (D. Ariz. Nov. 7, 2022) (“[T]he Ninth Circuit has consistently

10  concluded that actions taken in prisons fall under the discretionary function exception.”) (citing

11  *Hernandez v. United States*, 83 F. App'x 206 (9th Cir. 2003)).

12       This discretion necessarily entails decisions regarding with whom noncitizens are detained,

13  including decisions regarding whether adults and minors can be detained in the same facility and

14  whether to detain family members together. *See Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-

15  92 (S.D. Tex. 2020) (decisions by DHS to separate family members are protected by the DFE).

16  Moreover, the Flores Agreement does not require release of a parent or mandate that parents be housed

17  with a child. *Flores II*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15;

18  *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007); *see* Part II.C,

19  *supra*. In this case, none of the “multiple mandatory legal obligations” Plaintiffs allege government

20  officials violated (*see* Compl. ¶¶ 171-85) prescribes a specific course of action to follow in connection

21  with the prosecution and subsequent separate detention of the Plaintiff parents and children. Instead, the

22  challenged decisions resulted from the exercise of discretion, satisfying the first prong of the DFE.

23       For similar reasons, the decision to determine that the children were “unaccompanied” within the

24  meaning of the TVPRA is a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether a parent is

25  “available to provide care and physical custody” is a policy question vested in federal officials. *See D.B.*

26  *v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) (“Federal agencies are afforded discretion under

27  the statutory scheme when classifying juveniles as unaccompanied alien children.”), *aff'd in part and*

28  *vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see also Baie v. Sec'y of Def.*, 784 F.2d 1375, 1377 (9th

Cir. 1986) ("[I]nterpretation of the statute is a plainly discretionary administrative act the 'nature and quality' of which Congress intended to shield from liability under the FTCA."); *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (determining whether conduct constituted "crime of moral turpitude" under applicable statute was "a quintessential exercise of [agency's] broad discretion"). Here, the parents were detained for potential prosecution and secure immigration detention. In those circumstances, the DFE protects the officials' determination that the children should have been deemed unaccompanied and thus transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (decision protected by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data.").

Second, as other courts have recognized, *policies* related to the immigration custody of adults as well as the Zero-Tolerance Memorandum—which was subsequently revoked—"amount[] to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita*, 470 F. Supp. 3d at 686-87 ("[E]ven if the Attorney General's policy is mandatory, faithful implementation by agents in the field is protected by the discretionary function exception.").[5] The Court should decline to engage in the sort of "second-guessing" and inquiry into government actors' intent in making decisions that the discretionary function exception was designed to prevent. *Berkovitz*, 486 U.S. at 536; *see also Lam*, 979 F.3d at 673 (citing *Varig*, 467 U.S. at 814). In determining the applicability of the DFE, the Court looks only at the nature of the conduct or decision at issue from a general and objective perspective—subjective intent is not part of the analysis. *Gonzalez*, 814 F.3d at 1032. Here, however, the government's decisions were not merely "susceptible to" policy analysis, but the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives. Notwithstanding the merit of those prior policy choices, they were policy choices nonetheless, as the Complaint specifically alleges. *See, e.g.*, Compl. ¶¶ 16, 19-20, 24-25, 44.

---

[5] For this reason, the district court in *Wilbur P.G.* erred by focusing exclusively on whether "front-line employees tasked with implementing the policy" possessed some "element of choice." 2022 WL 3024319, at *4.

1    In *Peña Arita*, 470 F. Supp. 3d 663, the court dismissed FTCA claims similarly arising from the

2    Zero-Tolerance Policy. As here, the plaintiffs alleged that the practices at issue were unlawful and

3    challenged various associated conditions of confinement. *Id.* at 686-87. In dismissing the claims, the

4    *Peña Arita* court agreed with the government that the "family separation policy itself and its

5    implementation by officers in the field are discretionary." *Id.* at 687 ("[P]rosecutorial judgment is a

6    matter of choice, and obviously grounded in considerations of public policy – such as the United States

7    Attorney General's priorities and United States Attorneys' discretion – that is intended to be shielded by

8    the discretionary function exception."). The court concluded that the challenged decision-making was

9    "'grounded in social, economic, and policy'" considerations that the court was "without jurisdiction to

10   second-guess." *Id.* (quoting *Gaubert*, 499 U.S. at 323). The *Peña Arita* court thus held that, "to the

11   extent Plaintiffs attempt to bring a constitutional tort claim against the United States under the Federal

12   Tort Claims Act, or assert that the Constitution itself furnishes a nondiscretionary standard of medical

13   care that is actionable under the FTCA in the event such care is not provided, such claim is entirely

14   jurisdictionally barred." *Id.* at. 688. The same analysis applies here.

### c.  Plaintiffs' Remaining Claims Concerning their Detentions Are Barred by the DFE.

15

16        Plaintiffs' Complaint additionally alleges that the Plaintiff families' detentions were "in violation

17   of the United States Constitution and multiple mandatory federal policies." Compl. ¶ 178. For example,

18   Plaintiffs allege that "federal agents subjected them to harsh and cruel treatment in custody," contending

19   that the government agents "held them in unsanitary cells and deprived them of adequate food, clean

20   drinking water, adequate bedding, and sufficient spaced to sleep," failed to communicate with the

21   Plaintiffs in a language or manner that they could comprehend and neglected to sufficiently inspect or

22   document health issues. *Id.* ¶¶ 178-84.

23        While the government is committed to safe and humane treatment of every individual in

24   detention, Plaintiffs' conditions-of-confinement claims are barred by the DFE. Courts have repeatedly

25   held that these other challenged "conditions of confinement" acts or omissions are independently barred

26   by the DFE because they involve discretionary decisions susceptible to policy considerations. *See, e.g.*,

27   *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that

28

failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee decisions involve "several policy considerations . . . including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (the DFE shielded decision to transfer prisoner); *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at \*3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by the DFE); *Lineberry v. United States*, No. 3:08-cv-0597, 2009 WL 763052, at \*6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

### d.   Plaintiffs' Assertion of Unconstitutional Conduct Does Not Preclude Application of DFE in this Case.

A plaintiff cannot circumvent the DFE simply by alleging a violation of a constitutional right. In *Gaubert*, the Supreme Court held that, where "a federal statute, policy, or regulation specifically prescribes a course of action for an employee to follow," there is no further discretion to exercise. 499 U.S. at 322. And in *Nurse*, the Ninth Circuit held that a constitutional violation "may" remove conduct from discretion but expressly left open the question of "the level of specificity with which a constitutional proscription must be articulated to remove the discretion of a federal actor." 226 F.3d at 1002 n.2; *see also Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1065 (9th Cir. 2020) ("[I]f the district court instead determines that Defendants did violate a nondiscretionary federal constitutional . . . directive, the FTCA claims may be able to proceed to that degree."), *rev'd on other grounds*, 142 S. Ct. 1051 (2022); *accord Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (holding that Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable").

Here, Plaintiffs do not allege the violation of any constitutional provision with the requisite

degree of specificity required by *Gaubert*. Plaintiffs instead allege that, as a general matter, "the parent-child relationship is constitutionally protected" by principles of substantive due process and that it is constitutionally important "for children to remain with their parents." Compl. ¶ 173. But while an authoritative construction of a clearly-established constitutional provision can eliminate a government official's discretion, Plaintiffs do not allege that there was any such authoritative construction in place at the times relevant to their complaint. *See Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) ("[W]e . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal."); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1133 (N.D. Ill. 2018) (there is no authority for "the proposition that the substantive due process [right] to family integrity dictates release of the parents (as distinct from reunification)"); *Ms. L v. ICE*, 302 F. Supp. 3d 1149, 1159 n.3 (C.D. Cal. 2018) (plaintiffs did not challenge the decision to detain adult noncitizens while in removal proceedings for the "sound reasons" that the law calls for mandatory detention, with parole available in strictly limited circumstances); *see also Payne-Barahona v. Gonzalez*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) ("The circuits . . . have uniformly held that a parent's otherwise valid deportation does not violate a child's constitutional right.").

Thus, even if the conduct in question were later found unconstitutional, the DFE would still apply here. As the Supreme Court has long recognized, conduct may be discretionary even if it is later determined to have violated the Constitution. The common-law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when conduct violates the Constitution, so long as the constitutional right was not defined sufficiently at the time of the act so that the official should have known the act was unconstitutional. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Accordingly, whether, in retrospect, the separations at issue here violated such a right has no bearing on the application of the DFE in this case. *See Denson v. United States*, 574 F.3d 1318, 1137-38 (11th Cir. 2009).[6]

---

[6] In other cases, district courts have held that the DFE is inapplicable because the plaintiffs allege that the Constitution was violated. *E.g.*, *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020). But those cases failed to follow the rule, established in *Gaubert*, that an official loses discretion

1

2

###### 2. Plaintiffs' Claims Relating to the Decision to Detain Them Separately From Their Children Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law.

3      Plaintiffs' claims relating to the decision to detain them separately from their children are

4 independently precluded because the FTCA prevents the United States from being held liable for "[a]ny

5 claim based upon an act or omission of an employee of the Government, exercising due care, in the

6 execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C.

7 § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations,

8 resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir.

9 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on

10 "enforcement of 'rules and regulations'" barred by § 2680(a)).

11      This exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v.

12 United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10

13 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a

14 rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United

15 States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based

16 on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation

17 may be irregular or ineffective"). Thus, where a government employee's actions are authorized by

18 statute or regulation—even if that statute or regulation is later invalidated—the due care exception

19 applies, and the claim must be dismissed for lack of subject matter jurisdiction. *See Borquez v. United

20 States*, 773 F.2d 1050, 1053 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592

21 F.2d 364, 366 (7th Cir. 1979); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950).

22      Here, the United States is required to "transfer the custody" of children to the care of ORR "not

23 later than 72 hours after" determining that there is no parent available to provide care and physical

24 custody, absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the government made the

25 determination that the parents were unable to provide care and physical custody for the children because

26 the parents were detained for immigration proceedings or prosecutions. The government made the

27

28

only if a source of law "specifically prescribes" the course of conduct.

discretionary decisions to detain the adult Plaintiffs in a secure immigration detention facility. Once

those protected discretionary determinations had been made, the TVPRA—which Plaintiffs do not

challenge—required the separation of the children from the adults to provide care and physical custody

while the adults were in immigration detention. The enforcement of that statutory command cannot form

the basis of an FTCA claim.[7]

### 3.     Plaintiffs' Claims Are Barred Because There Is No Private-Person Analogue.

Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private-

person analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances where the

United States, if a private person, would be liable to the claimant in accordance with the law of the place

where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against

the United States only "in the same manner and to the same extent as a private individual under like

circumstances." 28 U.S.C. § 2674. The FTCA thus does not waive sovereign immunity for claims

against the United States based on governmental "action of the type that private persons could not

engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626

(2d Cir. 1988) (internal quotes omitted). The FTCA "requires a court to look to the state-law liability of

private entities, not to that of public entities, when assessing liability under the FTCA." *United States v.

Olson*, 546 U.S. 43, 45-46 (2005). Though the private analogue need not be exact, a plaintiff must offer

"a persuasive analogy" showing that the government actor sued would be subject to liability under state

law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and

immigration laws and make related detention determinations, there is no private-person analogue that

would support a claim under the FTCA. The alleged harms here stem from the federal government's

decision to enforce federal immigration laws, criminally prosecute certain individuals, and hold the

Plaintiff parents in custody pending immigration proceedings or prosecution, resulting in the Plaintiff

---

[7] In reaching the contrary conclusion, district courts have stated that there is no statute or regulation "requiring the separation of Plaintiffs upon their entry into the country." *A.P.F.*, 492 F. Supp. 3d at 996. But, as just described, federal law does require that children be placed into ORR custody if their parents are unable to provide care and physical custody. And for the reasons described above, the decision to detain those parents for prosecution is a quintessentially discretionary one.

children's placement in the care and custody of ORR. The United States has not waived its sovereign

immunity for such decisions to enforce federal law, as they have no private-person counterpart. *See, e.g.*,

*Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no

private analogue to governmental withdrawal of immigration benefits."); *Elgamal v. Bernacke*, 714 F.

App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently

analogous to the negligent denial of an immigration status adjustment application, that claim must be

dismissed as well."); *Elgamal v. United States*, No. 13-00967, 2015 WL 13648070, at *3 (D. Ariz. July

8, 2015) (recognizing that "immigration matters" are "an inherently governmental function").[8]

### 4.     Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort Claims.

The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for

damages arising from certain torts committed by federal employees acting within the scope of their

employment. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28 U.S.C. § 1346(b)).

As the Ninth Circuit has held, the terms "person" and "employee of the government," as used in the

FTCA, mean individuals and natural persons, not institutions or corporate entities. *Adams v. United*

*States*, 420 F.3d 1049, 1052-55 (9th Cir. 2005). Hence, a plaintiff cannot assert systemic claims or seek

to hold the United States directly liable under the FTCA, but must instead allege tortious conduct by

individual federal employees, acting within the scope of their employment, for whom the United States

has assumed liability for under the FTCA. *See, e.g.*, *Lee v. United States*, No. CV 19-08051-PCT-DLR

(DMF), 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020) (applying *Adams* and dismissing claims of

"generalized negligence" asserted against group of federal employees for lack of jurisdiction).

Here, as in *Lee*, Plaintiffs seek to raise direct liability and institutional tort claims against the

United States. Throughout the Complaint, Plaintiffs attribute the alleged tortious conduct to the

---

[8] Two courts in Arizona recently found an analogue to nursing home employees, relying on *Est. of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, *2 (D. Ariz. Mar. 10, 2020), a case involving the Bureau of Prisons' duty toward inmates in its care. *See C.M. v. United States*, 2020 WL 1698191, at *3 (Mar. 30, 2020); *A.P.F.*, 492 F. Supp. 3d at 995. The *Shartle* court found an analogy to a nursing home's duty of care in Arizona Revised Statutes § 46-455, which imposes civil liability on nursing home employees who cause or permit the life of a vulnerable adult to be endangered by neglect. Defendant respectfully submits that a nursing home's duty to safeguard against neglect is wholly different from the federal government's enforcement of federal criminal and immigration laws and does not provide the "persuasive analogy" required for jurisdiction under the FTCA.

government as a whole, referring throughout to "the United States government," "the U.S. government," "the federal government," and "the government," rather than specific tortious conduct on the part of specific federal employees for whom the United States must assume liability. *See, e.g.*, Compl. ¶¶ 1-2, 16, 32, 34, 40, 51, 53, 60-62, 146, 162, 164, 171-75, 179, 182-85, 195, 198-200, 203-04, 208-09; *id.* 10:7-8, 36:4-5, 42:10-11. The FTCA's limited waiver of sovereign immunity does not encompass such systemic, institutional tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Lee*, 2020 WL 6573258, at *6; *see also* Helland Decl. Ex. D (Order, *E.C.B. v. United States*, No. 2:22-cv-00915, ECF No. 24 at 9 (D. Ariz. Nov. 8, 2022)) ("claims against the United States for the tortious misconduct of the government itself or government agencies, i.e., claims based on executive orders, memoranda, or policies regarding the separation of families entering the United States without authorization" are non-actionable under the FTCA).

### 5.   Plaintiffs' Claims Based On Conduct at Private Facilities Are Barred by the FTCA's Independent Contractor Exclusion.

The FTCA only waives sovereign immunity for tortious conduct of an "employee of the Government," and it expressly "excludes 'any contractor with the United States.'" *United States v. Orleans*, 425 U.S. 807, 813-14 (1976) (quoting 28 U.S.C. § 2671). The FTCA thus preserves sovereign immunity for torts committed by government contractors or their employees. *Id.*

The Complaint alleges that several Plaintiffs were held by private contractors during the timeframe at issue:  Eduardo I.T. was allegedly held at the Florence Correctional Facility, which is "operated by a private, for-profit prison company" (Compl. ¶ 90); Ignacio P.G. was allegedly held at the Otero County ICE Processing Center, "a facility operated by a private, for-profit corporation" (*id.* ¶ 117); Benjamin J.R. was allegedly held at the Adelanto ICE Processing Center, which is "operated by a private, for-profit company through a contract with ICE" (Compl. ¶ 152); and minor Plaintiffs Edwin E.I.I., Leonel Y.P.G., and William A.J.M. were housed at private, nonprofit organizations through ORR (*see id.* ¶¶ 79, 121, 150; De La Cruz Decl. ¶¶ 12-15). The Complaint does *not* allege that the staff of these facilities were employees of the United States. Indeed, as explained in *Walding v. United States*, 955 F. Supp. 2d 759 (W.D. Tex. 2013), ORR contractors that provide shelter for UACs are not employees of the United States within the meaning of the FTCA. *Id.* at 791-811.

"A critical element in distinguishing [a statutory employee] from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *Orleans*, 425 U.S. at 814 (citation omitted). The United States' contractual relationships with the above facilities and organizations affords the federal government no such control. In *Logue v. United States*, 412 U.S. 521, 528 (1973), the Supreme Court held that employees of a county jail that housed federal prisoners pursuant to a contract with the Federal Bureau of Prisons ("BOP") were not government employees for purposes of the FTCA. The Ninth Circuit has similarly explained that the FTCA's exclusion of contractors is not overcome by "[c]ontractual provisions directing detailed performance," nor by "[d]etailed regulations and inspections," nor by "the ability to compel compliance with federal regulation." *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005). Rather, "[t]here must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee." *Id.* (quoting *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir. 1987)).

The requisite supervision and control is lacking here. Neither ICE nor ORR exercises substantial supervision and control over the "day-to day operations" (*Autery*) or "detailed physical performance" (*Orleans*) of contractors like Florence, Otero, Adelanto, St. PJ's, and Casa Kokopelli; rather, the government only conducts general oversight to ensure compliance with governing regulations, policies, and agreements. *See* De La Cruz Decl. ¶¶ 5-10. Therefore, as in *Logue* and *Walding*, the staff of these facilities are not employees of the government, and the FTCA does not reach them.

In short, the FTCA is the only waiver of sovereign immunity for tort claims against the United States, and it expressly excludes liability for the acts or omissions of government contractors. Because no waiver of sovereign immunity applies, Plaintiffs' claims are jurisdictionally barred to the extent they are based on the acts of private contractors.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court transfer this action to the District of Arizona or, in the alternative, dismiss Plaintiffs' Complaint.

//

1    Dated: November 22, 2022                    Respectfully submitted,

2                                                STEPHANIE M. HINDS
                                                 United States Attorney
3
                                                   /s/ Kelsey J. Helland
4                                                Kenneth Brakebill
                                                 Assistant United States Attorney
5                                                Kelsey J. Helland
                                                 Assistant United States Attorney
6
                                                 Counsel for Defendant
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28