1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

EDUARDO I.T., et al.,                    )    CASE NO. 4:22-cv-05333-DMR
                                         )
    Plaintiffs,                          )
                                         )
v.                                       )    **DECLARATION OF KELSEY J. HELLAND**
                                         )
UNITED STATES OF AMERICA,                )
                                         )
    Defendant.                           )
_____    )

I, KELSEY J. HELLAND, declare as follows:

1.     I am an Assistant United States Attorney and an attorney of record for Defendant in this action. I submit this declaration in support of Defendant's Motion To Transfer; Motion To Dismiss Plaintiffs' Complaint filed concurrently herewith. The facts set forth in this declaration are within my personal knowledge or based upon documents and information I have received in the course of this litigation.

2.     Attached hereto as **Exhibit A** is a true and correct copy of the CM/ECF docket report for the criminal prosecution of Plaintiff Ignacio P.G. in the District of Arizona. In light of Plaintiff's pending administrative motion to proceed pseudonymously (*see* Dkt. No. 4), I have redacted all potential personally identifiable information from the docket report, including Ignacio P.G.'s true name, the case number, and the days and months of the dates on the docket report. Based on the information currently available, Defendant is informed and believes that Plaintiff Ignacio P.G. was the only Plaintiff in this matter who was criminally prosecuted upon entering the United States.

3.     Attached hereto as **Exhibit B** is a true and correct copy of the Order granting the United States' Motion to Transfer in *D.A. v. United States*, No. 1:20-cv-03082, ECF No. 85 (N.D. Ill. Aug. 11, 2022).

4.     Attached hereto as **Exhibit C** is a true and correct copy of the transcript of the August 11, 2022 hearing on Defendant's Motion to Transfer in *D.A. v. United States*, No. 1:20-cv-03082, ECF No. 86 (N.D. Ill. Aug. 24, 2022).

1    5.    Attached hereto as **Exhibit D** is a true and correct copy of the Order denying the United

2  States' Motion to Dismiss in *E.C.B. v. United States*, No. 2:22-cv-00915, ECF No. 24 (D. Ariz. Nov. 8,

3  2022).

4

5    I declare under penalty of perjury under the laws of the United States that the above is true and

6  accurate to the best of my information, knowledge, and belief.  Executed this 22nd day of November,

7  2022, in San Francisco, California.

8                                                */s/ Kelsey J. Helland*
                                                 KELSEY J. HELLAND
9                                                Assistant United States Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HELLAND DECLARATION
4:22-CV-05333-DMR                    2

# EXHIBIT A

Query    Reports    Utilities    Help    Log Out

# U.S. District Court
## DISTRICT OF ARIZONA (Phoenix Division)
## CRIMINAL DOCKET FOR CASE #: 2:18-po-███-JFM-1

Case title  USA v ███████

Date Filed   ███/2018

Date Terminated   ███/2018

---

Assigned to  Magistrate Judge James F Metcalf

**Defendant (1)**

███████

*TERMINATED* ███/2018

represented by **Carlos A Velazquez Marrero**
Federal Public Defenders Office   Tucson
407 W Congress St., Ste. 501
Tucson, AZ 85701 1310
520-879-7500
Email  Carlos Velazquez@fd org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**Pending Counts**

None

**Disposition**

**Highest Offense Level (Opening)**

None

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

8:1325(a)(1) Illegal Entry

**Disposition**

Sentence  Time Served  Special Assessment: Remitted

---

**Plaintiff**

**USA**

represented by **Joshua Stanley Rowen Kolsrud - Inactive**

US Attorneys Office   Yuma, AZ
7102 E 30th St., Ste. 101
Yuma, AZ 85365
928-314-6401
Email
USAAZ.DepartedAUSAs@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation  Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| █████/2018 | | Arrest of ████████████ on ████/2018. (ADI-JMA, ) (Entered: ████/2018) |
| █████/2018 | 1 | COMPLAINT as to ████████████. (ADI-JMA, ) (Entered: ████/2018) |
| █████/2018 | 2 | MINUTE ENTRY for proceedings held before Magistrate Judge James F Metcalf: Status Conference re: Initial Appearance Without Defendant as to ████████████ held on ████/2018. Carlos Velazquez appointed for defendant. Presence of defendant is waived. Due to the unavailability of Mam interpreter, hearing unable to proceed. Matter is continued to ███/18 at 10:30 AM before Magistrate Judge James F. Metcalf, <br><br> **Appearances**: AUSA Louis Uhl (Duty) for the Government, AFPD Carlos Velazquez for defendant. Defendant is not present and in custody. (Recorded by COURTSMART.) Hearing held 2:15 PM to 2:20 PM. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (JMA) (Entered: ████/2018) |
| █████/2018 | 3 | MINUTE ENTRY for proceedings held before Magistrate Judge James F Metcalf: Initial Appearance, Plea and Sentence Hearing as to ████████████ held on ███/2018 Defendant enters a plea of guilty and is sentenced as to the Complaint. Judgment to issue. <br><br> **Appearances**: AUSA Joshua Kolsrud for the Government, AFPD Carlos Velazquez for defendant  Defendant is present and in custody (restraint level 0)  Mam Interpreter Bertilda Mendoza assists defendant. (Recorded by COURTSMART.) Hearing held 11:32 AM to 11 47 AM  This is a TEXT ENTRY ONLY  There is no PDF document associated with this entry. (AJG) (Entered: ████/2018) |
| █████/2018 | 4 | JUDGMENT AND COMMITMENT ISSUED as to ████████████ (1), Sentence: Time Served. Special Assessment: Remitted. Signed by Magistrate Judge James F Metcalf on ████18.(AJG) (Entered: ████2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/22/2022 11:17:55 | | | |
| **PACER Login:** | khelland | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:18-po-████ JFM |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

2/2

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

D.A., et al.                          )
                                      )        Case No:  20 C 3082
v.                                    )
                                      )        Judge: Martha M. Pacold
United States of America, et al.,     )

## ORDER

Telephonic hearing held on 8/11/2022.  For the reasons stated on the record, defendant's motion to dismiss or, alternatively, to transfer [73] is granted in part.  The case is hereby transferred to the Western District of Texas.  The court does not address the merits of defendant's motion to dismiss.

(T: 0:20)

Date:  August 11, 2022                      /s/ Martha M. Pacold

# EXHIBIT C

<pre>
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   D.A., et al.,                  )
                                    )
 4                  Plaintiffs,     )  Case No. 20-cv-03082
     -vs-                           )
 5                                  )  Chicago, Illinois
     THE UNITED STATES OF AMERICA,  )  August 11, 2022
 6                                  )  10:31 a.m.
                    Defendant.      )
 7
                TRANSCRIPT OF TELEPHONIC PROCEEDINGS
 8           BEFORE THE HONORABLE MARTHA M. PACOLD

 9   TELEPHONIC APPEARANCES:

10   For the Plaintiffs:    MR. ANAND SWAMINATHAN
                            MR. STEPHEN H. WEIL
11                          Loevy & Loevy
                            311 N. Aberdeen Street
12                          Chicago, IL  60607
                            (312) 243-5900
13                          Anand@loevy.com
                            Weil@loevy.com
14
                            MR. ZACHARY MANFREDI
15                          Asylum Seeker Advocacy Project (ASAP)
                            228 Park Avenue, Suite #84810
16                          New York, NY 10003
                            (248) 840-0744
17                          Info@asylumadvocacy.org

18   Court Reporter:

19           KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                      Official Court Reporter
20                United States District Court
             219 South Dearborn Street, Suite 1426
21                 Chicago, Illinois  60604
                  Telephone:  (312) 435-5569
22            Kathleen_Fennell@ilnd.uscourts.gov

23           * * * * * * * * * * * * * * * * * *

24       PROCEEDINGS REPORTED BY CERTIFIED STENOGRAPHER
              TRANSCRIPT PRODUCED WITH A COMPUTER
25
</pre>

1    TELEPHONIC APPEARANCES: (Continued)

2    For the Defendant:        MR. PHIL DAVIS MacWILLIAMS
                                U.S. Department of Justice,
3                              Civil Division, Torts Branch
                                175 N Street, NE
4                              Washington, DC 20002
                                (202) 616-4285
5                              Phil.macwilliams@usdoj.gov

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings heard telephonically:)

2        THE CLERK:  The United States District Court for the

3    Northern District of Illinois is now in session, the Honorable

4    Martha M. Pacold presiding.

5        20 C 3082, D.A. versus United States.  If you can

6    state your name for the record, we'll start with plaintiffs'

7    counsel.

8        MR. SWAMINATHAN:  Good morning, your Honor.  Anand

9    Swaminathan for the plaintiff, and several of my colleagues

10   are on as well.  I'll let them introduce themselves.

11       MR. WEIL:  Good morning, Judge.  Stephen Weil for the

12   plaintiffs.

13       MR. MANFREDI:  Zachary Manfredi for the plaintiffs.

14       MR. MacWILLIAMS:  Good morning.  This is Phil

15   MacWilliams from the Department of Justice for the defendant

16   United States, and I believe some co-counsel are on the line

17   as well who can now introduce themselves.

18       THE CLERK:  If there's anybody else announcing

19   themselves, you might be on mute.

20       THE COURT:  Okay.  Well, it sounds then like we have

21   everyone.

22       Thank you, everyone, for joining.  We're here for a

23   ruling on the defendant's motion to dismiss or, alternatively,

24   transfer the case to the Western District of Texas, and that's

25   docket 73.  And so I'm prepared to rule today.

4

1        But let me just ask before I turn to the ruling, and

2  I asked this before in the minute entry scheduling today's

3  ruling, whether there are any developments in the status of

4  the case that the parties would like to bring to my attention

10:33:44    5  before I actually rule on the motion.

6        I haven't heard or I haven't seen anything filed on

7  the docket along those lines, so I take it that there isn't

8  anything of any sort of development like that, and so I should

9  just go forward with the ruling, but just one last chance for

10:34:05   10  anyone to raise anything like that before I move forward with

11  the ruling.

12        MR. SWAMINATHAN:  Yes, your Honor.  This is Anand

13  Swaminathan for the plaintiff.  I know you're aware that we

14  had submitted a number of status reports indicating that there

10:34:19   15  were various settlement discussions that were ongoing, but

16  unfortunately those conversations ended, and so there has not

17  been any further -- any further developments since we informed

18  the Court that those conversations were not going anywhere.

19        THE COURT:  Okay.  Thank you.

10:34:36   20        And for the government?

21        MR. MacWILLIAMS:  Yes, your Honor.  This is Phil

22  MacWilliams for the government.

23        And we have nothing to report on that front, so ...

24        THE COURT:  Okay.  Well, thank you, both.

10:34:52   25        Then I will turn to the ruling, and just by way of

1   information about the format of the ruling, I am going to rule

2   from the bench today, and I'll follow up with a minute entry

3   that gives the bottom line, but in terms of my reasoning, I

4   don't plan to issue a separate written order.  I do plan to

5   give all of my reasoning in the ruling from the bench today.

10:35:16

6           The reason for that is just speed and efficiency.  As

7   you know, the case has been pending for some time, and so it's

8   just -- I can get you a ruling faster in this format than if I

9   were to write it.  But I will give all the reasons from the

10  bench, and so if you need the reasoning, I would recommend

11  that you order the transcript.

10:35:46

12          Okay.  So with that, let me turn to the ruling, and

13  I'll just ask for your patience as I walk through the ruling

14  and the reasoning.

15          Again, before the Court is the government's motion to

10:36:01

16  dismiss or, alternatively, to transfer the case to the Western

17  District of Texas.  That's docket 73.  I'll first address the

18  legal standards that apply to the government's request to

19  transfer the case to the Western District of Texas.

20          28 U.S.C. Section 1404(a) states that "for the

10:36:20

21  convenience of parties and witnesses, in the interests of

22  justice, a district court may transfer any civil action to any

23  other district or division where it might have been brought."

24          With respect to the convenience evaluation, courts

25  generally consider the availability of and access to

10:36:43

1   witnesses, and each party's access to and distance from

2   resources in each forum. *See Research Automation, Inc. v.*

3   *Schrader-Bridgeport International, Inc.*, 626 F.3d 973, 978

4   (7th Cir. 2010). Other related factors include the location

5   of material events and the relative ease of access to sources

6   of proof. *Id.*

10:37:08

7           The interests of justice is a separate element of the

8   transfer analysis that relates to the efficient administration

9   of the court system. For this element, courts look to factors

10   including docket congestion and likely speed to trial in the

11   transferor and potential transferee forums, each court's

12   relative familiarity with the relevant law, the respective

13   desirability of resolving controversies in each locale, and

14   the relationship of each community to the controversy. *Id.*

10:37:28

15           Courts should defer to the plaintiff's choice of

16   forum unless the balance of these factors weighs strongly in

17   favor of transfer. *See In re National Presto Industries,*

18   *Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003). However, a

19   plaintiff's choice carries less weight where the plaintiff

20   does not reside in her chosen forum, which is the case here.

21   *See Johnson v. United Airlines*, 2013 WL 323404 at *5 (N.D.

22   Ill. 2013).

10:37:50

10:38:12

23           Altogether, the movant bears the burden of

24   establishing that the transferee forum is clearly more

25   convenient. *See CFPB v. Golden Valley Lending*, 2017

10:38:37

1    WL 3970514 at *1 (N.D. Ill. 2017).

2          So that was the legal standard.  Turning now to the

3    merits of the government's transfer request, there is no

4    dispute that this action could have originally been brought in

5    the Western District of Texas.  Thus, the only issue is

6    whether convenience and the interests of justice favor keeping

7    the case here in the Northern District of Illinois or

8    transferring to the Western District of Texas.

9          I will start first with the convenience evaluation.

10         The parties' ease of access to either forum is

11   neutral.  Plaintiffs do not dispute the government's

12   contention that they, plaintiffs, are in North Carolina or, at

13   the very least, reside outside of this district.  See docket

14   35, paragraph 60.  The government has offices and personnel

15   both here and in the Western District of Texas.  Accordingly,

16   the government can litigate just as easily in this forum as in

17   the Western District of Texas.

18         Next, the availability and access to witnesses

19   slightly favors the Western District of Texas.

20         Most of the government employees who will be

21   witnesses are located in the Western District of Texas, where

22   plaintiffs were detained and held and where the majority of

23   the challenged decisions and conduct occurred.  That said,

24   because these are party witnesses, their location carries less

25   weight.  *See Lewis v. Grote Industries*, 841 F.Supp. 2d 1049,

10:39:12

10:39:38

10:40:02

10:40:23

10:40:43

1  1054 (N.D. Ill. 2012). Nevertheless, this still weighs
2  slightly in favor of transfer.

3          Non-party witnesses reside in both forums.

4          Plaintiff Lucinda Padilla-Gonzales alleges that she
5  received medical treatment and care at hospitals in Texas.
6  See docket 35, paragraphs 22 and 58. These medical providers
7  are likely to be important to plaintiffs' claims regarding the
8  allegedly improper medical care she received, and they are
9  more than 100 miles from this district, meaning they are
10 outside of the Court's subpoena power under Federal Rule of
11 Civil Procedure 45.

12         Plaintiffs assert that non-party witnesses also
13 reside in this district, including employees of former
14 defendant Heartland who were responsible for the care of
15 plaintiffs D.A. and A.A. while they were in Chicago. Similar
16 to the non-party medical providers in Texas, these witnesses
17 would be outside of the subpoena power of the Western District
18 of Texas. Thus, this factor is neutral.

19         Turning to the location of material events, the
20 location of material events weighs in favor of the Western
21 District of Texas.

22         Although D.A. and A.A. were held in Chicago after
23 they were separated from Lucinda, the majority of critical
24 events occurred in the Western District of Texas, and that is
25 where most of the challenged conduct took place.

1            The Western District of Texas is the location where,

2    among other things, and I'll now walk through some of the

3    allegations of the complaint that relate to events occurring

4    in the Western District of Texas.  So, again, these are

5    allegations of the complaint, and so the complaint alleges

6    that the following things occurred in the Western District of

7    Texas:

8            Plaintiffs were originally arrested and detained;

9            Plaintiffs' belongings were allegedly taken and never

10   returned;

11           Plaintiffs were held at a holding center at a

12   detention facility, and the complaint alleges that occurred in

13   freezing conditions;

14           Lucinda received medical care at multiple hospitals;

15           Government employees allegedly provided Lucinda

16   inadequate medical care;

17           The government separated Lucinda from D.A. and A.A.;

18           The government allegedly tried to coerce Lucinda into

19   giving up her asylum rights;

20           D.A. and A.A. were held with unaccompanied children

21   in allegedly jail-like conditions;

22           The government allegedly failed to release D.A. and

23   A.A. to their father and instead sent them to Chicago;

24           Lucinda's criminal proceedings occurred;

25           Lucinda was both criminally detained and held in

10:42:58

10:43:16

10:43:32

10:43:48

10:44:02

1   immigration custody; and

2        Lucinda allegedly suffered a traumatic brain injury

3   while being driven by government agents.

4        See docket 35, paragraphs 19, 20, 21, 22, 23, 25, 26,

5   27, 30, 52, 53, 54, 55 and 58.

6        Accordingly, even though some events occurred in the

7   Northern District of Illinois, the bulk of events and the most

8   important events occurred in the Western District of Texas.

9   This weighs in favor of transfer.

10       The final convenience factor is the parties' access

11  to proof.  This factor, too, weighs in favor of the Western

12  District of Texas.

13       As plaintiffs point out, this factor has less weight

14  due to the efficiencies of modern electronic discovery.  See

15  *In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013).

16       However, many of plaintiff's claims relate to

17  physical sites or structures located in the Western District

18  of Texas that likely will need to be visited in person or

19  physically inspected.  Specifically, plaintiffs challenge the

20  conditions at the holding center where plaintiffs were

21  initially held, the detention center where A.A. and D.A. were

22  held with unaccompanied children, the facility where Lucinda

23  was held pending her criminal hearing, and the immigration

24  detention center where Lucinda was later held.  See docket 35,

25  paragraphs 21, 27, 52 and 59.

1    Further, the vehicle Lucinda was transported in when
2  she allegedly suffered a brain injury and the location of that
3  incident are also in the Western District of Texas.  *Id.,*
4  paragraph 55.

5    The only comparable site in the Northern District of
6  Illinois is the facility at which D.A. and A.A. were held, but
7  this alone does not outweigh or equal the number of sites and
8  objects located in the Western District of Texas.  Thus, this
9  factor favors transfer.

10    Altogether, the convenience factors weigh in favor of
11  transfer.

12    Turning next to the interests of justice.  This
13  factor alone can be determinative even where convenience
14  points towards the opposite result.  *See Research Automation,*
15  626 F.3d at 978.

16    Looking first at docket congestion and likely speed
17  to trial, this factor weighs in favor of transfer.  Federal
18  court management statistics published by United States Courts
19  show that, as of March 2022, in the Northern District of
20  Illinois the median time from filing to disposition was
21  7.4 months, and the median time to trial was 53.8 months.
22  Looking at the same time periods for the Western District of
23  Texas, the median time from filing to disposition was slightly
24  longer at 8.5 months, but the median time to trial was almost
25  half as long, at 27.2 months.

1         Thus, this case is likely to be resolved more quickly

2    if transferred.  *See Esposito v. Airbnb Action*, 538 F.Supp. 3d

3    844, 849 (N.D. Ill. 2020).

4         Further, the Western District of Texas's familiarity

5    with the relevant law also weighs in favor of transfer.

6         Plaintiffs' claims are brought pursuant to the

7    Federal Tort Claims Act.  Claims under the act are governed by

8    the substantive law of the state where the alleged tort

9    occurred.  *See Kaniff v. United States*, 351 F.3d 780, 790 (7th

10   Cir. 2003).

11        Here, plaintiffs assert that all of their claims are

12   governed at least in part by Texas law.  The only claims that

13   involve Illinois law are plaintiffs' negligent supervision and

14   breach of fiduciary duty claims, which plaintiffs argue are

15   also governed by Texas law.  See docket 77 at pages 22 through

16   25.

17        So although this case implicates federal law and

18   Illinois law, the significant bulk of plaintiffs' claims are

19   governed by Texas law with which the Western District of Texas

20   will naturally be more familiar.

21        The last two elements concern the respective

22   desirability of resolving controversies in each locale and the

23   relationship of each community to the controversy.  Both weigh

24   in favor of transfer.

25        As already discussed, the critical events in this

1   case all occurred in the Western District of Texas with the

2   exception of D.A. and A.A. being held in Chicago.

3           Further, plaintiffs are challenging the conditions

4   and operation of multiple facilities in the Western District

5   of Texas.  Although plaintiffs are not seeking injunctive

6   relief, if plaintiffs were to succeed, this action could have

7   an impact on the operation of those facilities, as well as the

8   government's immigration practices in the Western District of

9   Texas even if the government asserts that some of the more

10  general executive branch immigration policies have already

11  been changed.

12          The only local interest in Chicago is that D.A. and

13  A.A. were held in the custody and at a facility operated by

14  the former Heartland defendants.  Those defendants have been

15  dismissed with prejudice, and even if the operation of those

16  facilities might somehow still be impacted by this suit, the

17  lawsuit nevertheless has greater implications for the Western

18  District of Texas than the Northern District of Illinois.

19          Plaintiffs also point out that this case has been

20  pending before this Court for a little over two years.

21  Plaintiffs therefore argue that this Court is more familiar

22  with the case, and that weighs in favor of keeping the case

23  here.

24          Although this case was filed in May 2020, it was

25  stayed for months while settlement discussions occurred before

1    the magistrate judge, and the Court has not addressed or

2    resolved any motions addressing the merits or substance of

3    plaintiffs' suit.  In addition, no discovery has taken place

4    to date.

5            Therefore, the Court does not have a significant

6    advantage over the Western District of Texas in terms of

7    familiarity with the case, and the time that this case has

8    been pending does not weigh in favor of keeping the case in

9    this district.

10           Taking into account all of the interests of justice

11   factors, they weigh in favor of transfer.

12           Altogether, convenience and the interests of justice

13   both weigh in favor of transferring this case to the Western

14   District of Texas even though a relatively small part of

15   plaintiffs' claims arise from conduct in Chicago and the

16   Northern District of Illinois is plaintiffs' chosen forum.

17   The heart of this controversy is ultimately based upon conduct

18   and events in the Western District of Texas, and it would

19   clearly be more convenient and in the interests of justice for

20   this litigation to proceed there.

21           Transfer is therefore justified and appropriate.  *See*

22   *Waters v. Leidos*, 2022 WL 657055, at *2-4 (N.D. Ill. March 4,

23   2022); *Esposito*, 538 F. Supp. 3d at 848-50.

24           And so to conclude and summarize, the government's

25   motion to transfer is granted, and the case is transferred to

1  the Western District of Texas.  Because the case is being

2  transferred, I will not address the merits of the government's

3  motion to dismiss.

4          That concludes the ruling today.  Thank you,

10:52:31  5  everyone, for your time and your attention.  Take care.

6          MR. SWAMINATHAN:  Thank you, Judge.

7      (Which were all the proceedings heard.)

8                    CERTIFICATE

9    I certify that the foregoing is a correct transcript from

10  the record of proceedings in the above-entitled matter.

11  */s/Kathleen M. Fennell*              *August 24, 2022*

12  Kathleen M. Fennell              Date
    Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D

1

2

3

4

5 **IN THE UNITED STATES DISTRICT COURT**

6 **FOR THE DISTRICT OF ARIZONA**

7

8  E.C.B., on behalf of himself and his minor
   child, J.R.,

9                                              No. CV 22-00915 PHX CDB
                          Plaintiff,
10  v.                                         **ORDER**

11  United States of America,

12                          Defendant.

13

14        All of the parties have consented to the exercise of magistrate judge jurisdiction

15  over this matter, including the entry of final judgment. Before the Court is Defendant's

16  Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 15).

17        **I.      Background**

18        Plaintiff asserts claims pursuant to the Federal Tort Claims Act ("FTCA"). Plaintiff

19  seeks damages for himself and on behalf of his minor child, based on their forcible

20  separation and detention by agents of the United States government, and the conditions of

21  their detention and treatment by their custodians. The claims are based, *inter alia*, on the

22  following factual allegations:

23              In May 2018, federal officers forcibly separated Plaintiff Elias from
             his daughter Jocelin while they were detained in the Yuma County Detention
24           Center in Yuma, Arizona. Federal officers removed Jocelin [who was then
             eight years old] without informing Elias of his daughter's whereabouts.
25           When Elias asked immigration officers about his daughter's location, the
             officers told him they were not responsible for looking after her.[1]
26

27  _____

28        [1] "Elias" and "Jocelin" are pseudonyms for Plaintiff and his minor daughter, both
    Guatemalan nationals who entered the United States seeking asylum.

Unbeknownst to Elias, his daughter was sent across the country to a detention center in Miami, Florida without a parent, guardian, or family member. For two months she was confined inside the facility, which only heightened the trauma of confinement and separation. Elias was not permitted to contact her by telephone.

As a result of the government's actions, Elias and Jocelin were separated for nearly five months. They were subjected to abuse and neglect, which caused them substantial and irreparable harm and trauma …

(ECF No. 1 at 1-2).[2]

Plaintiff asserts FTCA claims for intentional infliction of emotional distress, negligence, and loss of consortium. Defendant contends the Court lacks subject matter jurisdiction over Plaintiff's claims, arguing the claims fall within exceptions to the FTCA's waiver of sovereign immunity. After Defendant filed a reply in support of the pending motion to dismiss, Plaintiff filed a notice of supplemental authority (ECF No. 22), directing the Court's attention to *A.E.S.E. v United State of America and Management & Training Corporation*, 2022 WL 4289930 (D.N.M. Sep. 16, 2022), and Defendant filed a notice of supplemental authority (ECF No. 23), citing *B.A.D.J. v. United States*, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022).

## II. Governing Law

### A. Rule 12(b)(1) of the Federal Rules of Civil Procedure

Motions to dismiss based on an exception to the FTCA's waiver of sovereign immunity are treated as motions to dismiss for lack of subject matter jurisdiction and reviewed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Garcia v. United States*, 526 F. Supp. 3d 576, 581 (D. Ariz. 2021). Defendant's motion to dismiss is a facial attack on the Complaint. *See A.P.F. v. United States,* 492 F. Supp. 3d 989, 993-94 (D. Ariz. 2020), *citing Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In ruling on such a motion, the Court accepts the allegations of the Complaint as true and affords Plaintiff the benefit

[2] The Government never brought charges against Plaintiff, who was deported on or about May 21, 2018, after twenty-one days in detention. (ECF No. 1 at 27).

of all favorable inferences that can be drawn from the alleged facts. *E.g.*, *A.P.F.*, 492 F. Supp. 3d at 994. In the context of a Rule 12(b)(1) challenge in a FTCA case, the plaintiff has the burden of establishing the alleged facts place their claims within the FTCA's waiver of immunity, and the United States bears the burden of establishing the applicability of an exception to the waiver of immunity. *See*, *e.g.*, *Bailey v. United States*, 623 F.3d 855, 859 (9th Cir. 2010); *Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992); *A.P.F.*, 492 F. Supp. 3d at 494.

### B. Federal Tort Claims Act

The United States is immune from liability absent its consent, and the terms of that consent define the Court's jurisdiction to entertain a suit against the United States. *E.g.*, *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA waives the Government's immunity "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). However, the FTCA's general waiver of immunity is subject to several exceptions. *E.g.*, *Dolan v. United States Postal Serv.*, 546 U.S. 481, 485 (2006); *A.P.F.*, 492 F. Supp. 3d at 994. The waiver does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). These are commonly referred to as the "due care exception" and as the "discretionary function exception."

### III. Analysis

Defendant argues the FTCA does not waive sovereign immunity for the claims alleged in the Complaint. Two of Defendant's arguments involve the FTCA's general waiver of immunity; accordingly, Plaintiff bears the burden of showing the claims fall under the FTCA and the Court therefore has subject matter jurisdiction over the claims. *See C.M. v. United States*, 2020 WL 1698191, at *2 (D. Ariz. Mar. 30, 2020), *citing*

*Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992). Two of Defendant's arguments involve the FTCA's statutory exceptions, and Defendant bears the burden of establishing the exceptions apply in this case. *Id.* Regarding the FTCA's general waiver, Defendant argues there is no private analogue for the allegedly tortious misconduct of which Plaintiff complains. Defendant also asserts the Complaint attempts to bring claims based on the conduct of entire federal agencies. i.e., "systemic" or "institutional" tort claims, which are not actionable under the FTCA. With regard to the statutory exceptions to the FTCA's waiver of sovereign immunity, Defendant contends the allegedly tortious misconduct falls within the due care and discretionary function exceptions.

### A.   General waiver of immunity

### 1.   The "private person" analogue

The FTCA waives sovereign immunity only with regard to "the negligent or wrongful act or omission of any employee of the Government," occurring in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). To establish subject matter jurisdiction under the FTCA, a complaint must sufficiently allege that "a private individual under *like* circumstances would be liable under state law …" *United States v. Muniz*, 374 U.S. 150, 153 (1963) (emphasis added), *citing* 28 U.S.C. § 2674. The FTCA does not require *identical* or the *same* circumstances, only *like* circumstances. *See Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955); *Xue Lu v. Powell*, 621 F.3d 944, 947 (9th Cir. 2010). Recognizing that "the federal government could never be exactly like a private actor," the Ninth Circuit Court of Appeals' jurisprudence requires a court only "to find the most reasonable analogy" to a circumstance where a private individual would be liable, generally referred to as a "private analogue." *Dugard v. United States*, 838 F.3d 914, 919 (9th Cir. 2016) (internal quotations omitted). *See also United States v. Olson*, 546 U.S. 43, 45-46 (2005); *A.P.F.*, 492 F. Supp. 3d at 994, *citing LaBarge v. Mariposa Cnty*, 798 F.2d 364, 367 (9th Cir. 1986).

1    Defendant argues the Court does not have subject matter jurisdiction because the
2    governmental conduct that Plaintiff challenges has no private analogue, asserting the
3    claims arise out of federal statutory authority that only the federal government possesses.
4    (ECF No. 15 at 22). Defendant contends: "Because only the federal government has the
5    authority to enforce federal criminal and immigration laws and make detention
6    determinations, there is no private-person analogue that would support a claim under the
7    FTCA." (*Id.*).  Defendant argues that, because Plaintiff "does not dispute that he was
8    lawfully held in secure adult immigration detention pending his immigration proceedings,"
9    his claims "are essentially a challenge to where and with whom deportable noncitizens are
10   detained. Such decisions are made pursuant to federal statutory authority and are in the sole
11   province of the federal government; there is no private person counterpart." (ECF No. 19
12   at 9-10).

13   The Arizona District Court has rejected Defendant's argument regarding a private
14   analogue and recognized the viability of loss of consortium and intentional infliction of
15   emotional distress claims brought under the FTCA in cases factually similar to the instant
16   matter. *See B.A.D.J.*, 2022 WL 11631016, at *4-5;[3] *F.R. v. United States*, 2022 WL
17   2905040, at *3 (D. Ariz. July 22, 2022); *C.M.*, 2020 WL 1698191, at *2. The Arizona
18   District Court has also recognized the viability of a negligence claim brought under the
19   FTCA based on a government employee's choice of a place of confinement for one in
20   federal custody. *See Estate of Smith v. Shartle*, 2020 WL 1158552, at *1 (D. Ariz. Mar. 10,
21   2020). The Court finds persuasive the decisions issued in *B.A.D.J.*, *F.R.*, and *C.M.*, and
22   finds Plaintiff has plausibly established their claims fall within the FTCA's waiver of

23

24   [3] Arizona defines loss of consortium as "a loss of capacity to exchange love,
     affection, society, companionship, comfort, care and moral support." *Pierce v.*
25   *Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989). The focus of loss
     of consortium is on the interference with the normal relationship between parent
26   and child. *Bickler v. Senior Lifestyle Corp.*, No. CV-09-00726-PHX-DGC, 2010
     WL 2292985, at *6 (D. Ariz. June 8, 2010). Separating a mother from her daughter
27   would satisfy this definition under Arizona law. Therefore, the Court agrees with
     Plaintiffs that sufficient private analogues exist to permit their FTCA claims.
28   *B.A.D.J. v. United States*, 2022 WL 11631016, at *5 (D. Ariz. Sept. 30, 2022).

1   sovereign immunity with regard to the requirement that a private individual under like
2   circumstances would be liable under state law.

3       **2.    Direct, institutional, or systemic tort liability**

4       The FTCA authorizes suits against the United States for the tortious acts or
5   omissions of its employees and agents. *See Vander v. United States Dep't of Just.*, 268 F.3d
6   661, 663 (9th Cir. 2001); *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 651 (9th Cir.
7   1992). The FTCA does not waive sovereign immunity for the tortious acts or omissions of
8   the entire government or an entire federal agency. *See* 28 U.S.C. § 2671; *Jones v. United*
9   *States*, 2021 WL 5505787, at *4 (D. Ariz. Nov. 24, 2021).

10      Defendant argues the Complaint alleges "institutional tort claims" rather than torts
11  based on the misconduct of individual employees. *Inter alia*, the Complaint alleges:

12      … Before entering Arizona, Elias and others in his group spoke with
        immigration officials who allowed them to cross the border. Shortly after
13      crossing the border, however, CBP agents apprehended them, throwing them
        to the ground. … A CBP agent proceeded to forcibly throw Elias and Jocelin
14      into a vehicle, injuring Elias's knee.
15                                  ***
16      After taking them into custody, the CBP agents took Elias and Jocelin
        to the Yuma County Detention Center in Yuma, Arizona where immigration
17      officers confiscated their belongings, including Elias's identification card
        and his daughter's birth certificate. At the time they were apprehended,
18      Jocelin developed a high fever. Elias and Jocelin were forced to wait
        overnight in the detention center before the facility provided Jocelin with any
19      medical care. When Jocelin finally received medical attention, the doctor
        prescribed her medication. Shortly thereafter, however, the immigration
20      officers confiscated the medication. ….
21
        Elias and Jocelin were locked in a cell with about 90 other people for
22      three days at Yuma. The cell was so cold that it has been colloquially referred
        to as "*la hielera*," which means the "icebox" in Spanish. There were no beds
23      in *la hielera*. There was not enough space to lay down on the floor and there
        were not enough aluminum blankets for all detainees. Everyone shared a sink
24      and a toilet. …
25
        … The only food Elias and Jocelin were given each day was one
26      dehydrated ramen noodle cup, uncooked and without water. The only water
        available was from a sink near the toilet. At some point in time, Elias asked
27      the immigration officers for water, and the immigration officers responded
28

by asking him, "Who told you to come here?" Elias remained quiet and neither he nor Jocelin was given any water.

On a separate occasion, the immigration officers asked Elias if he came to the United States to work. Elias responded that there were people in Guatemala who did not like him. Rather than assess whether Elias had a basis for an asylum claim based on a well-founded fear of persecution, as required by law, the immigration officers proceeded to tell Elias that whether people liked him or not was not "their problem."

***

… On the third day of their detention, immigration officers asked him to sign several documents. The documents were in English and the immigration officers did not explain their contents or their import. Even though he did not understand what the documents said, when the immigration officers became aggressive and demanded that he sign, Elias relented out of fear.

***

…The immigration officers told Elias that Jocelin was going to be taken to Houston, Texas and that he would be sent there after her. Elias would later learn that the immigration officers lied to him. That was the last time Elias saw his daughter for 4 months and 22 days.

***

After his daughter was taken from him, Elias was not informed of his daughter's whereabouts, and all his requests for information were ignored. He was not allowed to use the phone to try to locate her. When he asked immigration officers for his daughter's location, they told him they were not responsible for looking after her. …

***

… He was also subject to unnecessarily cruel and inhumane treatment. He was not given an opportunity to take a shower or brush his teeth. He found it difficult to sleep and could not eat the uncooked noodles he was given. Despite experiencing diarrhea for three days and vomiting, he was denied any medical treatment.

At some point in time, Elias fainted due to lack of food. The other individuals detained with Elias alerted the immigration officers that Elias had fainted, but the immigration officers did not provide him with medical care.

***

… On a separate occasion, Elias and other detainees in *la hielera* were praying in a corner when the immigration officers approached them and accused them of plotting an escape from the facility. The immigration officers proceeded to place Elias in a separate holding cell for two days. Elias refers to this separate holding cell as the "*perrera*," a room where they detained individuals who were "misbehaving." The room was the size of a restroom and was crammed with more than twenty people in it. There was

- 7 -

barely any room to stand, much less sit or sleep on the floor. Elias did not receive food while he was in the *perrera* and was forced to drink water from the sink.

***

On or about May 3, 2018, Jocelin was forcibly separated from her father in Yuma, Arizona and sent to a detention center in Miami, Florida, without a parent, guardian, or family member. Jocelin was terrified. Compounding her fear from being forcibly removed from her father, she was frightened of flying on an airplane for the first time. When she arrived at the detention center, she was asked to take a shower. After she showered, she did not have any clothes to change into and was forced to wait naked for an hour until immigration officers brought her clothes. Immigration officers then gave her vaccinations without any prior authorization from her parents. After she was given the vaccinations, she became sick and was sent to the hospital. …

… Jocelin was sent to school at the detention center. She was not able to play outside because she did not have any tennis shoes. Jocelin asked for tennis shoes, but the immigration officers told her that there were no tennis shoes there. …

***

Due to Jocelin's severe depression and inconsolable crying from being forcibly removed from her father, a case manager contacted Jocelin's mother in Guatemala and asked whether they could put Jocelin up for adoption. Shocked by the request, her mother refused and demanded that the immigration officers send Jocelin back to Guatemala. In late summer 2018, Jocelin received a new case manager who informed her that she was going back to Guatemala… On or around September 25, 2018, Jocelin was reunited with her family, nearly five months after the forced separation.

(ECF No. 1 at 23-28).

The Government cites *Lee v. United States*, 2020 WL 6573258, at \*6 (D. Ariz. Sept. 18, 2020), in characterizing Plaintiff's claims as "attribut[ing] the alleged tortious conduct to the government as a whole, often referring to 'the government' rather than specific tortious conduct on the part of specific federal employees." (ECF No. 15 at 23-24). In *Lee*, the plaintiff's allegations were found "too vague and conclusory" to support a FTCA claim, because the plaintiff failed to specify any employee's role in the alleged negligent act. *See* 2022 WL 2905040 at \*5-6. This matter is distinguishable from *Lee*. The Complaint does contain condemnations of various administration and agency policies regarding

- 8 -

immigration and the initiation of programs bearing on the treatment of those entering the United States seeking asylum, including the separation of parents from their children, such as the "El Paso Initiative," the "family separation policy," and the "Zero-Tolerance Policy." To the extent the Complaint can be read to assert claims against the United States for the tortious misconduct of the government itself or government agencies, i.e., claims based on executive orders, memoranda, or policies regarding the separation of families entering the United States without authorization, the Court would be correct in dismissing the claims for lack of subject-matter jurisdiction because the FTCA waives sovereign immunity only for the tortious misconduct of individual government employees. However, the Complaint can plausibly be read to present claims predicated on the tortious misconduct of individual government employees (as quoted *supra*) and, accordingly, the Court has subject-matter jurisdiction over Plaintiff's claims against the United States for the alleged tortious misconduct of specific, individual employees.

**B.    Statutory exceptions from waiver of sovereign immunity**

**1.    Due care exception**

The due care exception to the FTCA's waiver of sovereign immunity bars claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid …" 28 U.S.C. § 2680(a). The District of Arizona has regularly followed the two-prong test established by *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005), to determine whether the due care exception applies. *See*, *e.g.*, *A.P.F.*, 492 F. Supp. 3d at 995-96; *E.S.M. v. United States*, 2022 WL 11729644, at *5 (D. Ariz. Oct. 20, 2022); *F.R.*, 2022 WL 2905040, at *4; *C.M.*, 2020 WL 1698191, at *3. Pursuant to *Welch*, the due care exception applies if a statute or regulation "specifically proscribes a course of action for an officer to follow," and "the officer exercised due care in following the dictates of that statute or regulation." 409 F.3d at 652.

The *A.P.F.* court, applying the *Welch* test, concluded:

> The United States cites no statute or regulation requiring the detention of individuals who are "amenable to prosecution" in facilities different from those who are not "amenable to prosecution," or any statute more generally requiring the separation of Plaintiffs upon their entry into the country. [] Nor could it: the family separations were conducted pursuant to executive policy, not pursuant to any statute or regulation. [] Actions taken pursuant to executive policy are not shielded by the due care exception. *Garcia-Feliciano v. United States*, [] 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (due care exception "would not apply here, however, because a policy—not a statute or regulation—pr[e]scribed the deputy's conduct"). The United States has failed to prove that the due care exception applies.

492 F. Supp. 3d at 995-96 (internal citations omitted).

In subsequent cases, the District of Arizona has followed *A.P.F.* in rejecting the argument presented by Defendant with regard to the due care exception, concluding actions taken pursuant to executive policy are not shielded by this exception to the FTCA's waiver of sovereign immunity. *See B.A.D.J.*, 2022 WL 11631016, at *4; *A.I.I.L. v. Sessions*, 2022 WL 992543, at *3-4 (Mar. 31, 2022), *citing C.M.*, 2020 WL 1698191, at *3.[4] This argument has also been rejected by other federal district courts. *See D.J.C.V. v. United States*, ___ F. Supp. 3d ___, 2022 WL 1912254, at *18 (S.D.N.Y. June 3, 2022); *A.E.S.E.*, 2022 WL 4289930, at *14; *Wilbur P.G. v. United States*, 2022 WL 3024319, at *5 (N.D. Cal. May 10, 2022); *Nunez Euceda v. United States*, 2021 WL 4895748, at *4 (C.D. Cal. Apr. 27, 2021).

Additionally, Defendant fails to address how its employees took due care in following the dictates of any statute or regulation it cites, i.e., how the individual officers took due care to separate Plaintiff from his daughter without causing physical harm or

---

[4] With regard to the statute cited by Defendant in this matter, the *A.I.I.L.* court accepted the plaintiff's argument that "the TVPRA, the only statute which mandates the transfer of minors to HHS custody, concerns children who arrive without their parents, but the children here arrived with their parents, were separated by the government, subsequently labeled 'Unaccompanied Minor Children,' and transferred to HHS custody." *A.I.I.L. v. Sessions*, 2022 WL 992543, at *4 (D. Ariz. Mar. 31, 2022) ("Because none of the statutory provisions cited by the government expressly mandate enforcement of a family separation policy, the due care exception does not apply.").

1  severe emotional distress, or how it housed father or daughter in appropriate conditions
2  and provided adequate medical care, food, and water. The Court finds Defendant has not
3  satisfied its burden to establish that the due care exception is applicable.

4          **2.     Discretionary function exception**

5        The discretionary function exception bars jurisdiction over a claim that is "based
6  upon the exercise or performance or the failure to exercise or perform a discretionary
7  function or duty on the part of a federal agency or an employee of the Government, whether
8  or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court has
9  held that this exception to the FTCA's waiver of sovereign immunity applies when the
10 federal official's actions involve an element of judgment or choice, and were based on
11 considerations of public policy. *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).

12       Defendant argues the decisions to detain Plaintiff in a secure adult detention facility,
13 to separate him from his daughter, and to subject him and his daughter to particular
14 treatment while in custody, are protected by the discretionary function exception because
15 making detention determinations and setting particular conditions of confinement are
16 discretionary and susceptible to policy analysis. However, notwithstanding Defendant's
17 discretion to make detention determinations and "set" conditions of confinement, the Ninth
18 Circuit has held the discretionary function exception does not protect unconstitutional
19 governmental conduct, reasoning that government officials have no discretion to violate
20 the Constitution. *See*, *e.g.*, *Nurse v. United States*, 226 F.3d 996, 1002 & n.2 (9th Cir.
21 2000); *A.P.F.*, 492 F. Supp. 3d at 996; *B.A.D.J.*, 2022 WL 11631016 at *3 (disagreeing
22 with *Nurse* but recognizing and following this precedent). Accordingly, if Plaintiff
23 plausibly alleges constitutional violations, the discretionary function exception does not
24 apply. *See Nurse*, 226 F.3d at 1002.

25       Plaintiff plausibly alleges that the separation of father and child, the manner in
26 which this was done, and the conditions of confinement to which they were subjected,
27 violated their federal constitutional rights, including the substantive due process right to
28 family integrity. To the extent Plaintiff's claims are based on the conditions of his

- 11 -

confinement, including the failure to provide Plaintiff with water and adequate nutrition, and the failure to provide both Plaintiff and his daughter with necessary medical care, Plaintiff has plausibly alleged the government officials' conduct violated the Eighth Amendment. These allegations place the relevant conduct outside the discretionary function exception for pleading purposes, notwithstanding any lack of complete clarity with regard to the exact constitutional protections that were allegedly violated. In *Nurse*, the Ninth Circuit reversed the dismissal of an FTCA claim based on the discretionary function exception because the plaintiff had alleged the governmental conduct was unconstitutional without specifying what constitutional mandate the officials violated. *See* 226 F.3d at 1002 n.2. If "bare allegations" were sufficient to overcome a motion to dismiss in *Nurse*, the Court sees no reason why Plaintiff should be held to a higher standard here; other judges in this District have applied a plausibility standard to allegations of unconstitutional conduct at the motion to dismiss stage. *See*, *e.g.*, *A.P.F.*, 492 F. Supp. 3d at 996 (denying a motion to dismiss based on the discretionary function exception where the plaintiffs plausibly alleged the government's separation of their families violated their constitutional rights); *F.R.*, 2022 WL 2905040, at \*5-6; *A.I.I.L.*, 2022 WL 992543, at \*4 (denying a motion to dismiss based on the discretionary function exception where plaintiffs plausibly alleged the government's conduct violated their constitutional rights); *C.M.*, 2020 WL 1698191, at \*4 (denying a motion to dismiss based on the discretionary function exception where the plaintiffs plausibly alleged the Government's separation of their families violated their constitutional rights). For pleading purposes, Plaintiffs have adequately alleged the unconstitutionality of the conduct at issue. Thus, the United States has not established the discretionary function exception applies.

**IV.    Conclusion**

Plaintiff has demonstrated that "a private individual under like circumstances would be liable under state law" for the allegedly tortious conduct committed by employees of the United States delineated in the Complaint. Additionally, the Complaint can plausibly be read to assert claims predicated on the tortious misconduct of individual government

employees, rather than asserting institutional torts. Defendant has failed to meet their burden of demonstrating a statutory exception to the FTCA's waiver of immunity.

Accordingly,

**IT IS ORDERED that** Defendant's motion to dismiss for want of subjection matter jurisdiction (ECF No. 15) is **denied**.


Dated this 8th day of November, 2022.



Camille D. Bibles
United States Magistrate Judge