1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    BLAINE I. GREEN (SBN 193028)
2   blaine.green@pillsburylaw.com
    DUSTIN CHASE-WOODS (SBN 318628)
3   dustin.chasewoods@pillsburylaw.com
    Four Embarcadero Center, 22nd Floor
4   San Francisco, CA 94111-5998
    Telephone:        415.983.1000
5   Facsimile:        415.983.1200
6
    LAWYERS' COMMITTEE FOR CIVIL RIGHTS
7   OF THE SAN FRANCISCO BAY AREA
    BREE BERNWANGER (SBN 331731)
8   bbernwanger@lccrsf.org
    VICTORIA PETTY (SBN 338689)
9   vpetty@lccrsf.org
    131 Steuart Street #400
10  San Francisco, CA 94105
    Telephone: 415.814.7631
11
12
    Attorneys for Plaintiffs Eduardo I.T.; Edwin E.I.I.;
13  Ignacio P.G.; Leonel Y.P.G., a minor child;
    Benjamin J.R.; and William A.J.M.
14

15                  **UNITED STATES DISTRICT COURT**

16      **NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION**

17

18  EDUARDO I.T., EDWIN E.I.I., Ignacio P.G.,          Case No. 4:22-cv-05333-DMR
    Leonel Y.P.G., a minor child, Benjamin J.R.,
19  and William A.J.M.
                                                        **PLAINTIFFS' OPPOSITION TO**
20              Plaintiffs,                              **DEFENDANT'S MOTION TO TRANSFER**
                                                        **AND MOTION TO DISMISS**
21          vs.
                                                        Date: January 26, 2023
22  UNITED STATES OF AMERICA                            Time: 1:00 p.m.
                                                        Dept: 4
23              Defendant.                              Judge: Hon. Donna M. Ryu
                                                        Trial Date: Not set
24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................. 1

II.    FACTUAL BACKGROUND .................................................................. 2

    A.   The Government's family separation practices ................................. 2

    B.   The Plaintiff families' separation and mistreatment ........................ 4

III.   THE GOVERNMENT FAILS TO SHOW THAT VENUE TRANSFER IS
      APPROPRIATE................................................................................. 5

    A.   Legal standard ................................................................................ 5

    B.   Plaintiffs' choice of venue is entitled to great deference ................ 6

    C.   Because all parties and the only known witnesses reside here, the
        convenience-of-witnesses and convenience-of-parties factors strongly
        favor Plaintiffs ................................................................................ 7

    D.   Because the Government merely seeks to shift the inconvenience to
        Plaintiffs, the convenience-of-parties factor weighs in Plaintiffs' favor ....... 10

    E.   The ease-of-access-to-evidence factor is neutral as to documentary
        evidence and strongly favors Plaintiffs as to testimonial evidence ............... 11

    F.   This Court is just as equipped to apply the governing law of
        California, Arizona, New Mexico, and Texas as a District of Arizona
        court ............................................................................................... 11

    G.   The "availability of compulsory process" factor is either neutral or
        favors Plaintiffs ............................................................................. 12

    H.   This District's interest in the controversy outweighs Arizona's.................. 12

    I.   The court congestion factor is neutral or favors Plaintiffs............................ 13

    J.   The Government has lost every venue transfer motion based on
        Plaintiff's residence thus far in the Family Separation cases ....................... 13

IV.   BECAUSE PLAINTIFFS' TORT CLAIMS ARE COGNIZABLE UNDER THE
      FTCA, THE MOTION TO DISMISS SHOULD BE DENIED ...................... 14

    A.   Legal standard ............................................................................... 14

    B.   The Government's motion to dismiss fails to address Plaintiffs' actual
        claims ............................................................................................. 15

    C.   The discretionary function exception does not apply here ........................... 16

        1.   Separating Plaintiff families was not a discretionary act
            because it was unconstitutional.......................................................... 17

        2.   Plaintiffs are not required to show their constitutional right to
            family integrity was clearly established.............................................. 20

        3.   Separating Plaintiff families was not based on public policy ........... 22

-ii-

OPPOSITION TO MOTION TO TRANSFER AND MOTION TO DISMISS

D.   The Government fails to show that the due care exception applies...............24

1.   The Government was executing an executive policy that ordered the separation of migrant families to traumatize them, not a federal statute or regulation.......................................25

2.   The Government made no attempt to demonstrate that its employees treated Plaintiffs with due care .........................26

E.   Plaintiffs' claims satisfy the private analog requirement.............................27

F.   The Government's "systemic" tort prohibition lacks legal support and does not bar Plaintiffs' claims.........................................................28

G.   Because Plaintiffs' claims are only based on the conduct of Government officials, the independent contractor exclusion does not apply.................................................................................................29

IV.   CONCLUSION .....................................................................................30

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.F.P. v. United States*,
   No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570 (E.D. Cal. July 12, 2022).............. *passim*

*A.P.F. v. United States*,
   492 F. Supp. 3d 989 (D. Ariz. 2020) ............................................................................. *passim*

*Adams v. United States*,
   420 F.3d 1049 (9th Cir. 2005) ....................................................................................28, 29

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
   169 F. Supp. 3d 1079 (D. Or. 2016) ......................................................................................6

*Advanced Transit Dynamics, Inc. v. J.B. Hunt Transp., Inc.*,
   No. C-11-00075-DMR, 2011 WL 1557927 (N.D. Cal. Apr. 25, 2011) ...........................10, 13

*Arce v. United States*,
   899 F.3d 796 (9th Cir. 2018) ...............................................................................................27

*Autery v. United States*,
   424 F.3d 944 (9th Cir. 2005) ...............................................................................................30

*Aztlan Lodge No. 1, Free & Accepted Masons of Prescott v. Ruffner*,
   745 P.2d 611 (Ariz. Ct. App. 1987) .....................................................................................12

*Berkovitz v. United States*,
   486 U.S. 531 (1988)........................................................................................................17, 23

*Bhuiyan v. United States*,
   772 F. App'x 564 (9th Cir. 2019) .........................................................................................28

*C.M. v. United States*,
   No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020)................. *passim*

*C.M. v. United States*,
   No. CV-19-05217-PHX-SRB, 2020 WL 5232560 (D. Ariz. July 6, 2020)...........................24

*Canal A Media Holding, LLC v. U.S. Citizenship and Immigr. Servs.*,
   CV 17-6491 FMO (JCx), 2018 WL 7297829, at *4 (C.D. Cal. Sept. 30, 2018) ..............12, 13

*Carolina Cas. Co. v. Data Broad. Corp.*,
   158 F. Supp. 2d 1044 (N.D. Cal. 2001) ................................................................................7

*Chen v. Pioneer Oil, LLC*,
   472 F. Supp. 3d 704 (N.D. Cal. 2020) ...................................................................................5

*Crowe v. Cty. of San Diego*,
  608 F.3d 406 (9th Cir. 2010) ................................................................9, 18

*Crumpton v. Stone*,
  59 F.3d 1400 (D.C. Cir. 1995) ...................................................................25

*D.J.C.V. v. U.S. Immigr. & Customs Enf't*,
  No. 18 Civ. 9115 (AKH), 2018 WL 10436675 (S.D.N.Y. Oct. 15, 2018) ............................22

*D.J.C.V. v. United States*,
  20 Civ. 5747 (PAE), 2022 WL 1912254, __F.Supp.3d.__ (S.D.N.Y. June 3, 2022) (*D.J.C.V. II*)
  ......................................................................................19

*Davis v. United States*,
  No. EDCV 07-481-VAP, 2009 WL 10674302 (C.D. Cal. Sept. 4, 2009) ..............................24

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) ......................................................................6

*Doe v. Epic Games, Inc.*,
  435 F. Supp. 3d 1024 (N.D. Cal. 2020) ...........................................................6

*Doe v. Napa Valley Unified Sch. Dist.*,
  No. 17-cv-03753-SK, 2018 WL 4859978 (N.D. Cal. Apr. 24, 2018) ...............................24

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  546 F.3d 981 (9th Cir. 2008) .....................................................................14

*E.L.A. v. United States*,
  No. 2:20-cv-01524-RAJ, 2022 WL 2046135 (W.D. Wash. June 3, 2022) ...........................13

*Ruiz ex rel. E.R. v. United States*,
  No. 13-CV-1241 (KAM) (SMG), 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ................23

*Edison v. United States*,
  822 F.3d 510 (9th Cir. 2016) ..............................................................29, 30

*Elgamal v. Bernacke*,
  714 F. App'x 741 (9th Cir. 2018) .................................................................28

*Ferrick v. Spotify USA Inc.*,
  No. CV1509929BRORAOX, 2016 WL 11623778 (C.D. Cal. Oct. 26, 2016) ........................7

*Fitbit, Inc. v. Koninklijke Philips N.V.*,
  336 F.R.D. 574 (N.D. Cal. 2020) .................................................................7

*Fleming v. Matco Tools Corp.*,
  384 F. Supp. 3d 1124 (N.D. Cal. 2019) ..........................................................11

*Ford v. Revlon, Inc.*,
    734 P.2d 580 (Ariz. 1987)............................................................................................12

*Galvin v. Hay*,
    374 F.3d 739 (9th Cir. 2004) ...........................................................................17, 20, 21

*García-Feliciano v. United States*,
    No. CIV. 12-1959 (SCC), 2014 WL 1653143 (D.P.R. Apr. 23, 2014) ...............................29

*United States v. Gaubert*,
    499 U.S. 315 (1991)......................................................................................................21

*Getz v. Boeing Co.*,
    547 F. Supp. 2d 1080 (N.D. Cal. 2008) ..........................................................................8

*Gutta v. Renaud*,
    No. 20-CV-06579-DMR, 2021 WL 533757 (N.D. Cal. Feb. 12, 2021)................................7

*H.L. v. Wal-Mart Stores, Inc.*,
    2015 WL 12743600 (C.D. Cal. Sept. 9, 2015) ................................................................6

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982).....................................................................................................21

*Hatahley v. United States*,
    351 U.S. 173 (1956).....................................................................................................26

*Indian Towing Co. v. United States*,
    350 U.S. 61 (1955).......................................................................................................27

*J.S.R. by and through J.S.G. v. Sessions*
    330 F. Supp. 3d 731 (D. Conn. 2018) ...........................................................................18

*Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*
    319 F. Supp. 3d 491 (D.D.C. 2018)...........................................................................18, 26

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) .........................................................................................6

*Kelson v. City of Springfield*,
    767 F.2d 651 (9th Cir. 1985) .......................................................................................18

*Kondo v. Anthelio Health Care Sols., Inc.*,
    No. 15-CV-03244-DMR, 2015 WL 7710301 (N.D. Cal. Nov. 30, 2015)..............................11

*Lax v. Toyota Motor Corp.*,
    65 F. Supp. 3d 772 (N.D. Cal. 2014) ...................................................................5, 7, 11

*Lee v. United States*,
    CV 19-08051-PCT-DLR, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020)..........................28, 29

*Logue v. United States*,
  412 U.S. 521 (1973)...........................................................................................30

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ...........................................................................5, 6

*Loumiet v. United States*,
  828 F.3d 935 (D.C. Cir. 2016) .......................................................................20, 22

*Marlys Bear Med. V. U.S. ex rel. Sec'y of Dep't of Interior*,
  241 F.3d 1208 (9th Cir. 2001) ......................................................................22, 23

*Martinez v. United States*,
  No. 2018 WL 3359562 (D. Ariz. July 10, 2018) .................................................28

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
  302 F. Supp. 3d 1149 (S.D. Cal. 2018)..................................................17, 18, 23

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
  310 F. Supp. 3d 1133 (S.D. Cal. 2018)..................................................4, 18, 19, 27

*Nunez-Euceda v. United States*,
  No. 2:20-cv-10793-VAP-GJS, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021)............... *passim*

*Nurse v. United States*,
  226 F.3d 996 (9th Cir. 2000) ...........................................................17, 21, 22, 29

*O'Toole v. United States*,
  295 F.3d 1029 (9th Cir. 2002) ...........................................................................14

*P.G. v. United States*,
  No. 4:21-cv-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022).................... *passim*

*Peña Arita v. United States*,
  470 F. Supp. 3d 663 (S.D. Tex. 2020) ................................................................19

*Peterson v. Martinez*,
  No. 3:19-cv-01447-WHO, 220 WL 999832, at *8 (N.D. Cal. Mar. 2, 2020) .......................22

*Plascencia v. United States*,
  No. EDCV 17-02515 JGB (SPx), 2018 WL 6133713, at *9 (C.D. Cal. May 25, 2018).........17

*Prescott v. United States*,
  973 F.2d 696 (9th Cir. 1992) .........................................................................14, 27

*Rodriguez v. United States*,
  2:22-cv-02845-JLS-AFM (C.D. Cal. Sept. 12, 2022).........................................16

*Rowen v. Soundview Commcn's, Inc.*,
  No. 14-cv-05530-WHO, 2015 WL 899294 (N.D. Cal. Mar. 2, 2015) ....................11

*Sabow v. United States*,
   93 F.3d 1445 (9th Cir. 1996) ..........................................................................24

*Sandoval v. Cty. of San Diego*,
   985 F.3d 657 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 711 (2021)..........................22

*Smith v. City of Fontana*,
   818 F.2d 1411 (9th Cir. 1987) ........................................................................18

*Sook Young Hong v. Napolitano*,
   772 F. Supp. 2d 1270 (D. Haw. 2011) ............................................................23

*SPD Swiss Precision Diagnostics GmbH v. Church & Dwight Co.*,
   No. CV 09-0291 JSW, 2009 WL 981233 (N.D. Cal. Apr. 13, 2009)....................10

*Terraza v. Safeway Inc.*,
   241 F. Supp. 3d 1057 (N.D. Cal. 2017) ..........................................................14

*W.S.R. v. Sessions*,
   318 F. Supp. 3d 1116 (N.D. Ill. 2018) ............................................................23

*Walding v. United States*,
   955 F. Supp. 2d 759 (W.D. Tex. 2013)............................................................30

*Welch v. United States*,
   409 F.3d 646 (4th Cir. 2005) ....................................................................24, 25

*Whisnant v. U.S.*,
   400 F.3d 1177 (9th Cir. 2005) ........................................................................14

*Williams v. Bowman*,
   157 F. Supp. 2d 1103 (N.D. Cal. 2001) ............................................................7

*Williams v. Robert Half Int'l Inc.*,
   No. 4:20-CV-03989-KAW, 2020 WL 12655622 (N.D. Cal. Sept. 18, 2020) ........11

<u>Statutes and Codes</u>

United States Code
   Title 6, Section 279(g)(2)..................................................................................25
   Title 8, Section 1232(b)(3).................................................................................25
   Title 28, Section 1346(b)(1)...............................................................................14
   Title 28, Section 1402(b)......................................................................................5
   Title 28, Section 1404(a)......................................................................................5
   Title 28, Section 2674.........................................................................................27
   Title 28, Section 2680(a).............................................................................24, 26

OPPOSITION TO MOTION TO TRANSFER AND MOTION TO DISMISS
Case No: 4:22-cv-5333

1

<u>Rules and Regulations</u>

2

Federal Rules of Civil Procedure

3

Rule 45(c)........................................................................................................12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Federal Rules of Civil Procedure
Rule 45(c)........................................................................................................12

OPPOSITION TO MOTION TO TRANSFER AND MOTION TO DISMISS

## I.      INTRODUCTION

Dozens of families who suffered under the Family Separation Policy,[1] including Plaintiffs, have filed lawsuits like this one against the United States under the FTCA. In response, the Government has routinely filed motions to transfer and dismiss. To date, the Government has lost every motion to transfer venue where venue was based on plaintiff's residence and every motion to dismiss for subject matter jurisdiction—including such motions brought in the Northern District of California. Undeterred by universal rejection of its arguments, the Government[2] has filed a near-identical Motion to Transfer or Dismiss ("Motion") here.

In moving to transfer, the Government fails to acknowledge clear Ninth Circuit law that resident plaintiffs receive substantial deference in their selection of a forum, and the Government does not come close to the required "strong showing" that inconvenience and justice favor transfer. Every identified witness in this litigation resides in this District, and Plaintiffs are low-income individuals who would be heavily burdened by leaving work and their families to travel to testify. The Government does not identify a single witness who would be inconvenienced if the case proceeds in this District. Nor has the Government explained how justice would be served by transfer, which would certainly cause delay. The Government's transfer arguments lack merit.

The Government's dismissal arguments similarly lack merit. The Government asserts that it is immune from liability because of the FTCA's "discretionary function" and "due care" exceptions. Neither exception applies. The "discretionary function exception" ("DFE") does not shield unconstitutional conduct because Government officials lack discretion to violate the constitution, and district courts in the Ninth Circuit have uniformly concluded that the family separation practice at issue violates due process, rendering the DFE inapplicable. The "due care exception" ("DCE") applies only where the Government is carrying out a duty imposed by statute or regulation, which the Government *admits* did not occur here (*see* Mot. at p. 8: "President Biden took action to undo the policies that led to Plaintiffs' separation…"). And the Government does not even address the

---

[1] As defined in the Complaint, the United States' "policy of intentionally separating immigrant families for the express purpose of causing those families emotional harm." ¶ 1.

[2] "Government" refers to Defendant.

1    requirement that the statute or regulation be carried out with "due care." These copy-paste arguments

2    have no merit.

3          Next, the Government argues that it is immune from liability because the FTCA only allows

4    recovery for actions for which a private person could be held liable, and a private person cannot

5    enforce immigration laws.[3] But Plaintiffs have not sued over enforcement of immigration laws.

6    Plaintiffs have sued over the act of forcibly separating families and cruelly prolonging their

7    separation. The question is whether private individuals could be held liable for analogous conduct,

8    and courts have already found that they can.

9          The Government then submits that the FTCA does not allow "systemic" tort claims, a

10   manufactured concept that bears no relation to the actual Complaint which alleges tortious acts of

11   <u>individual Government officials</u>, not the Government as a whole. Finally, since Plaintiffs seek

12   recovery stemming from Government officials' own acts and omissions, the "independent contractor

13   exclusion" does not apply.

14         This Court should reach the same conclusion as the other courts to address these issues and

15   deny the Motion.

16   **II.    FACTUAL BACKGROUND**

17         **A.    The Government's family separation practices**

18         Before 2017, when federal immigration officials apprehended parents with their children, the

19   parents and children were detained together (if at all). Compl. ¶ 21. In 2017, the Government

20   changed tack and began considering separating detained immigrant parents from their children in

21   order to deter people from seeking asylum in the United States by inflicting suffering. *Id.* ¶ 22.

22         The Government piloted the separation of migrant families as a deterrence strategy in Texas

23   in 2017. *Id.* ¶¶ 24-30. Both the U.S. Attorney for the Western District of Texas and the federal

24

25   ---

     [3] The Government's Motion focuses heavily on laws pertaining to illegal entry into the United States
26   and laws that allow the Government to detain persons suspected of illegal border crossing. Those
     laws are irrelevant: they are not at issue in this case, as Plaintiffs have not sued the Government for
27   detaining them after suspected illegal entry. The Government focuses on those laws in order to
     misrepresent Plaintiffs' case as one challenging immigration laws or procedures rather than the
28   Government's policy of "intentionally separating immigrant families for the express purpose of
     causing those families emotional harm." Compl. ¶ 1.

magistrate judge who presided over many criminal prosecutions related to the Texas pilot program criticized the program, including the Government's haphazard tracking of families, and noted the severe emotional toll that separated families faced. *Id*. ¶¶ 31-33, 37.

After the pilot program concluded, federal officials continued to develop a broader family separation program. The officials responsible for the program's development, including the Counselor to the Attorney General, were contemporaneously aware of the criticism that the U.S. Attorney for the Western District of Texas and the federal magistrate judge had made about the Texas pilot. *Id*. at ¶ 32. These officials also knew that prior administrations had rejected family separations as unduly traumatizing and detrimental to the immigrant families and, in particular, their children. *Id*. ¶¶ 34-35. Government officials responsible for managing the care and custody of children separated from their parents communicated to supervisors that family separations are "inconsistent" with the Government's "legal requirement to act in the best interest of the child." *Id.* ¶ 38. The American Academy of Pediatrics also directly warned the Government that family separations devastate family relationships. *Id.* ¶ 39.

Following the disastrous results of the pilot program, the Government implemented the Family Separation Policy across the entire border in April 2018. Government officials believed that such family separations would both deter migration generally and pressure separated families into dropping their asylum claims. *Id.* ¶¶ 2, 42-51.  As pretext for the separations that were the Government's actual goal, the Department of Justice issued the "Zero-Tolerance Policy," which purported to require prosecution for all misdemeanor border crossings between ports of entry, but in fact specifically targeted parents traveling with young children for prosecution. *Id.* ¶ 51. Government officials separated thousands of families while the "Zero-Tolerance Policy" was in place.

The Family Separation Policy that the government implemented went far beyond what the publicly touted "Zero Tolerance Policy" ostensibly allowed. Under the cover of "Zero Tolerance," Government officials separated families even where the parents were <u>never prosecuted</u>, as happened to two of the Plaintiff families here. *Id.* ¶¶ 54, 117, 170. And where a parent <u>was</u> prosecuted, the Government kept families separated even after the parent served a cursory sentence (like Plaintiff

1   Ignacio P.G.'s "time served" sentence for misdemeanor "illegal entry"). Mot. p. 7.[4] As Plaintiffs'

2   experiences illustrate, parents were separated from their children for months, often without knowing

3   anything about where their children were, and with the children thinking they would never see their

4   parents again. Nothing in the "Zero-Tolerance Policy" itself required, or even plausibly explains, the

5   callousness and cruelty with which Government agents treated Plaintiffs' families by separating

6   fathers from sons.

7        In June 2018, a court in the Southern District of California enjoined the Government from

8   separating families absent a finding of parental unfitness, even where the parent had been prosecuted

9   for misdemeanor entry under the Zero-Tolerance Policy. Compl. ¶ 60. In so doing, the district court

10  determined that the class action plaintiffs who challenged the Government's family separation

11  practices were likely to succeed in showing that the practices violate the Due Process Clause of the

12  U.S. Constitution.[5] *Id.*

13       **B.    The Plaintiff families' separation and mistreatment**

14       Plaintiffs are three father-son pairs who were separated by federal agents while in the custody

15  of immigration officials in May 2018. All three families came to the United States to seek asylum.

16  Compl. ¶¶ 67, 105, 126. As the Complaint describes in detail, Government officials forcibly

17  separated each parent and child despite the obvious horror and trauma being inflicted on Plaintiffs.

18  *Id.* ¶¶ 69-71, 111-112, 133-135, 139. Officials kept Plaintiffs separated for months while leaving

19  Plaintiffs in a constant state of fear that they would never see their father or son again, for a time not

20  even knowing if they were still alive. *Id.* ¶¶ 87, 118, 146. The trauma of separation was exacerbated

21  by the treatment Plaintiffs suffered at the hands of Government officials: Plaintiffs were forced into

22  close contact with human waste (*id.* ¶¶ 72, 114, 136, 138, 152); deprived of the ability to wash or

23  bathe (¶¶ 73, 75, 86, 87, 115, 122, 141); intentionally subjected to prolonged physical agony (¶ 116);

24  deprived of food and potable water (¶¶ 68, 73, 75, 85, 86, 114, 117, 129, 136, 138, 152); deprived of

25  medical or mental health care (¶¶ 80-82, 86, 117, 122); and coerced to sign documents they had no

27  [4] The Complaint incorrectly states that Ignacio P.G. was not prosecuted (¶ 123). It has now come to Plaintiffs' counsel's attention that he was, as indicated here and in the Government's Motion.
28  [5] *Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1145-46 (S.D. Cal. 2018) ("*Ms. L. II*")

1  way of understanding (¶¶ 91, 99, 106, 108, 131, 144, 145). Officials never provided these Mam and

2  Q'eqchi' speakers with translators while in custody, leaving them in linguistic and informational

3  isolation throughout their separation and detention, dramatically exacerbating their trauma and

4  emotional distress. *Id.*, ¶¶ 88; 91; 108; 117; 121; 130-32; 144. Upon being reunited, Plaintiffs

5  suffered, and continue to suffer, the lasting effects of Government officials' harmful acts. *Id.* ¶¶ 103-

6  04; 122; 124-25; 152, 169.

7  **III.    THE GOVERNMENT FAILS TO SHOW THAT VENUE TRANSFER IS**
       **APPROPRIATE.**

8

9        The six plaintiffs—all low-income asylum seekers—brought their claims in the judicial

10  district where they reside, as expressly authorized by 28 U.S.C. § 1402(b). Plaintiffs do not have the

11  resources to travel to Arizona to litigate this case. Transfer would effectively shut them out of court.

12  The Government offers no countervailing factor entitled to remotely similar weight. The

13  Government does not name a single witness in Arizona, or anywhere else. The Government ignores

14  dozens of allegations of tortious actions its agents committed in Arizona, California, Texas, and New

15  Mexico while shipping the Plaintiff Children far from their fathers, or in Washington, D.C. while

16  developing and implementing the Family Separation Policy. Most tellingly, the Government does

17  not mention that in a slew of decisions across the country, courts have uniformly rejected identical

18  motions. The Government falls far short of overcoming the "great weight" accorded to Plaintiffs'

19  choice of forum. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

20        **A.    Legal standard**

21        The Government must show that transfer would be for "the convenience of the parties and

22  witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The Government admits that it bears

23  the burden of establishing that transfer is appropriate (Mot. at 9) but fails to mention just how heavy

24  that burden is. "[T]he burden is on the party seeking transfer to show that when these factors are

25  applied, the balance of convenience *clearly* favors transfer." *Lax v. Toyota Motor Corp.*, 65 F. Supp.

26  3d 772, 776 (N.D. Cal. 2014) (emphasis added). A "defendant must make a strong showing of

27  inconvenience to warrant upsetting the plaintiff's choice of forum." *Chen v. Pioneer Oil, LLC*, 472

28  F. Supp. 3d 704, 710 (N.D. Cal. 2020). "[A] court will not grant a transfer simply because the

-5-

1   transferee court is more convenient for defendants. If the transfer would merely switch the

2   inconvenience from defendant to plaintiff, the transfer should not be allowed." *H.L. v. Wal-Mart*

3   *Stores, Inc.*, 2015 WL 12743600, at *4 (C.D. Cal. Sept. 9, 2015)

4       The Government cites a list of factors developed in a contract case with a forum-selection

5   clause (Mot. at 9, citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)), but

6   this is not a contract case and there is no forum selection clause. In the absence of a forum-selection

7   clause (as here), courts in this District consider the following "non-exclusive" list of factors:

8       (1) [P]laintiff's choice of forum, (2) convenience of the parties, (3) convenience of
9       the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with
        the applicable law, (6) feasibility of consolidation with other claims, (7) any local
10      interest in the controversy, and (8) the relative court congestion and time of trial in
        each forum.

11  *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1040 (N.D. Cal. 2020).

12      **B.    Plaintiffs' choice of venue is entitled to great deference**

13      The Ninth Circuit has made clear that "great weight is generally accorded plaintiff's choice

14  of forum." *Lou*, 834 F.2d at 739. Exceptions to this rule are limited, such as where the parties have

15  agreed to a forum-selection clause, in a class action, or where plaintiffs are forum shopping. *Doe v.*

16  *Epic Games, Inc.*, 435 F. Supp. 3d at 1040 n.11, 1041. None of those factors is present here: there is

17  no contract; this action is brought by individuals for themselves only; and Plaintiffs are residents of

18  the forum. A "plaintiff's choice of forum is especially given deference where the plaintiff is a

19  resident of the forum in which the action is brought." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F.

20  Supp. 3d 1079, 1096 (D. Or. 2016). This rule protects plaintiffs from having to litigate and, in

21  particular, from having to travel to testify in some far-away forum. "The defendant must make a

22  strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*

23  *Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (superseded on other grounds).

24      Here, all six Plaintiffs are percipient witnesses to the tortious harmful acts inflicted upon

25  them by the Government and the damage that flowed from that harmful conduct, and they intend to

26  testify at trial.[6] Plaintiffs' choice of venue is entitled to even further deference because they are low-

27

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [6] See the declarations of Eduardo I.T., Ignacio P.G., and Benjamin J.R. filed concurrently herewith
    (collectively, "Plf. Decls."), ¶ 2.

                                    -6-

income individuals bringing an action against the Government. Plf. Decls. ¶¶ 4-5. "[W]here a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the court may also consider the relative means of the parties in determining whether to transfer." *Ferrick v. Spotify USA Inc.*, No. CV1509929BRORAOX, 2016 WL 11623778, at *5 (C.D. Cal. Oct. 26, 2016). Here, Plaintiffs cannot bear the cost of travel to Arizona to litigate this case, or the extended time away from employment and other obligations necessary for basic survival and family care. Plf. Decls. ¶¶ 4-5. The federal government, on the other hand, is "well equipped to litigate elsewhere." *Cf. Gutta v. Renaud*, No. 20-CV-06579-DMR, 2021 WL 533757, at *8 (N.D. Cal. Feb. 12, 2021) (holding that USCIS did not meet its burden to transfer venue).

The Government cites a handful of cases in which plaintiffs' choice of forum was accorded less weight because the chosen forum lacked significant connection with the claims in the complaint. Mot. at 15. These cases are inapplicable here, where multiple material allegations are connected to this District—most significantly, the allegations that the Government's unlawful actions caused Plaintiffs to suffer years of emotional distress *in this District*. Complaint ¶¶ 102-104, 124-125, 169-170. Accordingly, Plaintiffs' choice of forum is not just one factor among many; it is *dispositive* unless the Government can "demonstrate[] that balance of convenience and interests of justice factors *clearly* favor transfer." *Lax*, 65 F. Supp. 3d at 781 (emphasis added). As discussed below, the Government does not come close to overcoming this presumption.

### C. Because all parties and the only known witnesses reside here, the convenience-of-witnesses and convenience-of-parties factors strongly favor Plaintiffs

To be entitled to weight on this factor, "[t]he moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 587 (N.D. Cal. 2020). This is a general rule in this District. *See, e.g.*, *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001); *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1049 (N.D. Cal. 2001). Here, the Government has failed to identify a single witness in Arizona, let alone "explain their testimony" or "its relevance." *Fitbit*, 336 F.R.D. at 587. The Government's failure is magnified since it could presumably pinpoint the exact location of Plaintiffs throughout their time in Government custody and so, presumably, knows which

1   Government employees and agents were present throughout Plaintiffs' experiences described in the

2   Complaint.[7] Given the Government's access to this knowledge but failure to provide it—contrary to

3   the Government's claim that "to the government's knowledge, no potential Government witnesses

4   for the claims against it are in or near this District" (Mot. at 13)—it would appear that, to the

5   Government's knowledge, no potential Government witnesses are located in or near Arizona, either.

6   The Government has not met its burden.

7           Even if the Government had no obligation to identify specific witnesses, its contention that

8   "most" of its witnesses "are in the District of Arizona," in addition to being unsupported, is

9   irrelevant: the Court "discounts any inconvenience to the parties' employees, whom the parties can

10  compel to testify." *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008). Moreover, the

11  Government's argument is based on a false premise: that, because the separation occurred in

12  Arizona, "the critical witnesses who have knowledge of the facts regarding the government's

13  allegedly tortious conduct are located in or close to the District of Arizona." Mot. at 13. But that

14  does not necessarily follow because the separation, detention, and torts committed throughout that

15  process occurred four years ago and under a different presidential administration. There is no

16  indication that tortfeasors who were in Arizona four years ago remain there today. Again, the

17  Government has not met its burden.

18          In addition to the only six witnesses identified in this case—the Plaintiffs—other witnesses

19  likely to testify reside in this District. For example, in similar lawsuits, including one in this District,

20  the Government has demanded discovery from educators, medical providers, and mental-health

21  professionals who interacted with the plaintiffs *after* their release from custody. Petty Decl. at ¶ 5.

22  The Government will almost certainly seek discovery from these same witnesses in this case, yet

23  omits them from its lists of potential witnesses. Like Plaintiffs, these potential witnesses' burden of

24  traveling to Arizona to testify would likely dwarf the Government's burden to litigate in the

25

26

27  ───────────────
    [7] Indeed, Government declarant James De La Cruz, himself in Washington D.C., purports in his

28  declaration to pinpoint the locations of the Plaintiff sons throughout their detention. De La Cruz
    Decl. ¶¶ 12-16.

-8-

1    Northern District of California. The Government ignores the burden on Plaintiffs' witnesses,

2    including Plaintiffs themselves, in its arguments.

3          The Government also fails to address the significant tortious conduct alleged outside of

4    Arizona. The Government ignores the 33 paragraphs describing years of Government deliberations

5    in *Washington D.C.*, resulting in the decision to forcibly separate families seeking asylum in the

6    United States in order to make the process so unbearable that refugees would not attempt it. *See*

7    Compl. ¶¶ 21-53; 56. And it ignores: (1) the Government agents who blasted Ignacio with frigid air

8    during an all-night bus ride to *New Mexico* for the sole purpose of inflicting prolonged physical

9    agony (Compl. ¶ 116); (2) the agents in *California* who forced Benjamin into close contact with

10   human waste, prevented him from sleeping, and deprived him of food to the point that he was so

11   malnourished that it was difficult for him to eat upon his release (¶ 152); (3) the officials who failed

12   to fly Benjamin *from California to Texas*, where his son William had been flown with the promise of

13   being reunited with his father; (¶¶ 159-60); (4) the officials who kept William in *Texas* for days

14   before sending him back to Arizona alone with no explanation (¶¶ 160-161); (5) the officials in

15   *California and elsewhere* who then failed to reunite Benjamin and William for *eight more months*

16   while Benjamin languished in detention in *California* (¶¶ 162-164); (6) the agents in *San Diego,*

17   *California* who watched Eduardo become violently ill without providing medical attention, potable

18   water, or the opportunity to wash himself (¶ 86); (7) the officials who failed to facilitate contact

19   between Benjamin and William while William was in *Oakland, California* and Benjamin was in

20   *Adelanto, California* (¶¶ 164-65);[8] (8) the agents responsible for subjecting Edwin to extreme heat

21   for a prolonged period in *Tornillo, Texas* (¶ 97); (9) the officials in *Texas* who intimidated Eduardo

22   into signing documents he did not understand and that he would not have signed if he had

23

24   _____

25   [8] The Government claims that "there was no alleged contact between any Plaintiffs and this District until after the Plaintiffs were released." Mot. p. 12. In the case of Benjamin and William, this is at
26   best false and at worst an effort to leverage tortious action in support of this Motion. Benjamin and William had contact when they could while William was in Oakland and Benjamin remained
27   detained. To the extent that their contact was infrequent, it was because Government agents prevented it, failing to facilitate contact between father and son for months after William's release.
28   Compl. ¶ 165. The Government also ignores allegations (among others) that ICE agents intimidated and threatened Eduardo I.T. *in this District* after his release. *Id.* ¶ 102.

OPPOSITION TO MOTION TO TRANSFER AND MOTION TO DISMISS

understood them and had not been forced to sign them; and (10) the officials in *San Francisco, California* who threatened Eduardo in a language he did not fully understand, sending him into a spiral of fear after he believed he had found safety (¶ 96).[9] There is no reason to believe that any of those Government witnesses are in Arizona.

The Government's cases suggesting that "liability" witnesses are more important under this factor (Mot. at 14) also do not help them because, here, the Plaintiffs are the only named liability witnesses to date and reside in this District. Additionally, the harmful effects the Government's tortious acts have inflicted on Plaintiffs occurred (and are occurring) in this District, which the Government concedes is relevant to the analysis (although the Government argues that this factor is "*less* important than liability in a Section 1404(a) transfer analysis," Mot. at 14 (emphasis added)). Accordingly, this factor favors Plaintiffs.

### D. Because the Government merely seeks to shift the inconvenience to Plaintiffs, the convenience-of-parties factor weighs in Plaintiffs' favor

The Government attempts to make the dubious claim that, if litigation proceeds in this District, the Government would require "site visits" involving "flying back and forth from California to Arizona" and "attorney time." Mot. at 14. The Court should discount this argument entirely: "Convenience of…counsel bears no weight in the analysis of convenience of the witnesses and parties." *SPD Swiss Precision Diagnostics GmbH v. Church & Dwight Co.*, No. CV 09-0291 JSW, 2009 WL 981233, at *3 (N.D. Cal. Apr. 13, 2009). If the convenience of counsel were relevant, it would favor Plaintiffs. The Government can be represented by the local U.S. Attorneys' Office wherever it litigates. Plaintiffs' pro bono counsel reside and work in this District and have no offices in Arizona. Petty Decl. ¶ 4.

Plaintiffs have shown that transfer to Arizona would not only inconvenience them, it would be financially infeasible. Plf. Decls. ¶¶ 4-5. Where, as here, transfer "would merely shift that inconvenience rather than eliminate it," convenience weighs in Plaintiffs' favor. *Advanced Transit*

---

[9] The Government falsely claims (three times) that the Complaint does not plead tortious conduct within the Northern District of California (Mot. pp. 2, 11, 12), and that "virtually" no tortious conduct is alleged in California (*id.* p. 11).

OPPOSITION TO MOTION TO TRANSFER AND MOTION TO DISMISS

1   *Dynamics, Inc. v. J.B. Hunt Transp., Inc*., No. C-11-00075-DMR, 2011 WL 1557927, at *3 (N.D.

2   Cal. Apr. 25, 2011).

3       **E.      The ease-of-access-to-evidence factor is neutral as to documentary evidence and
                strongly favors Plaintiffs as to testimonial evidence**

4

5       The Government claims that "[i]t will cost much more" to litigate this case in this District

6   than in Arizona because "a significant amount of discovery will concern initial detention facilities

7   located in Arizona." Mot. at 14. But "in this type of case where electronic discovery is the norm

8   (both for electronic information and digitized paper documents), ease of access is neutral given the

9   portability of the information." *Lax*, 65 F. Supp. 3d at 780; *see also Williams v. Robert Half Int'l*

10  *Inc.*, No. 4:20-CV-03989-KAW, 2020 WL 12655622 at *3 (N.D. Cal. Sept. 18, 2020) (same). The

11  Government does not contend—and makes no showing—that there is any physical, non-digitized

12  evidence in Arizona at all. Government counsel has proven it can coordinate and draw on resources

13  for its defense from around the country, already providing a declaration from a Washington, D.C.

14  declarant (James De La Cruz) in support of the Motion, presumably without needing to fly to

15  Washington, D.C. This factor is neutral as to documentary evidence (which would, of course,

16  include documentary evidence related to tortious conduct and ongoing harms in this District, which

17  the Government fails to mention) and weighs heavily in favor of Plaintiffs as to testimonial

18  evidence, as explained above.

19      **F.      This Court is just as equipped to apply the governing law of California, Arizona,
                New Mexico, and Texas as a District of Arizona court**

20

21      The Government argues that a judge of the District of Arizona would be "most familiar with

22  the governing law" (Mot. p. 12), but "federal judges routinely apply the law of other states than the

23  one in which they sit." *Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124, 1136 (N.D. Cal. 2019);

24  *Rowen v. Soundview Commcn's, Inc.*, No. 14-cv-05530-WHO, 2015 WL 899294 at *7 (N.D. Cal.

25  Mar. 2, 2015). This Court has expressed "confiden[ce] that any federal court can comprehend and

26  apply" other states' laws, "a task which federal courts are routinely required to do." *Kondo v.*

27  *Anthelio Health Care Sols., Inc.*, No. 15-CV-03244-DMR, 2015 WL 7710301, at *5 (N.D. Cal. Nov.

28  30, 2015). The common law of Arizona tort is not complicated. In relevant respects, Arizona is a

-11-

1    Restatement state. *See, e.g.*, *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987) (Arizona follows

2    Restatement for intentional infliction of emotional distress); *Aztlan Lodge No. 1, Free & Accepted*

3    *Masons of Prescott v. Ruffner*, 745 P.2d 611, 613 (Ariz. Ct. App. 1987) ("Arizona courts will look to

4    the Restatement in the absence of Arizona authority to the contrary."). Furthermore, the Government

5    ignores that Arizona is not the only governing law. As described above, the tortious acts at issue

6    occurred in many other states, including California, New Mexico, and Texas. Accordingly, this

7    factor is neutral.

8        **G.    The "availability of compulsory process" factor is either neutral or favors**
         **Plaintiffs**
9

10       The Government argues that, because the employees of the ORR[10] facilities where the

11   children were held are non-party witnesses, compulsory process would not be available if they

12   refused to travel to California to testify. Mot. at 14. But the Government admits that two of the three

13   children were held in ORR facilities *outside* of Arizona, far outside the 100-mile radius allowed for

14   compulsory process under Fed. R. Civ. P. 45(c). Edwin E.I.I. was detained in ORR custody in San

15   Antonio, Texas, over 700 miles from the nearest District of Arizona courthouse in Tucson. Leonel

16   Y.P.G. was detained in Harlingen, Texas (¶ 14), 900 miles away. De la Cruz Decl. ¶¶ 13-14.

17   Compulsory process would not be available as to any of these non-party witnesses even if this case

18   were transferred to Arizona.

19       Additionally, the Government ignores the non-party witnesses that reside in the Northern

20   District of California who could refuse to travel to Arizona to testify. These include Plaintiffs'

21   educators, counselors, and medical and mental-health providers, all of whom have been subject to

22   Government discovery in similar lawsuits. Petty Decl. ¶ 5. As a result, this factor is either neutral or

23   favors Plaintiffs.

24       **H.    This District's interest in the controversy outweighs Arizona's**

25       The Government cites the *Canal A* case in support of its argument that Arizona has a "greater

26   interest in keeping the people located in that District safe from alleged Government wrongdoing"

27

28   _____
     [10] Office of Refugee Resettlement, part of the Department of Health and Human Services.

OPPOSITION TO MOTION TO TRANSFER AND MOTION TO DISMISS

1   (Mot. at 15), but *Canal A* actually supports venue in the Northern District of California. In that case,

2   Florida-based plaintiffs sued the federal government in Los Angeles because the government

3   wrongdoers were in Los Angeles. The Los Angeles court sent the case to Florida so that the Florida

4   court could protect its own residents. *Canal A Media Holding, LLC v. U.S. Citizenship and Immigr.*

5   *Servs.*, CV 17-6491 FMO (JCx), 2018 WL 7297829, at *4 (C.D. Cal. Sept. 30, 2018) ("[G]iven that

6   this case involves… a Florida resident—who is currently undergoing removal proceedings in

7   Florida—the outcome of this case will principally affect residents of Florida."). By that reasoning,

8   this case should remain here, in the District where Plaintiffs reside.

9        **I.**     **The court congestion factor is neutral or favors Plaintiffs**

10        "As both parties have consented to magistrate court jurisdiction… the relative average

11   caseloads or median times to trial for district court judges does not factor into the analysis of

12   whether transfer should be granted." *Advanced Transit Dynamics, Inc. v. J.B. Hunt Transp., Inc.*,

13   No. C-11-00075-DMR, 2011 WL 1557927, at *3 (N.D. Cal. Apr. 25, 2011). However, because "this

14   case would likely be delayed by several months were it now to be transferred and restarted in a new

15   forum," this factor arguably favors Plaintiffs. *Id.*

16        **J.**     **The Government has lost every venue transfer motion based on Plaintiff's**

17                     **residence thus far in the Family Separation cases**

18        The Government states in conclusory fashion that Judge Westmore made the wrong decision

19   when she examined the same venue issue in a similar case in May 2022. Mot. p. 16. The

20   Government paints Judge Westmore's decision as a ripple when in fact it is part of a powerful tide.

21   Every court that has ruled on a similar motion has denied it. *See, e.g.*, *E.L.A. v. United States*, No.

22   2:20-cv-01524-RAJ, 2022 WL 2046135, at *5 (W.D. Wash. June 3, 2022); *Nunez-Euceda v. United*

23   *States*, No. 2:20-cv-10793-VAP-GJS, 2021 WL 4895748, *4 (C.D. Cal. Apr. 27, 2021); *A.F.P. v.*

24   *United States*, No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570, at *4-9 (E.D. Cal. July 12, 2022).

25        Pretending these cases do not exist, the Government urges this Court to adopt the analysis of

26   a single Northern District of Illinois case, *D.A. v. United States*. But *D.A.*'s analysis is inapplicable

27   here. In *D.A.*, unlike here, the plaintiffs did *not* reside in their chosen venue, depriving their choice

28   of venue of the significant weight that attaches for Plaintiffs. *See* Helland Decl., Ex. C at 6:18-22.

-13-

OPPOSITION TO MOTION TO TRANSFER AND MOTION TO DISMISS

Instead, the *D.A.* plaintiffs filed in the Northern District of Illinois on the theory that a "substantial portion of the acts or omissions" giving rise to the claims occurred there—but those acts or omissions were alleged against a defendant that had been *dismissed from the case* by the time the transfer motion was decided. *Id.* at 13:12-18; Petty Decl., ¶ 6 & Ex. 1. The Government fails to point to any analogous case where a court has agreed with its venue transfer arguments. Nor can it; all similar cases support Plaintiffs.

Because all convenience and interest-of-justice factors either favor Plaintiffs or are neutral, the Government has failed to meet its heavy burden of a "strong showing" that transfer to the District of Arizona is warranted. The Court should deny the Government's Motion.

## IV.   BECAUSE PLAINTIFFS' TORT CLAIMS ARE COGNIZABLE UNDER THE FTCA, THE MOTION TO DISMISS SHOULD BE DENIED

### A.   Legal standard

Plaintiffs' causes of action arise under the FTCA, which waives the United States' immunity from liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "[T]he FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly" in order to "effectuate Congress's intent to compensate individuals" tortiously harmed by the Government. *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002). The Government bears the burden of proving the FTCA's exceptions apply. *Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992).

"Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). "Where a defendant… asserts that the allegations in the complaint are insufficient to establish subject matter jurisdiction as a matter of law[,]… we take the allegations in the plaintiff's complaint as true." *Whisnant v. U.S.*, 400 F.3d 1177, 1179 (9th Cir. 2005). The "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1081 (N.D. Cal. 2017).

-14-

1

**B.      The Government's motion to dismiss fails to address Plaintiffs' actual claims**

2          All of the Government's arguments for dismissal suffer from a common defect: they do not

3   address the claims that Plaintiffs actually allege. The Government admits that it had a "prior practice

4   of separating children from their families at the United States-Mexico border" and further admits

5   that this practice constituted a "human tragedy." Mot. at 1. Plaintiffs allege causes of action arising

6   out of this specific "prior practice," which resulted in the forcible and prolonged separation of

7   Plaintiff fathers from their sons by Government officials. Compl. ¶ 2. Plaintiffs also plead many

8   other instances of intentional, reckless, or negligent harmful conduct that Government officials

9   directed at Plaintiffs, and which caused Plaintiffs harm, both during and after their forced separation

10  (*supra*, §§ II.B, III.C). But instead of arguing that Plaintiffs' allegations fail to state a claim or

11  arguing that these actions by Government officials are subject to an exception to liability under the

12  FTCA, the Government directs its Motion at straw men by defending general Governmental

13  conduct. The Government argues, for example, that Plaintiffs' claims fall within the DFE because it

14  has "broad discretion" to "enforce the Nation's criminal laws," "decide whether to prosecute a case,"

15  and "arrange for appropriate places of detention." Mot. at 19-20. In the same vein, it contends that

16  the DCE encompasses Plaintiffs' claims because there was a statutory requirement to "transfer the

17  custody of [Plaintiff] children to the care of the ORR not later than 72 hours after determining that

18  there [wa]s no parent available to care for them." *Id.* at 26 (internal quotation marks and citations

19  omitted). The Government also asserts that Plaintiffs cannot make the required showing that a

20  private individual, under like circumstances, would be liable for the conduct described in the

21  Complaint "[b]ecause only the federal Government has the authority to enforce federal criminal and

22  immigration laws and make detention determinations." *Id.* at 27.

23         But Plaintiffs aren't challenging any of that general conduct. They are not arguing that there

24  is anything inherently tortious about the Government's enforcing its laws, making prosecution

25  decisions, transferring custody of unaccompanied children in detention, or deciding where to house

26  detainees. Instead, Plaintiffs allege, among other things, that Government officials engaged in

27  tortious conduct by forcibly separating Plaintiff parents from their children without explanation and

28  subjecting them to constant cruelty for the express purpose of causing them harm. The arguments the

-15-

Government advances in support of dismissal do not address that conduct. That is a fatal defect.

The Government is less than candid with its "recognition" that "district courts adjudicating FTCA claims arising out of the Zero-Tolerance Policy have to date reached differing conclusions on the threshold jurisdictional arguments presented in this motion to dismiss." Mot. at 2. This is false: district courts have reached conclusions that "differ" only from the Government's position. District courts are <u>unanimous</u>—in *fourteen out of fourteen* cases thus far—in rejecting the Government's subject matter jurisdiction arguments. Petty Decl., ¶ 7. This includes five in the Ninth Circuit, including the Northern District of California.[11] In these motions, the Government argued that, because it has discretion over some immigration decisions, it necessarily had discretion to forcibly separate Plaintiff families without notice and to keep them separated for weeks or months. The Government has never prevailed, yet continues to make the same arguments. As it does here, the Government has also repeatedly tried to support its DFE argument by attacking individual factual allegations as if they themselves were standalone causes of action. In one of those cases, *A.P.F. v. United States*, the court specifically "reject[ed] the United States' re-categorization of Plaintiffs' factual allegations as standalone claims." 492 F. Supp. 3d 989, 996-97 (D. Ariz. 2020). In another, *C.M. v. United States*, the court observed: "To the extent the United States asks the Court to parse the Complaint to assess whether claims with respect to individual factual allegations are barred, the Court declines to do so." No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) ("*C.M. I.*"); *see also Nunez Eueeda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021) (denying motion to dismiss). The result here should be no different.

### C.     The discretionary function exception does not apply here

The Government argues that its actions are protected by the DFE, which bars claims

---

[11] *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020); *P.G. v. United States*, No. 4:21-cv-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022) *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020); *Nunez Eueeda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021). An order is still pending in a sixth case in this Circuit: *Rodriguez v. United States*, 2:22-cv-02845-JLS-AFM (C.D. Cal. Sept. 12, 2022), Dkt. No. 18 (taken under submission without oral argument on Dec. 8, 2022, Dkt. No. 24).

1  regarding conduct that (1) "involves an element of judgment or choice," and (2) is "based on

2  considerations of public policy." *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). But it is

3  settled Ninth Circuit law that the DFE "does not shield unconstitutional Government conduct," and it

4  has been repeatedly established that family separation under "Zero Tolerance" was unconstitutional.

5  *A.P.F.*, 492 F. Supp. 3d at 996 (citing *Nurse v. United States*, 226 F.3d 996, 1002 & n.2 (9th Cir.

6  2000)). Also repeatedly established is that family separations were not in furtherance of cognizable

7  public policy (*Nurse* at 1001), so the Government fails to make *either* necessary DFE showing.

8           1.      **Separating Plaintiff families was not a discretionary act because it
                    was unconstitutional**
9

10          The Government's argument fails as a threshold matter because the forcible, prolonged

11  separations that Plaintiffs challenge here were unlawful and thus non-discretionary. "In general,

12  Governmental conduct cannot be discretionary if it violates a legal mandate." *Galvin v. Hay*, 374

13  F.3d 739, 758 (9th Cir. 2004). That includes constitutional violations: because "federal officials do

14  not possess discretion to violate constitutional rights, the discretionary function exception does not

15  apply" where constitutional violations occur. *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004)

16  (internal citations and quote marks omitted); *see also Nurse*, 226 F.3d at 1002 & n.2. Courts in this

17  Circuit have already found that the forcible and prolonged separation of families that constituted the

18  Family Separation Policy (i.e., separation that occurred under the pretextual "Zero Tolerance

19  Policy") "shocked the conscience" and was therefore unconstitutional.[12] *See, e.g.*, *Ms. L. v. U.S.

20  Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018) ("*Ms. L. I*"). Because

21  Plaintiffs plead forcible and prolonged family separation under the Family Separation policy, the

22  DFE does not apply.[13]

23

24  _____

25  [12] A decision on whether a constitutional violation actually occurred is premature at the motion to
    dismiss stage. *See, e.g.*, *Plascencia v. United States*, No. EDCV 17-02515 JGB (SPx), 2018 WL
    6133713, at *9 (C.D. Cal. May 25, 2018) ("[A]t this stage of the proceeding, the Court cannot
26  determine whether a constitutional violation occurred and determines… the discretionary function
    exception does not apply.") (denying in relevant part motion to dismiss FTCA/IIED claim
27  challenging ICE detention).
    [13] It also violated a host of other legal mandates—a fact the Government never disputes. *See* Compl.
28  ¶¶ 171-185. Thus, the DFE exception does not apply even if no unconstitutional acts were alleged.

                                   -17-

1    The Government cannot reasonably argue otherwise. "The Supreme Court has repeatedly

2    reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship."

3    *Kelson v. City of Springfield*, 767 F.2d 651, 654 (9th Cir. 1985) (citing cases) (overruled on other

4    grounds). "Unwarranted state interference with the relationship between parent and child violates

5    substantive due process." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 441 (9th Cir. 2010) (citing

6    *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987) (overruled in part on unrelated

7    grounds)). The firm establishment of the parent-child relationship as constitutionally protected

8    combined with the findings in this Circuit that Family Separation involved unconstitutional acts, *plus*

9    the repeated failure of these same arguments in this Circuit and all other Circuits, renders the

10    Government's DFE argument frivolous.

11    Upon consideration of the same acts of family separation alleged in the Complaint, the

12    Southern District of California held:

13    These allegations sufficiently describe Government conduct that arbitrarily tears at the
      sacred bond between parent and child, and is emblematic of the "exercise of power without

14    any reasonable justification in the service of an otherwise legitimate Governmental
      objective[.]" Such conduct, if true, as it is assumed to be on the present motion, is brutal,

15    offensive, and fails to comport with traditional notions of fair play and decency. At a
      minimum, the facts alleged are sufficient to show the Government conduct at issue "shocks

16    the conscience" and violates Plaintiffs' constitutional right to family integrity.
      Accordingly, Defendants' motion to dismiss Plaintiffs' due process claim is denied.

17

18    *Ms. L. I*, 302 F. Supp. 3d at 1167 (citation omitted).

19    Indeed, every court that has considered the constitutionality of the Government's "past

20    practice" of separating families at the border has found that the practice is likely

21    unconstitutional. As in *Ms. L. I*, the court in *Jacinto-Castanon de Nolasco v. U.S. Immigr. &*

22    *Customs Enf't* "easily conclude[d]" that plaintiffs were "likely to succeed on... their substantive

23    due process claim that their continued separation... violate[d] their right to family integrity under

24    the Fifth Amendment." 319 F. Supp. 3d 491, 499 (D.D.C. 2018). In *J.S.R. by and through J.S.G.*

25    *v. Sessions*, which considered the same family separation practice, even the Government

26    "agree[d] that a constitutional violation occurred when the Government separated children from

27    their parents." 330 F. Supp. 3d 731, 741 (D. Conn. 2018). The *Ms. L.* court ultimately enjoined

28    the Government's family separation practice, holding that "a finding of likelihood of success" on

-18-

1   the substantive due process claim was "assured." *Ms. L. II* at 1145. The Government cannot

2   identify a single case concluding that forcibly separating families in circumstances analogous to

3   those alleged in the Complaint is constitutional.

4          Likewise, every court that has weighed in on the issue has concluded that, because family

5   separation was unconstitutional, it cannot be shielded by DFE.[14] Thus, in *C.M. I*, the court

6   followed *Ms. L II* and concluded that plaintiffs had "plausibly alleged that the Government's

7   separation of their families violated their constitutional rights, which is not shielded by the

8   discretionary function exception." 2020 WL 1698191, at *4. The *A.P.F.* court reached a similar

9   conclusion: "Because Government officials lack discretion to violate the Constitution, the

10  discretionary function exception cannot shield conduct related to the Government's likely

11  unconstitutional separation of plaintiffs." 492 F. Supp. 3d at 996. *Nunez Eucedia*, as well,

12  concluded that plaintiff "ha[d] plausibly alleged that [family separation] had violated his

13  constitutional rights" and that, as a result, DFE did not bar his claims. 2021 WL 4895748, at *3.

14         The Government is asking this Court to break new ground. To hold that the DFE applies,

15  the Court would need to conclude—at this early stage, when the Court must accept Plaintiffs'

16  allegations as true and draw all reasonable inferences in their favor—either that the separation of

17  Plaintiff families was constitutional or that the DFE applies notwithstanding the likely

18  unconstitutionality of that conduct. If this Court were to reach either conclusion, it would be the

19  first. The uniform weight of authority in this Circuit—*Ms. L. II*, *C.M. I*, *A.P.F.*, *Nunez Eucedia*,

20  *A.F.P.*, *F.R.*, *B.A.D.J.*, *E.C.B.*, and *P.G.*—all hold that allegations of this type plausibly allege a

21  constitutional violation. And the Ninth Circuit has long held that "[f]ederal officials do not

22

23

_____

24  [14] The only court that has concluded the DFE applies to the family separation practice never
    considered whether the constitutionality of the practice made the DFE inapplicable. *Peña Arita v.*
25  *United States*, 470 F. Supp. 3d 663, 690 (S.D. Tex. 2020). The Government misleadingly tries to
    suggest otherwise by quoting a section of the order addressing whether the plaintiff could allege a
26  Fifth Amendment claim for inadequate medical care under the FTCA. Mot. at 22-23. Here, Plaintiffs
    do not assert a constitutional tort, as in a *Bivens* action. Thus, *Peña Arita* provides no help to the
27  Government's DFE argument. *D.J.C.V. v. United States*, 20 Civ. 5747 (PAE), 2022 WL 1912254 at
    *16, __F.Supp.3d.__ (S.D.N.Y. June 3, 2022) (*D.J.C.V. II*) (explaining that *Peña Arita* is
28  "inapposite" to the constitutional question).

-19-

1   possess discretion to violate constitutional rights." *Galvin*, 374 F.3d at 758.[15]

2          The Government attempts to evade the relevant legal principles by mischaracterizing

3   Plaintiffs' claims. It argues that its separation of Plaintiffs was discretionary because the

4   Government has discretion "to enforce the Nation's criminal laws," "decide whether to prosecute

5   a case," and "arrange for appropriate places of detention." Mot. at 19-20. But as the Government

6   itself acknowledges: when deciding whether the DFE applies, the Court "must first ask whether

7   the *challenged conduct* involves an element of judgment or choice." *Id.* at 18 (emphasis added;

8   quote marks and citation omitted). Plaintiffs aren't challenging the Government's enforcement of

9   criminal laws, prosecution decisions, or detention determinations. They challenge Government

10  officials' forcible and prolonged separation of Plaintiff parents from their children, which was

11  carried out with the intent to inflict emotional harm. That distinction is crucial: "While

12  defendants have a legitimate interest in enforcing the immigration laws... nothing in federal law

13  suggests that deterring immigration by indefinitely separating families... is a compelling or

14  legitimate Government objective." *Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 501. *See*

15  *also C.M. I*, 2020 WL 1698191, at *4 (concluding that "the United States was not enforcing

16  federal law when it separated Plaintiffs.").

17          **2.      Plaintiffs are not required to show their constitutional right to**
                       **family integrity was clearly established**
18

19          Recognizing that existing law does not support its DFE argument, the Government tries to

20  create entirely new law by urging the Court to hold that the Government has discretion to violate a

21  constitutional right unless the right was "clearly established" when the violation occurred.[16] Mot. at

22  25. This is a standard that courts apply when considering qualified immunity defenses in suits

23

24  _____

25  [15] The First, Second, Third, Fourth, Fifth, Eighth, Ninth, and D.C. Circuits agree that the DFE does not shield Government officials from FTCA liability when they exceed the scope of their constitutional authority. *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016).

26  [16] In this convoluted section of the Government's brief, the Government appears confused about
27  whether it is arguing for a heightened pleading standard (i.e., higher-than-normal "specificity," such as a claim of fraud requires), or whether it is arguing that the DFE applies unless an allegedly
28  violated constitutional right was "clearly established" (as in a qualified immunity context). It doesn't matter—no cases support either thesis.

1  against Government officials in their individual capacity,[17] not when considering the DFE in suits

2  against the Government arising under the FTCA.

3  In the Ninth Circuit, the DFE does not apply where Plaintiffs' allegations, taken as true,

4  demonstrate that Government officials violated their constitutional rights, even if the relevant

5  constitutional rights were not "clearly established" at the time of the conduct. In *Galvin v. Hay*, the

6  plaintiff brought both a *Bivens* claim against individual officers and a FTCA claim against the

7  Government. The Ninth Circuit held that the defendant officials had violated constitutional rights,

8  but were entitled to qualified immunity because the constitutional rights were not clearly established.

9  *Galvin*, 374 F.3d at 745, 757. But, and in contrast, the Ninth Circuit also held that *the DFE did not*

10  *shield the Government from FTCA liability for that same conduct* because the "defendants violated

11  the Constitution" and "'Governmental conduct cannot be discretionary if it violates a legal

12  mandate.'" *Id.* at 758 (quoting *Nurse*, 226 F.3d at 1002 & n.2).[18] Similarly, in *Nurse*, the Ninth

13  Circuit reversed a district court's dismissal of FTCA claims because it could "[]not determine at

14  th[at] stage of the proceedings whether the acts of the … defendants violated the Constitution, and, if

15  so, what specific constitutional mandates they violated." 226 F.3d at 1002. And while the court did

16  not "make any decisions regarding the level of specificity with which a constitutional proscription

17  must be articulated in order to remove the discretion of the federal actor," it held that the issue

18  should be decided "as [a] case proceeds toward trial," not on a motion to dismiss. *Id.* at 1002 & n.2.

19  Dismissing Plaintiffs' claims at this early stage would run afoul of these precedents.

20  No court in any jurisdiction has ever used the "clearly established" standard when assessing

21  whether the DFE applies, which the Government neglects to mention.[19] The D.C. Circuit, for

22

23  [17] The Government cites qualified immunity cases without alerting the Court to their inapplicability. Mot. at 25 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

24  [18] *Galvin* affirmed dismissal of the FTCA claim on grounds not applicable here. *Galvin* at 758.

25  [19] Also the Government wrongly asserts that the Supreme Court's opinion in *United States v. Gaubert*, 499 U.S. 315 (1991) instructs Plaintiffs to "allege the violation of any constitutional

26  provision with [a] requisite degree of specificity." Mot. at 24-25. *Gaubert* says no such thing. In fact, the word "constitution" appears nowhere in the opinion at all. The only portion of *Gaubert* tacitly

27  referencing a pleading standard suggests nothing heightened or unusual about it whatsoever: "The decision we review was entered on a motion to dismiss. We therefore accept all of the factual

28  allegations in [the] complaint as true and ask whether the allegations state a claim sufficient to survive a motion to dismiss." *Gaubert* at 327 (internal quote marks omitted).

-21-

1    example, in rejecting the same argument the Government makes here, observed that it had "found no

2    precedent in any circuit holding" that "principles similar to those that undergird qualified immunity

3    should extend to preserve discretionary-function immunity for some unconstitutional acts." *Loumiet*,

4    828 F.3d at 946. And for good reason: the policy considerations that animate the "clearly

5    established" standard in qualified immunity cases simply do not apply to FTCA claims. "[T]he

6    premise of qualified immunity is that state officials should not be held liable" (by which the court

7    means *personally* liable) "for money damages absent fair warning that their actions were

8    unconstitutional," which is why constitutional rights must be "clearly established" before they are

9    actionable. *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 674 (9th Cir. 2021), *cert. denied*, 142 S.Ct.

10   711 (2021). Otherwise, the "fear of personal monetary liability and harassing litigation [might]

11   unduly inhibit officials in the discharge of their duties, to the detriment of public interest." *Loumiet*,

12   828 F.3d at 946 (internal quote marks omitted). That premise is inapplicable here, where the

13   Government—not individual officials—bears liability. There is no legal basis to apply qualified

14   immunity standards to Plaintiffs' claims.

15                    **3.      Separating Plaintiff families was not based on public policy**

16          The Government has also failed to demonstrate that the forcible, prolonged separation of

17   Plaintiff families "implement[ed] social, economic or political policy considerations." *Nurse*, 226

18   F.3d at 1001. "It is not sufficient for the Government merely to waive [sic] the flag of policy as a

19   cover for anything and everything it does that is discretionary in nature." *Peterson v. Martinez*, No.

20   3:19-cv-01447-WHO, 220 WL 999832, at *8 (N.D. Cal. Mar. 2, 2020). Because "the Government

21   has the burden of proving the [DFE] applies… [t]here must be reasonable support in the record for

22   the court to find, without imposing its own conjecture, that a decision was policy-based or

23   susceptible to policy analysis." *Marlys Bear Med. V. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d

24   1208, 1216 (9th Cir. 2001).

25          The Government's separation of Plaintiffs was not based on legitimate social, economic, or

26   political policy considerations. The "cruelty of... separation of a parent and child by the

27   Government" is only justified "in the most dreadful circumstances," such as when the parent is

28   "unwilling or unfit" to care for the child—circumstances that are not present here. *D.J.C.V. v. U.S.*

-22-

1  *Immigr. & Customs Enf't*, No. 18 Civ. 9115 (AKH), 2018 WL 10436675, at *1 (S.D.N.Y. Oct. 15,

2  2018) ("*D.J.C.V. I*"). Unsurprisingly, courts that have evaluated the Government's practice of

3  separating families at the border have been unable to discern any legitimate Governmental objective

4  the practice served. The *Ms. L. I* court, for example, concluded that separating families at the border

5  was "emblematic of the exercise of power without any reasonable justification." *Ms. L. I*, 302 F.

6  Supp. 3d at 1167 (internal quote marks omitted). Tellingly, the Government's brief does not name a

7  single policy objective that was served by the forcible and prolonged separation of Plaintiff families.

8  That alone strongly suggests the separations do not satisfy the second prong of the DFE.[20]

9         Instead of clearly identifying which policy objectives Plaintiffs' separation purportedly

10  served and why those objectives satisfy the second prong of the DFE, the Government vaguely

11  asserts that it "spelled out the policies it sought to further" by separating Plaintiff families in "a

12  series of Executive Branch directives." Mot. at 22. But those "directives" appear to concern

13  prosecutorial and detention decisions (which is not the conduct challenged here) rather than the

14  practice of separating families (which is the challenged conduct). *See id.* at 5. And the law of this

15  Circuit does not permit courts to infer that those policy justifications apply to family separations.

16  Instead, there must be support for that conclusion in the record. *Marlys Bear Med.*, 241 F.3d at 1216.

17         Other than that, the Government points to portions of the Complaint alleging that its intent in

18  separating Plaintiffs was to deter immigration. Mot. at 22. This is not a legitimate means to obtain

19  that goal: "nothing in federal law suggests that deterring immigration by indefinitely separating

20  families… is a compelling or legitimate Government objective." *Jacinto-Castanon de Nolasco*, 319

21  F. Supp. 3d at 501-02.[21] The Government's proffered objective therefore cannot satisfy the DFE's

22  second prong. *See Berkovitz*, 486 U.S. at 537 ("[T]he discretionary function exception insulates the

---

[20] *See W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1126 (N.D. Ill. 2018) ("Without any further explanation by the Government on what objective is being served—and served legitimately—by separation, the Government's insistence on keeping… boys from their fathers can only be deemed arbitrary and conscience shocking."); *Ruiz ex rel. E.R. v. United States*, No. 13-CV-1241 (KAM) (SMG), 2014 WL 4662241, at *8 (E.D.N.Y. Sept. 18, 2014) (Government conduct was not susceptible to policy analysis because, among other things, "the Government has not offered any reason as to why the CBP Officers' actions… were justified by or susceptible to policy analysis").
[21] *See also Sook Young Hong v. Napolitano*, 772 F. Supp. 2d 1270, 1278 (D. Haw. 2011) ("keeping the families of immigrants united" is a goal of U.S. immigration law).

1   Government from liability if the action challenged in the case involves the *permissible* exercise of

2   policy judgment.") (emphasis added); *Davis v. United States*, No. EDCV 07-481-VAP (OPx), 2009

3   WL 10674302, at *3 (C.D. Cal. Sept. 4, 2009) ("Congress did not mean to shield from judicial fact

4   finding the use of its employees' discretion to engage 'illegitimate means… to fulfill impermissible

5   ends....'" (quoting *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996)).[22]

6          **D.   The Government fails to show that the due care exception applies**

7          The Government next argues that the due care exception (DCE) wrests subject matter

8   jurisdiction from this Court.[23] This exception arises from FTCA's bar on claims based upon federal

9   employees' conduct while "exercising due care, in the execution of a statute or regulation." 28

10  U.S.C. § 2680(a). Courts in this Circuit apply a two-prong inquiry established in *Welch v. United*

11  *States*, 409 F.3d 646, 652 (4th Cir. 2005).[24] The DCE only applies if (1) a statute or regulation

12  "specifically pr[e]scribes a course of action for an officer to follow," and (2) "the officer exercised

13

14  [22] The Government dedicates a section of its Motion to asking the Court to dismiss Plaintiffs'
    "claims concerning their detentions." Mot. at 23. But Plaintiffs have not alleged any independent
15  claims concerning their detentions or conditions of confinement, so it is unclear what relief the
    Government is seeking. The Government has not moved to strike any of the allegations relating to
16  confinement, presumably because Plaintiffs' allegations regarding conditions of confinement
    demonstrate, among other things, the harms resulting from Plaintiffs' separations. See *A.P.F.*, 492 F.
17  Supp. 3d at 996–97 (observing that plaintiffs' "[a]llegations related to conditions of confinement"
    were "factual allegations primarily aimed at demonstrating the harm resulting from the
18  separations"). The Government instead appears to ask the Court to issue an advisory opinion holding
    that some of the conduct alleged in the Complaint, if considered independently, might fall within the
19  scope of one of the FTCA's exceptions. No procedural mechanism permits the Court to make such a
    holding. *Cf. Doe v. Napa Valley Unified Sch. Dist.*, No. 17-cv-03753-SK, 2018 WL 4859978, at *2–
20  3 (N.D. Cal. Apr. 24, 2018) (noting "Defendants have not pointed to any authority demonstrating
    that it may attack portions of a single claim on a motion to dismiss" and "declin[ing]… to break
21  Plaintiff's… claim apart and reframe it as separate claims"). Courts have refused to disassemble
    allegations in this manner when assessing FTCA claims concerning the Government's family-
22  separation practice. *See A.P.F.*, 492 F. Supp. 3d at 996–97; *C.M. I*, 2020 WL 1698191, at *4.
    [23] The Government fails to alert the Court that it has made and lost this argument on at least twelve
23  separate occasions to date. *Wilbur P.G.*, 2022 WL 3024319, at *5; *Fuentes Ortega*, 2022 WL
24  16924223, at *4; *A.F.P.*, 2022 WL 2704570, at *14; *E.S.M.*, 2022 WL 11729644, at *5; *B.A.D.J.*,
    2022 WL 11631016, at *4; *F.R.*, 2022 WL 2905040, at *4; *E.C.B.*, No. 22-cv-00915, Dkt. 24;
25  *A.E.S.E.*, 2022 WL 4289930, at *13; *Nunez Euceda*, 2021 WL 4895748, at *4; *C.M.*, 2020 WL
    1698191, at *3; *A.P.F.*, 492 F. Supp. 3d at 995-96; *R.Y.M.R.*, No. 20-cv-23598, Dkt. 23.
26  [24] *See, e.g.*, *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 5232560, at *4 (D. Ariz.
    July 6, 2020) (collecting cases); *Nunez Euceda v. United States*, No. 220CV10793VAPGJSX, 2021
27  WL 4895748, at *3-4 (C.D. Cal. Apr. 27, 2021).

28

-24-

1  due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 652 (citing

2  *Crumpton v. Stone*, 59 F.3d 1400, 1403 (D.C. Cir. 1995)).

3      The Government's motion fails to even mention the *Welch* test, and it certainly does not meet

4  the test's requirements. As to prong one, the Government recasts the Family Separation Policy as a

5  natural symptom of the TVPRA,[25] a statute that regulates transfer of unaccompanied migrant

6  children, not children accompanied by their parents like Plaintiffs. As to prong two, the Government

7  neglects to posit a single example of how it treated Plaintiffs with the most basic level of care during

8  their forcible separate detention. The Government has not satisfied its burden.

9      **1.**    **The Government was executing an executive policy that ordered
10  the separation of migrant families to traumatize them, not a
   federal statute or regulation**

11      The Government argues that because the TVPRA required it to transfer custody of the

12  children to ORR once the parents were detained for immigration proceedings and prosecution, any

13  claims "relating to the decision to detain [Plaintiff Parents] separately from their children" are

14  barred. Mot. at 26. But as other courts, including in this District, have held, "[t]he separations were

15  conducted pursuant to executive policy, not pursuant to any statute or regulation[, and] such actions

16  are not shielded by the due care exception." *Wilbur P.G.*, 2022 WL 3024319, at *5 (quoting *Nunez*

17  *Euceda*, 2021 WL 4895748, at *4) (internal quotation marks omitted). The Government's attempt to

18  claim that the Family Separation Policy was dictated by the TVPRA is unavailing.

19      The TVPRA does not specifically prescribe the practice of forcibly and indefinitely

20  separating migrant families. The Government concedes that the TVPRA mandates transfer of

21  custody of a migrant child to ORR *only after* determining that "no parent or legal guardian in the

22  United States is available to provide care and physical custody." *See* Mot. at 26; 8 U.S.C. §

23  1232(b)(3); 6 U.S.C. § 279(g)(2). The Government's employees tortiously exploited this provision

24  of the TVPRA by "target[ing] parents crossing the border for prosecution and us[ing] that

25  prosecution as a pretext for designating their children as "unaccompanied" (UACs) so that the

26  children could be sent to, and detained in, HHS facilities far away from where their parents were

27

28  _____

[25] Trafficking Victims Protection Reauthorization Act of 2008.

-25-

being held." Compl. ¶ 44. The Plaintiff Children were "not true unaccompanied minors within the meaning of the [TVPRA]." *Jacinto-Castanon de Nolasco*, 319 F. Supp. at 491, 495-96 & n.2. Instead, "they were rendered unaccompanied by the [Government's] unilateral and likely unconstitutional action[]" of forcibly separating them from their parents. *Id.* at 495 n.2. In other words, the Government's motion perverts the TVPRA, a statute designed to protect children, in the same way as the Family Separation Policy. Furthermore, the TVPRA (which remains the law) surely cannot mandate what occurred under the Family Separation Policy, since the Government "has denounced the prior practice of separating children from their families at the United States–Mexico border and condemned the human tragedy[.]" Mot. at 1.

Nor would the allegations made in Plaintiffs' Complaint require this Court to examine the legality of the TVPRA as the Government suggests. Plaintiffs challenge the practice of unscrupulously referring migrant parents for prosecution, using that prosecution (whether or not it actually occurred) as pretext to separate migrant families for prolonged periods, for the purpose of causing emotional distress. *See, e.g.*, Compl. ¶¶ 44, 55. The legality of the TVPRA is not at issue. Accordingly, the Government's citation to cases prohibiting the examination of federal statutes through tort action is irrelevant. *See* Mot. at 26.

The Government's employees decided to separate Plaintiffs pursuant to executive policy, not the TVPRA or any other statute or regulation. Compl. ¶¶ 45, 49, 51, 52, 172. No law required Plaintiffs' forcible and prolonged separation. Therefore, the Government's decision to separate them is not protected by the DCE. *P.G.*, 2022 WL 3024319, at *5; *A.F.P.*, 2022 WL 2704570, at *15.

### 2. The Government made no attempt to demonstrate that its employees treated Plaintiffs with due care

Defendant suggests incorrectly that the due care analysis starts and ends with the assertion of a potentially relevant statute, asserting that "enforcement of [the TVPRA] cannot form the basis of an FTCA claim." Mot. at 27. But, for the DCE to apply, the Government must show not only that officials were executing a statute or regulation, but also that those officials "exercis[ed] due care" when doing so. 28 U.S.C. § 2680(a). Due care "implies at least some minimal concern for the rights of others." *Hatahley v. United States*, 351 U.S. 173, 181 (1956).

-26-

1    Since the Government bears the burden to prove that the DCE applies, its omission of this

2    factor alone warrants the rejection of its DCE arguments. *See Prescott*, 973 F.2d at 702.

3    Furthermore, Plaintiffs alleged ample facts showing that the Government failed to exhibit even a

4    "minimal concern" for Plaintiffs when separating them. *See, e.g.*, Compl. ¶¶ 44 (Government

5    implemented El Paso pilot program border-wide despite known harms); 55 (Government provided

6    no information to parents about their child's wellbeing); 60-61 (Government had no systems to track

7    family members); 70, 74, 83, 108, 111 130 (Government failed to provide translation to Plaintiffs);

8    *see also Ms. L. II*, 310 F. Supp. 3d at 1144 (observing that the "unfortunate reality is that... migrant

9    children [we]re not accounted for with the same efficiency and accuracy as *property*"); *A.E.S.E.*,

10   2022 WL 4289930, at *13–14 (separation was carried out "in a manner designed to provoke

11   emotional distress"). The DCE does not apply.

12       **E.    Plaintiffs' claims satisfy the private analog requirement**

13       The Government may be liable "in the same manner and to the same extent as a private

14   individual under like circumstances" under the FTCA. 28 U.S.C. § 2674. The Government argues no

15   private person analog exists to support Plaintiffs' FTCA claims because "only the federal

16   Government has the authority to enforce federal criminal and immigration laws and make detention

17   determinations."[26] Mot. at 27. The Supreme Court has rejected this argument. *Indian Towing Co. v.*

18   *United States*, 350 U.S. 61, 64 (1955) (holding that § 2674 should not be read "as excluding liability

19   in the performance of activities which private persons do not perform."). The Ninth Circuit has

20   reversed dismissal of FTCA claims based upon DHS's unlawful removal of a migrant. *Arce v.*

21   *United States*, 899 F.3d 796, 798, 801 (9th Cir. 2018).

22       "Recognizing that the federal government could never be exactly like a private actor, the

23   Ninth Circuit only requires courts to find the most reasonable analogy to private tortious conduct."

24

25   [26] The Government fails to alert the Court that it has made and lost this argument on at least twelve
     separate occasions to date. *Wilbur P.G.*, 2022 WL 3024319, at *5; *Fuentes Ortega*, 2022 WL

26   16924223, at *4-5; *A.F.P.*, 2022 WL 2704570, at *9-10; *E.S.M.*, 2022 WL 11729644, at *2-3;
     *B.A.D.J.*, 2022 WL 11631016, at *4-5; *F.R.*, 2022 WL 2905040, at *3; *E.C.B.*, No. 22-cv-00915,

27   Dkt. 24; *A.E.S.E.*, 2022 WL 4289930, at *14-15; *Nunez Euceda*, 2021 WL 4895748, at *4; *C.M.*,

28   2020 WL 1698191, at *2; *A.P.F.*, 492 F. Supp. 3d at 994; *R.Y.M.R.*, No. 20-cv-23598, Dkt. 23.

-27-

1   *A.P.F.*, 492 F. Supp. 3d at 994 (internal quotation marks omitted). To require more than this "would

2   give the federal Government absolute immunity to violate the rights of those for whom it has sole

3   decision-making authority." *Wilbur P.G.*, 2022 WL 3024319, at *5. Put differently, "[t]he fact that

4   Defendant has exclusive authority to enforce immigration law does not give it carte blanche to

5   commit torts against migrants in its custody." *E.S.M.*, 2022 WL 11729644, at *3.

6          Across jurisdictions, courts ruling on the Government's motions to dismiss family separation

7   cases have uniformly held that private analogs exist. For example, the court in *Wilbur P.G.*

8   recognized that courts in this Circuit have allowed IIED and negligence claims to proceed under the

9   FTCA in circumstances similar to Plaintiffs'. 2022 WL 3024319, at *5 (citing *C.M.*, 2020 WL

10   1698191, at *2; *Martinez v. United States*, No. 2018 WL 3359562, at *10 (D. Ariz. July 10, 2018);

11   *Nunez Euceda*, 2021 WL 4895748, at *4). Other courts ruling on family separation cases have easily

12   found private analogs for the federal Government's conduct alleged in the Complaint. *See, e.g.*,

13   *A.F.P.*, 2022 WL 2704570, at *10; *A.E.S.E.*, 2022 WL 4289930, at *14.[27] The Government's

14   arguments are thus unavailing.

15          **F.    The Government's "systemic" tort prohibition lacks legal support and does not
16                  bar Plaintiffs' claims**

17          Again fundamentally misrepresenting the claims in the Complaint, the Government asserts

18   that Plaintiffs "cannot assert systemic claims or seek to hold the United States directly liable under

19   the FTCA, but must instead allege tortious conduct by individual federal employees, acting within

20   the scope of their employment." Mot. at 28.

21          This argument has no connection to the actual Complaint, and the Government's case law

22   does not clarify what the Government means by "systemic" claims. The Government cites *Adams v.*

23   *United States*, 420 F.3d 1049 (9th Cir. 2005), but that case merely holds that under the FTCA a

24   corporation cannot be an "employee" of the Government, which is not a question at issue here. *Lee*

25

26   ───────────────
     [27] The cases the Government cites concern the adjudication of immigration benefits, a
27   circumstance that is not "reasonably analogous" to what happened here. *See* Mot. at 28 (citing
     *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) (denial of "immigration status
28   adjustment application"); and *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019)
     (withdrawal of immigration benefits)).

-28-

1   *v. United States*, CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020),

2   which notes that *Adams* is "not directly on point" to the issues in that case, dismissed a claim where

3   the plaintiff's allegations were "too vague and conclusory" because, among other things, she had not

4   "set forth the alleged acts or omissions of specific federal employees." *Id.* at *5. Neither case

5   discusses "systemic" litigation, and the issues in those cases are not present here.

6          Contrary to the Government's contention that the Complaint "attribute[s] the alleged tortious

7   conduct to the Government as a whole," (Mot. at 28), Plaintiffs *do* allege that "individual federal

8   employees, acting within the scope of their employment" (*id.*) engaged in tortious conduct by, for

9   example, designing the Government's practice of separating families at the border, which resulted in

10  Plaintiff parents being separated from their children (*e.g.*, Compl. ¶¶ 1-3; 20; 25-32; 40-47);

11  physically and forcibly separating Plaintiff parents from children, even as they clung to one another

12  and wept (*e.g.*, *id.* at ¶¶ 69-71; 111-12, 133-135, 139); and committing the horrific acts described

13  *supra* in section III.C.[28]

14         To the extent the Government is protesting the Complaint's references to "the United States

15  Government" (Mot. at 29), there is no legal authority supporting the proposition that a complaint

16  containing FTCA claims should be dismissed because some of the allegations in the complaint refer

17  to the Government. Such a rule would make little sense given that inherent in an FTCA lawsuit is

18  that "the plaintiff sues the United States itself." *García-Feliciano v. United States*, No. CIV. 12-1959

19  (SCC), 2014 WL 1653143, at *3 (D.P.R. Apr. 23, 2014). This argument lacks any colorable basis in

20  law and the Court should reject it.

21         **G.    Because Plaintiffs' claims are only based on the conduct of Government officials,
22              the independent contractor exclusion does not apply**

23         The FTCA's independent contractor exclusion "protect[s] the United States from vicarious

24  liability for the negligent acts of its independent contractors." *Edison v. United States*, 822 F.3d 510,

25  518 (9th Cir. 2016). All of Plaintiffs' claims seek recovery for harms resulting from Government

26  agents' own acts and omissions including, but not limited to: the intentional design of a policy to

27

28  [28] *See also Nurse*, 226 F.3d at 1001 (reversing dismissal of FTCA claims alleging that policymakers "established policies that would result in false arrests and unlawful detentions").

separate migrant families like Plaintiffs for the express purpose of causing them harm (Compl. ¶¶ 1, 3, 16, 20, 62), failing to provide language interpretation (¶¶ 2, 66, 70, 88, 91, 108, 117-18, 121, 146, 148, 181), failing to establish tracking systems (¶¶ 32, 56, 60, 61), and compounding the trauma of the separation by detaining Plaintiffs in inhumane conditions that violated various legal obligations (¶¶ 73, 75, 86, 110, 115, 136-38, 141, 178, 180, 182-83, 191). Rather than contend with the actual allegations lodged against it, the Government lists the private contractor facilities where it detained Plaintiffs. *See* Mot. at 30. The Government does not, and cannot, point to any instance where the Complaint seeks redress for the private contractors' conduct.

The Government attempted this exact ploy in *A.P.F.*, and the court rejected it. *See A.P.F.*, 492 F. Supp. 3d at 997-98. There, the court explained that though the plaintiffs "suffered abuse while held in federal custody at facilities operated by contractors[,]" the complaint sufficiently "trace[d] this harm back to CBP officials' separation of Plaintiff families" as the proximate cause. *Id.* Here too, Plaintiffs' claims link the harms they endured, in both Government and private facilities, to the Government's conduct while executing the Family Separation Policy.

The *A.P.F.* court also rejected the Government's reliance on the exact case law that the Government has recycled in its Motion here.[29] "But *Logue, Autery, and Walding* merely recognize that FTCA liability, by its text, does not extend to contractors." *Id*. at 997. And the plaintiffs in *Walding* explicitly made claims that the Government was vicariously liable for the negligence of an ORR contractor. *Id*. at 998. As in *A.P.F.*, this case law does not assist the Government. That the Government threw Plaintiffs into the hands of children's shelters and private criminal correctional facilities does not absolve the Government for its own misconduct. *See Edison*, 822 F.3d at 518 ("The independent contractor exception... has no bearing on the United States' FTCA liability for its own acts or omissions.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion to Transfer and Motion to Dismiss in their entirety.

---

[29] *Logue v. United States*, 412 U.S. 521 (1973); *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005); *Walding v. United States*, 955 F. Supp. 2d 759 (W.D. Tex. 2013).

OPPOSITION TO MOTION TO TRANSFER AND MOTION TO DISMISS

1

2      Dated: December 23, 2022                              PILLSBURY WINTHROP SHAW
                                                            PITTMAN LLP
3
                                                            /S/ DUSTIN CHASE-WOODS
4                                              By:   BLAINE I. GREEN
                                                            DUSTIN CHASE-WOODS
5
6                                                           LAWYERS' COMMITTEE FOR CIVIL
                                                            RIGHTS OF THE SAN FRANCISCO
7                                                           BAY AREA

8                                                           BREE BERNWANGER
                                                            VICTORIA PETTY
9                                                           Attorneys for Plaintiffs Eduardo I.T.; Edwin
                                                            E.I.I.; Ignacio P.G.; Leonel Y.P.G., a minor
10                                                          child; Benjamin J.R.; and William A.J.M.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO TRANSFER AND MOTION TO DISMISS