STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
KENNETH W. BRAKEBILL (CABN 196696)
Assistant United States Attorney
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7167
     Facsimile: (415) 436-7169
     Kenneth.Brakebill@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| EDUARDO I.T., et al., | ) | CASE NO. 4:22-cv-05333-DMR |
| | ) | |
| Plaintiffs, | ) | **REPLY IN SUPPORT OF MOTION TO** |
| | ) | **TRANSFER; MOTION TO DISMISS** |
| v. | ) | **PLAINTIFFS' COMPLAINT** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Date:    January 26, 2023 |
| | ) | Time:    1:00 p.m. |
| Defendant. | ) | Place:   Remote via Videoconference or Zoom |
| | ) | |
| | ) | The Hon. Donna M. Ryu |

# TABLE OF CONTENTS

I.     ARGUMENT ..........................................................................................................1

   A.     The Court Should Transfer This Action to the District of Arizona. ....................1

      1.     Plaintiffs' Choice of Forum Is Not Entitled to Substantial Deference. ..................1

         (i)     Forum Selection Is Entitled to "Little Deference" When a
              Complaint Lacks Material Connection to the Chosen Forum. ....................1

         (ii)    Plaintiffs' Allegations About Conduct Outside Arizona and
              Harms Suffered in California Do Not Weigh Against Transfer. ..................3

      2.     The Convenience of Parties and Witnesses Favor Transfer Despite the
         Lack of Specific Trial Witness Identities..........................................................5

      3.     A Balancing of the Section 1404(a) Factors Favors Transfer................................7

   B.     Plaintiffs' Claims Should Be Dismissed For Lack of Subject Matter
      Jurisdiction. .......................................................................................................9

      1.     Plaintiffs' Claims Are Barred By the Discretionary Function
         Exception. .....................................................................................................9

         (i)     Defendant Satisfies the First Prong of the DFE Test. ...............................9

         (a)     Plaintiffs Do Not Rebut that Government Decisions on
              Detention and Separation Involved Discretionary Judgment. ..................9

         (b)     Plaintiffs Cannot Circumvent the DFE By Simply Alleging a
              Constitutional Violation.......................................................................11

         (ii)    Defendant Satisfies the Second Prong of the DFE Test Because
              The Decision to Detain Plaintiffs Separately Was Susceptible
              to Policy Considerations. .....................................................................14

         (iii)   Plaintiffs' Allegations Concerning Confinement Should be
              Dismissed For Lack of Jurisdiction. .....................................................15

      2.     Plaintiffs' Claims Relating to the Decision to Detain Them Separately
         Are Barred by the FTCA's Exception for Actions Taken While
          Reasonably Executing Law.........................................................................17

      3.     Plaintiffs' Claims Have No Private Person Analogue. ..........................................17

      4.     Plaintiffs Bring Impermissible Direct Liability or Systemic Tort
         Claims. ........................................................................................................18

      5.     Plaintiffs Have Abandoned Any Claims Based On Independent
         Contractors. .................................................................................................18

II.    CONCLUSION ....................................................................................................18

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
   169 F. Supp. 3d 1079 (D. Or. 2016) ........................................................................ 2, 3

5

*Alabsi v. Savoya, LLC*,
   No. 18-cv-06510-KAW, 2019 WL 1332191 (N.D. Cal. Mar. 25, 2019) ...................... 8

6

*AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*,
   No. 06-cv-03805-JSW, 2006 WL 2850054 (N.D. Cal. Oct. 5, 2006) ......................... 1

7

*Barroca v. United States*,
   No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) ................... 1, 2, 4, 7

8

9

*Blanco Ayala v. United States*,
   982 F.3d 209 (4th Cir. 2020) .................................................................................... 10

10

*Breault v. United States*,
   No. 19-CV-276-JDP, 2019 WL 6492826 (W.D. Wis. Dec. 3, 2019) .......................... 6

11

*Bryan v. United States*,
   913 F.3d 356 (3d Cir. 2019)...................................................................................... 12

12

*Butz v. Economou*,
   438 U.S. 478 (1978) .................................................................................................. 11

13

*Campbell v. Chavez*,
   402 F. Supp. 2d 1101 (D. Ariz. 2005) ...................................................................... 11

14

*Camreta v. Greene*,
   563 U.S. 692 (2011) .................................................................................................. 13

15

16

*Chen v. Pioneer Oil, LLC*,
   472 F. Supp. 3d 704 (N.D. Cal. 2020) ........................................................................ 3

17

*Chess v. Romine*,
   No. 18-cv-05098-JSC, 2018 WL 5794526 (N.D. Cal. Nov. 2, 2018) ........................ 6

18

*Clip Ventures LLC v. Suncast Corp.*,
   No. 10-cv-04849-CRB, 2011 WL 839402 (N.D. Cal. Mar. 7, 2011) .......................... 6

19

*Comm. of Cent. Am. Refugees v. I.N.S.*,
   795 F.2d 1434 (9th Cir. 1986) .................................................................................. 10

20

*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998) .................................................................................................. 11

21

22

*D.B. v. Poston*,
   119 F. Supp. 3d 472 (E.D. Va. 2015) ....................................................................... 17

*Daniels v. Williams*,
   474 U.S. 327 (1986).................................................................................................. 11

23

*Doe v. Holy See*,
   557 F.3d 1066 (9th Cir. 2009) .................................................................................... 9

24

*Fabus Corp. v. Asiana Exp. Corp.*,
   No. 00-cv-03172-PJH, 2001 WL 253185 (N.D. Cal. Mar. 5, 2001) .......................... 1

25

*Fazaga v. FBI*,
   965 F.3d 1015 (9th Cir. 2020) .................................................................................. 13

26

*Fisher Bros. Sales, Inc. v. United States*,
   46 F.3d 279 (3d Cir. 1995)........................................................................................ 17

27

28

*Fitbit, Inc. v. Koninklijke Philips N.V.*,
  336 F.R.D. 574 (N.D. Cal. 2020) ................................................................................... 6

*Flores v. Lynch*,
  828 F.3d 898 (9th Cir. 2016) ........................................................................................ 10

*Galvin v. Hay*,
  374 F.3d  (9th Cir. 2004) .............................................................................................. 14

*GATX/Airlog Co. v. United States*,
  286 F.3d 1168 (9th Cir. 2002) ..................................................................................... 14

*Gomez v. Arizona*,
  No. CV-16-04228, 2017 WL 5517449 n.1 (D. Ariz. Nov. 17, 2017)........................... 11

*Harrison v. Fed. Bureau of Prisons*,
  464 F. Supp. 2d 552 (E.D. Va. 2006) .......................................................................... 16

*Harrist v. United States*,
  No. 2:13-CV-009-JRG, 2013 WL 11331168 (E.D. Tex. Dec. 5, 2013) ................... 6, 7

*Herbert v. VWR Int'l, LLC*,
  686 F. App'x 520 (9th Cir. 2017) ................................................................................... 5

*Hoefer v. U.S. Dep't of Com.*,
  No. 00-cv-00918-VRW, 2000 WL 890862 (N.D. Cal. June 28, 2000) ........................... 4

*J.S.G. v. Sessions*,
  330 F. Supp. 3d 731 (D. Conn. 2018) ........................................................................... 13

*Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs*,
  *Enf't*, 319 F. Supp.3d 491 (D.D.C. 2018) .................................................................... 13

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) .......................................................................................... 7

*Koval v. United States*,
  No. 2:13-CV-1630-HRH, 2013 WL 6385595 (D. Ariz. Dec. 6, 2013) .......................... 4

*Lam v. United States*,
  979 F.3d 665 (9th Cir. 2020) ........................................................................................ 14

*Lax v. Toyota Motor Corp.*,
  65 F. Supp. 3d 772 (N.D. Cal. 2014) .............................................................................. 3

*Lee v. United States*,
  No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ....... 18

*Limone v. United States*,
  579 F.3d 79 (1st Cir. 2009) ........................................................................................... 12

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) .......................................................................................... 2

*Machado v. CVS Pharmacy, Inc.*,
  No. 13-cv-04501-JCS, 2014 WL 631038 (N.D. Cal. Feb. 18, 2014) .............................. 8

*McElroy v. United States*,
  861 F. Supp. 585 (W.D. Tex. 1994).............................................................................. 12

*Morris v. Safeco Ins. Co.*,
  No. 07-cv-02890-PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008).......................... 5, 6

*Ms. L. v. U.S. Immigr. & Customs*,
  *Enf't*, 302 F. Supp. 3d 1149 (S.D. Cal. 2018)............................................................ 13

*Ms. L. v. U.S. Immigr. & Customs*,
  *Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018)............................................................ 13

*Nurse v. United States*,
  226 F.3d 996 (9th Cir. 2000) ........................................................................................ 13

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981).................................................................................................... 5
*Ruiz v. Darigold, Inc.*,
    No. 14-cv-02054-WHO, 2014 WL 4063002 (N.D. Cal. Aug. 14, 2014) .......................... 6, 8
*Ryan v. ICE*,
    974 F.3d 9 (1st Cir. 2020) ........................................................................................ 18
*Singh v. Roadrunner Intermodal Servs., LLC*,
    No. 15-cv-01701-JSW, 2015 WL 5728415 (N.D. Cal. Sept. 30, 2015) ............................ 5
*Smith v. Corizon Health, Inc.*,
    No. 16-cv-00517-WHA, 2016 WL 1275514 (N.D. Cal. Apr. 1, 2016) .............................. 4
*Sorensen v. Daimler Chrysler AG*,
    No. 02-cv-04752-MMC (EDL), 2003 WL 1888866 (N.D. Cal. Apr. 11, 2003) .................. 3
*Strandberg v. City of Helena*,
    791 F.2d 744 (9th Cir. 1986) .................................................................................... 16
*Teplin v. United States*,
    No. 17-cv-02445-HSG, 2018 WL 1471907 (N.D. Cal. Mar. 26, 2018) ............................ 16
Texas, *Peña Arita v. United States*,
    470 F. Supp. 3d 663 (S.D. Tex. 2020) .............................................................. 9, 10, 15
*United States Fid. & Guar. Co. v. United States*,
    837 F.2d 116 (3d Cir. 1988) ..................................................................................... 14
*Washington v. Reno*,
    35 F.3d 1093 (6th Cir. 1994) .................................................................................... 16
*Williams v. Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) ....................................................................... 5
*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ............................................................................................ 12

**Statutes**

6 U.S.C. § 279................................................................................................... 10, 17
8 U.S.C. § 1225.......................................................................................................... 9
8 U.S.C. § 1226.......................................................................................................... 9
8 U.S.C. § 1231................................................................................................... 9, 10
8 U.S.C. § 1232................................................................................................. 11, 17
8 U.S.C. § 1325......................................................................................................... 10

1    I.      ARGUMENT

2        A.      The Court Should Transfer This Action to the District of Arizona.

3            1.      Plaintiffs' Choice of Forum Is Not Entitled to Substantial Deference.

4        Plaintiffs suggest that, as residents of the Northern District of California, they receive

5    "substantial deference in their selection of a forum" and their choice is accorded "great weight." Dkt.

6    No. 22 at 1, 5. Plaintiffs further assert that their forum selection is "*dispositive* unless the Government

7    can 'demonstrate[] that balance of convenience and interests of justice factors *clearly* favor transfer.'"

8    *Id.* at 7 (citation omitted) (emphasis added by Plaintiffs). That is inaccurate. In any event, the facts pled

9    in the Complaint demonstrate that the District of Arizona is a more appropriate venue for this litigation.

10            (i)      Forum Selection Is Entitled to "Little Deference" When a Complaint
                       Lacks Material Connection to the Chosen Forum.

11

12        A plaintiff's choice of forum "is not absolute" and "[t]he degree to which courts defer to the

13    plaintiff's chosen venue is substantially reduced where . . . the forum chosen lacks a significant

14    connection to the activities alleged in the complaint." *Fabus Corp. v. Asiana Exp. Corp.*, No. 00-cv-

15    03172-PJH, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001) (granting motion to transfer). Indeed, a

16    plaintiff's choice is "entitled to 'little deference'" where most allegations of tortious conduct in the

17    complaint occurred in the transferee district and the other tortious conduct occurred in another district

18    "situated a substantial distance" away from the plaintiff's chosen forum. *Barroca v. United States*, No.

19    19-cv-00699-MMC, 2019 WL 5722383, at *2 (N.D. Cal. Nov. 5, 2019) (granting motion to transfer

20    FTCA case). Moreover, "[a]s deference accorded to a Plaintiff's choice of forum decreases, a

21    defendant's burden to upset the plaintiff's choice of forum also decreases." *AV Media, Pte, Ltd. v.

22    OmniMount Sys., Inc.*, No. 06-cv-03805-JSW, 2006 WL 2850054, *3 (N.D. Cal. Oct. 5, 2006) (finding

23    "Plaintiff's choice of forum is entitled to little deference" and granting motion to transfer where, despite

24    some connections to the Northern District, "the facts giving rise to the underlying causes of action have

25    no material connection to this forum").

26        In *Barroca*,[1] the district court granted the United States' motion to transfer venue under Section

27

28    _____
        [1] Plaintiffs' Opposition does not address *Barroca* or the other cases cited in Defendant's opening
        memorandum on transfer, in particular those concluding that a plaintiff's forum choice is entitled to little
        to no weight when that forum lacks any significant connection with the activities alleged in the
        REPLY IN SUPPORT OF MOTION TO TRANSFER; MOTION TO DISMISS
        CASE NO. 4:22-CV-05333 DMR                    1

1404(a) in a case where a majority of tortious conduct pled in the plaintiff's FTCA complaint occurred
in the transferee state (Kansas) and where plaintiff had also alleged specific negligent conduct in three
locations in California but a "substantial distance" away from this district. 2019 WL 5722383, at *2. As
in *Barroca*, venue in this case is more appropriate outside this district because Plaintiffs plead virtually
no tortious conduct here, but rather allege that the most significant allegedly tortious activity occurred in
Arizona (and that the rest almost entirely occurred in Southern California, New Mexico, and Texas). Put
simply, because the allegations in the Complaint have no material connection to the Northern District of
California, Plaintiffs' choice to sue in this district is accorded little deference in the transfer analysis.

Plaintiffs' citation to *Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987), in support of their
"substantial deference" position actually underscores that "minimal" deference should be given to
Plaintiffs' decision to sue in this district. In *Lou*, the key conduct at issue in the complaint—the
negotiation and execution of a stock purchase agreement—occurred in New York, outside the forum of
plaintiff's residence. *Id.* at 739. The Ninth Circuit upheld the district court's transfer to New York,
concluding that "[i]n judging the weight to be accorded [plaintiff's] choice of forum, consideration must
be given to the extent of both [parties'] contacts with the forum, including those relating to [plaintiff's]
cause of action," and that "[i]f the operative facts have not occurred within the forum and the forum has
no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal
consideration." *Id.* As in *Lou*, transfer is proper here because virtually all of the operative facts pled in
Plaintiffs' Complaint occurred *outside Plaintiffs' chosen forum*, including the key tortious conduct
alleged in the Complaint: the separation of parent and child.

Plaintiffs' citations to non-FTCA district court cases do not change the calculus. In each of those
cases, the driving factor in whether to afford any deference to the plaintiff's forum choice was the
plaintiff's contacts with that chosen forum, *as they related to the allegations in the complaint*. In *Adidas
Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079 (D. Or. 2016), a business dispute, the Court denied
the defendant's motion to transfer the case away from the plaintiff's chosen location in Oregon to New
York. The Court found that the choice-of-forum factor "weigh[ed] heavily against transfer" (*id.* at

complaint. *See, e.g.*, Dkt. No. 17 at 15 (granting motion to transfer in each case).

1096), because unlike the case at bar, the allegations in that lawsuit involved significant operative facts occurring in the chosen forum where plaintiff was headquartered and primarily conducted business. Moreover, the defendant sold allegedly infringing merchandise to customers who lived in the chosen forum, and those customers were confused by the similar trademark that plaintiff used in the forum district as part of its business there. *Id.* at 1092-95.

Likewise, the Northern District of California cases that Plaintiffs cite highlight what is lacking here: significant additional contacts beyond the plaintiffs' residence. *See Chen v. Pioneer Oil, LLC*, 472 F. Supp. 3d 704, 709-10 (N.D. Cal. 2020) (not affording "any deference" to plaintiff's forum selection and transferring case to the Eastern District of California, emphasizing the need for "strong contacts between the chosen forum and the dispute"; finding that the plaintiff's complaint did "not allege that any of the challenged conduct occurred" in the chosen forum and that the Northern District of California had "minimal contacts with the parties or [plaintiff's] claims"); *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 777 (N.D. Cal. 2014) (recognizing that a plaintiff's choice of forum "is given less weight . . . where there are not significant contacts between the forum and the allegations of the complaint" and, in that case, denying motion to transfer where plaintiff "has significant contacts in this forum with respect to the allegations of her complaint" and "some of the operative facts occurred in this forum"); *see also Sorensen v. Daimler Chrysler AG*, No. 02-cv-04752-MMC (EDL), 2003 WL 1888866, *3 (N.D. Cal. Apr. 11, 2003) ("[plaintiff]'s choice of the Northern District is entitled to little, if any, deference" where "the center of the accused activity" occurred outside this district; granting motion to transfer).

### (ii)    Plaintiffs' Allegations About Conduct Outside Arizona and Harms Suffered in California Do Not Weigh Against Transfer.

Plaintiffs argue that "the challenged conduct" here is "the practice of separating families," Dkt. No. 22 at 23, and allege that all of their separations and initial detentions occurred in Arizona, *see* Compl. ¶¶ 68, 106, 127. But when confronted with the law indicating that transfer is appropriate where, as here, the challenged conduct primarily occurred in another district, Plaintiffs desperately attempt to recharacterize their Complaint as alleging tortious conduct here. *See* Dkt. No. 22, at 9-10. But even Plaintiffs' list of conduct occurring outside of Arizona includes virtually no allegations of tortious conduct in this district. *See id.* At most, Plaintiffs allege that the government "failed to facilitate contact

1    between Benjamin and William while William was in *Oakland, California* and Benjamin was in

2    *Adelanto, California*," and "officials in *San Francisco, California*" "threatened Eduardo in a language

3    he did not fully understand." *Id* (emphases in original). But Plaintiffs do not explain how William's

4    presence in Oakland while the government detained his father elsewhere constitutes the government's

5    tortious conduct in this district. Nor do Plaintiffs mention that Eduardo's ICE interview in San Francisco

6    occurred "[m]onths after [he was] released from detention" and reunited with Edwin. *See* Compl. ¶ 102.[2]

7            The *de minimis* relationship between the conduct alleged to have occurred in this district and the

8    "challenged conduct" upon which Plaintiffs actually base their claims underscores why transfer of this

9    case is appropriate. *See, e.g., Barroca*, 2019 WL 5722383, at *3 (transferring FTCA action where "none

10   of the negligent conduct is alleged to have occurred in the Northern District" and "the majority of

11   plaintiff's allegations concern events occurring in [Kansas]"); *Smith v. Corizon Health, Inc.*, No. 16-cv-

12   00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016) (transferring case where "[a]ll of the

13   events giving rise to plaintiff's claims occurred in Fresno" and "[t]he thrust of plaintiff's case"

14   concerned treatment in Fresno); *Koval v. United States*, No. 2:13-CV-1630-HRH, 2013 WL 6385595, *3

15   (D. Ariz. Dec. 6, 2013) (transferring case where "[n]one of the acts complained of in plaintiff's

16   complaint took place in Arizona and plaintiff did not live in Arizona when those acts occurred").

17           Plaintiffs further defend their choice of forum in two ways, first by arguing that the

18   government's tortious conduct also occurred in other districts outside of Arizona besides this district.

19   *See* Dkt. No. 22 at 9-10 (citing alleged conduct in New Mexico, Texas, Southern California). But this

20   argument overlooks the fact that virtually none of the alleged misconduct occurred in *this district*. And

21   even if some actions took place in other districts, Arizona is the state where each of the three Plaintiff

22   families crossed the border, were detained and separated, and where a substantial portion of the

23   detentions for the Plaintiff parents took place and where one of the three Plaintiff children was sheltered

24   while in the custody and care of ORR. *See* Dkt. No. 17 at 12. "Litigation should proceed where the case

25   finds its 'center of gravity.'" *Hoefer v. U.S. Dep't of Com.*, No. 00-cv-00918-VRW, 2000 WL 890862,

26   *3 (N.D. Cal. June 28, 2000) (transferring case to District of Columbia under Section 1404(a)). There is

27

28   _____

             [2] Plaintiffs incorrectly cite paragraph 96 of the Complaint for this allegation.

1  no reasonable dispute that the "center of gravity" for Plaintiffs' case is in the District of Arizona.

2  Plaintiffs' second defense—concerning the "harmful effects" they have allegedly suffered in

3  California after the families were reunited (*see* Dkt. No. 22 at 10)—is unpersuasive. While these

4  allegations may be relevant to the issue of damages, that issue is less important than liability in a Section

5  1404(a) transfer analysis in general tort cases. *See Morris v. Safeco Ins. Co.*, No. 07-cv-02890-PJH,

6  2008 WL 5273719, at *5 (N.D. Cal. Dec. 19, 2008) (noting greater importance of "material testimony

7  tending to establish a basis to impose civil liability" than testimony on "the severity of [plaintiff's]

8  emotional distress (*i.e.*, plaintiff's damages)") in Section 1404(a) transfer analysis); *Williams v. Bowman*,

9  157 F. Supp. 2d 1103, 1108-09 (N.D. Cal. 2001) (damages witnesses in this district "not as important to

10  the litigation" as witnesses "relevant to the underlying question of liability" in the transferee district).

### 2.   The Convenience of Parties and Witnesses Favor Transfer Despite the Lack of Specific Trial Witness Identities.

12  Plaintiffs argue that the convenience of the witnesses favors the Northern District of California

13  because they are the only identified witnesses in this case at this point. *See* Dkt. No. 22 at 7-8. Plaintiffs'

14  argument fails to offer the correct legal guidance for a Section 1404(a) analysis on this factor.

15  Identification of specific witnesses in the alternate forum is not a requirement when assessing

16  convenience of parties and witnesses. "The Supreme Court and Ninth Circuit have rejected the notion

17  that evidence in the alternative forum must be identified with a high degree of specificity." *Herbert v.*

18  *VWR Int'l, LLC*, 686 F. App'x 520, 521-22 (9th Cir. 2017) (affirming grant of *forum non conveniens*

19  motion where "[t]he record contained sufficient information to balance the parties' interests and the

20  district court did not abuse its discretion by drawing illogical or implausible conclusions from the record

21  regarding the *probable presence* of witnesses and evidence" in the alternate forum) (emphasis added);

22  *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981) (rejecting necessity of affidavits

23  identifying the witnesses and testimony for trial if trial were held in alternative forum).

24  Courts in this district have applied this general principle concerning witness identity when

25  assessing the convenience of parties and witnesses factor in the Section 1404(a) transfer analysis. In

26  *Singh v. Roadrunner Intermodal Servs., LLC*, No. 15-cv-01701-JSW, 2015 WL 5728415 (N.D. Cal.

27  Sept. 30, 2015), where the complaint related to the transport of containers from the Central Valley into

28

1   this district at the Port of Oakland, the defendants did not identify any particular witnesses or the nature

2   of their testimony, yet the Court concluded that the convenience of the witnesses and parties weighed

3   slightly in favor of transfer and transferred the case. *Id*. at *3. Of significance to the Court was the fact

4   that although defendants had only made general assertions of likely witnesses and did not specify

5   whether these witnesses were party or non-party witnesses, the plaintiffs—like in the case at bar—also

6   did not refute this. *Id*. at *3. Other courts in this district similarly have weighed the convenience of

7   witnesses factor in favor of transfer even where defendants did not identify specific witnesses. *See, e.g.*,

8   *Chess v. Romine*, No. 18-cv-05098-JSC, 2018 WL 5794526, *6 (N.D. Cal. Nov. 2, 2018) (granting

9   motion to transfer in tort case); *Ruiz v. Darigold, Inc*., No. 14-cv-02054-WHO, 2014 WL 4063002, *3-4

10  (N.D. Cal. Aug. 14, 2014) ("[C]onvenience of the witnesses strongly weighs in favor of transfer.").[3]

11      Courts in this district and others also have eschewed the necessity of specifying witnesses and

12  instead looked to the *foreseeability of witnesses* in the transferee venue. *See, e.g., Clip Ventures LLC v.*

13  *Suncast Corp.*, No. 10-cv-04849-CRB, 2011 WL 839402 (N.D. Cal. Mar. 7, 2011) (granting Section

14  1404(a) transfer); *R.T.B. by & through Breault v. United States*, No. 19-CV-276-JDP, 2019 WL

15  6492826 (W.D. Wis. Dec. 3, 2019) ("*Breault*") (same); *Harrist v. United States*, No. 2:13-CV-009-JRG,

16  2013 WL 11331168 (E.D. Tex. Dec. 5, 2013) (same). In *Clip Ventures*, plaintiff brought a *qui tam*

17  action in its resident district, the Northern District of California, against an Illinois-based company

18  whose products were manufactured, packaged, labeled and shipped from Illinois. The Court concluded

19  that the convenience of the parties and witnesses was the "most significant factor[] in this case" and held

20  that "[t]his factor favors transfer" notwithstanding the absence of a record of specifically identified

21  witnesses from defendant. 2011 WL 839402, at *3. The Court reasoned that "one of the two parties and

22  *all foreseeable witnesses* are located in the Northern District of Illinois," where "[t]he center of gravity

23  of the case is," and plaintiff did not identify any non-party witnesses in its home district. *Id*. at *3

24  (emphasis in original); *see also Breault*, 2019 WL 6492826, at *2 (granting transfer and rejecting

25

26      [3] Contrary to Plaintiffs' representation, the Court in *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336
F.R.D. 574 (N.D. Cal. 2020), did not state that a movant's lack of identification of trial witnesses

27  militates against transfer. *Id*. at 587. Plaintiffs also disregard that the Court in *Fitbit*, a case where "the
center of the accused activity" was in the transferee district as opposed to the plaintiff's selected forum,

28  granted defendant's transfer motion. *Id*. at 588.

1  argument that the government failed to carry its burden of specifying which particular healthcare

2  providers and medical staff would be called as witnesses); *Harrist*, 2013 WL 11331168, at *3

3  (transferring action to district that was the "focus" of plaintiff's claims, because potential witnesses "*can*

4  *reasonably be expected* to reside" there) (emphasis added).

### 3.    A Balancing of the Section 1404(a) Factors Favors Transfer.

6    A balancing of the multiple factors to be considered under Section 1404(a) favors transfer. *See*

7  *Barroca*, 2019 WL 5722383, at *2 (applying, in a tort case, factors 2-8 from the Ninth Circuit's decision

8  in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)); *see also* Dkt. No. 17 at 12-16.

9    Factor 2: Plaintiffs argue that Arizona courts' familiarity with Arizona law does not support

10  transfer because this Court is "just as equipped" to apply Arizona law, and because some of Plaintiffs'

11  allegations involve conduct that occurred outside of Arizona. *See* Dkt. No. 22 at 11-12. But Plaintiffs

12  once again ignore that the "challenged conduct" they have placed at the center of their case occurred

13  squarely in Arizona. And while Defendant does not question the Court's competence to apply Arizona

14  law, it would be undeniably easier and more efficient for an Arizona court that is already familiar with

15  that law to apply it. *See Barroca*, 2019 WL 5722383, at *2 (where the tortious acts and injury giving rise

16  to plaintiff's claims first took place in the transferee district, the law of that state applies under the

17  FTCA and the transferee district is "likely the 'most familiar with the governing law'" there). This factor

18  thus favors transfer to Arizona. *See id*.

19    Factors 3, 4 and 5: These factors concern the plaintiff's choice of forum (factor 3), the respective

20  parties' contacts with the forum (factor 4) and contacts relating to plaintiff's cause of action in the

21  chosen forum (factor 5). Plaintiffs' argument for these factors is (1) they are afforded substantial

22  deference in their forum selection, (2) the conduct is spread across several states, (3) they continue to

23  suffer harm in California and (4) the government has not established that witnesses live in Arizona. Dkt.

24  No. 22 at 6-7, 10, 12-13. As noted above, Plaintiffs' arguments are either inaccurate (because no

25  substantial deference to their forum is owed when there is no material connection between the

26  allegations and this district; and damages issue outweigh civil liability issues in the transfer analysis)

27  (*see supra* at 1-3); incorrect (that identification of Arizona witnesses is necessary) (*see supra* at 5-7); or

28  helpful to Defendant (that tortious conduct occurred in multiple states, albeit mostly in Arizona and in

1   any event almost entirely *outside this district*) (*see supra* at 3-5). These factors favor transfer to Arizona.

2       <u>Factors 6 and 8</u>: Plaintiffs argue that the portability of documents in the digital age minimizes

3   any increased costs with litigating in this district or challenges to access of proof. Dkt. No. 22 at 11. But

4   "'[w]hile technological developments have reduced the weight of this factor in the transfer

5   determination, this factor nonetheless weighs in favor of transfer.'" *Alabsi v. Savoya, LLC*, No. 18-cv-

6   06510-KAW, 2019 WL 1332191, at *9 (N.D. Cal. Mar. 25, 2019) (factor "weighs only slightly in favor

7   of transfer" where most of the documents related to the case are located outside this district). Relatedly,

8   Plaintiffs' dismissal of increased costs due to Arizona site visits as "dubious" (Dkt. No. 22 at 10) is

9   misplaced. Because Plaintiffs place their detention conditions squarely at issue in their Complaint,

10   evidence about the sites may be relevant and will be easier to obtain from the District of Arizona. *See*

11   *Ruiz*, 2014 WL 4063002, at *4 (access to farms and dairy products at issue in complaint "will be easier"

12   from their location in the transferee district). Thus, these factors favor transfer.

13       <u>Factor 7</u>: Plaintiffs fall back on their argument that Defendant has not identified specific

14   witnesses unwilling or unavailable to testify. Plaintiffs miss the mark. The government has articulated

15   by way of a declaration that the ORR facilities for the Plaintiff children were not operated by the

16   government, but rather were privately owned and operated, state-licensed facilities. Dkt. No. 17-2 at

17   ¶¶ 3-16. None of these facilities were in this district, whereas one of them was in Arizona. *Id.* ¶¶ 13-15.

18   Plaintiffs also vaguely assert that, in other cases, discovery has been taken from the plaintiffs' educators

19   and medical providers.  But according to Plaintiffs, only one of the Plaintiff children (Leonel Y.P.G.) is

20   even in school (the other two are 20 years old and working), and Plaintiffs have not indicated that they

21   obtained healthcare related to their claims in this district. *See* Dkt. Nos. 23-25.  Accordingly, the lack of

22   compulsory process in this district for these persons militates in favor of transfer. *See Machado v. CVS*

23   *Pharmacy, Inc.*, No. 13-cv-04501-JCS, 2014 WL 631038, at *5 (N.D. Cal. Feb. 18, 2014) ("[C]ourts

24   give more weight to the convenience of non-party witnesses because non-party witnesses may not be

25   subject to the court's subpoena power.").

26       Considering the balance of these factors as a whole, and especially in light of Arizona's central

27   role (and this district's minimal role) in Plaintiffs' allegations, the convenience of the parties and

28   witnesses and the interests of justice strongly favor transfer to the District of Arizona.

**B.** **Plaintiffs' Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction.**

This Court need not reach the issue of subject matter jurisdiction because this case should be transferred to the District of Arizona. Dismissal is nevertheless appropriate even without transfer. While Plaintiffs point to the decisions of other district court judges, *see, e.g.*, Dkt. No. 22 at 16, this Court of course is not bound by those decisions. Defendant respectfully submits that the better reading of the law aligns with the decision of a third federal judge in Texas, *Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020) (decisions by DHS to separate family members are protected by the discretionary function exception ("DFE")).

**1.** **Plaintiffs' Claims Are Barred By the Discretionary Function Exception.**

**(i)** **Defendant Satisfies the First Prong of the DFE Test.**

Plaintiffs' Complaint tells us this case "is about three indigenous Mayan asylum-seeking families who suffered cruel harm as a result of [the alleged Family Separation Policy]." Dkt. No. 1 at ¶ 66. Indeed, Plaintiffs' Opposition reaffirms that "the practice of separating families" is "the challenged conduct" here.  Dkt. No. 22 at 23. While Plaintiffs attempt to reframe these allegations to avoid application of the DFE in this case (*see id.* at 15-16), as to the conduct pled in the Complaint, the government maintained discretion to act at all relevant times from the Plaintiffs' entry across the United States border through initial detention, separation, and continued detention. Plaintiffs' Opposition fails to rebut this discretion by demonstrating a single mandatory policy removing this discretion.

**(a)** **Plaintiffs Do Not Rebut that Government Decisions on Detention and Separation Involved Discretionary Judgment.**

Plaintiffs fail to show that government officials lacked discretion on the key decision points at issue. Further, Plaintiffs fail to do what is required to overcome Defendant's DFE defense: identify (1) a statute, regulation, or policy setting forth a course of conduct that is both mandatory and specific, and (2) conduct that violates this mandatory and specific statute, regulation, or policy. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009).

Plaintiffs do not refute that the federal government possesses the express statutory authority to detain noncitizens after they illegally enter the country (*see* 8 U.S.C. §§ 1225, 1226(a)), and to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8

U.S.C. § 1231(g)(1). These decisions indisputably involve discretion. *See* Dkt. No. 17 at 19-22; *see also Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020) (recognizing that in making decisions about investigation and detention, "DHS officers must make all the kinds of classic judgment calls the discretionary function exception was meant to exempt from tort liability").

Plaintiffs also do not contest that the government had the discretion to determine in which facilities to detain and house Plaintiffs. *See, e.g.*, 8 U.S.C. § 1231(g)(1) (government has authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal"); *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) ("Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary of Homeland Security]."). Nor do Plaintiffs contest that the government had the discretion to prosecute the adult Plaintiff Ignacio P.G. for illegal entry in violation of 8 U.S.C. § 1325(a)(1), and thus detain him for criminal proceedings. *See* Dkt. No. 17-1 Ex. A (Ignacio P.G.'s criminal docket report).

Plaintiffs do not rebut the government's discretion in making prosecutorial and detention decisions about noncitizens who violated the law when they crossed the border in between ports of entry. Indeed, as held by the Court in *Peña Arita*, the policy decisions resulting in separation, including their implementation by DHS officers, are discretionary and protected by the DFE. *Peña Arita*, 470 F. Supp. 3d at 686-87 (holding that the Zero-Tolerance policy provided for "clearly protected discretionary decisions" as applied to family separation and that its use of the phrase "to the extent practicable" also indicated "essentially discretionary judgment"). Moreover, the Flores Agreement—which Plaintiffs do not address in their Opposition—does not require release of an adult parent, compel release of a child to a parent that remains in custody, mandate that parents be housed with a child, or prescribe that parents are entitled to be housed with their children in immigration detention. *Flores v. Lynch*, 828 F.3d 898, 906, 908 (9th Cir. 2016).[4] Further, the Department of Health and Human Services' ORR, which is statutorily charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status" (*see* 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C)), utilizes its

---

[4] However, the Flores Agreement *does* prohibit the government from detaining minor children for more than 20 days, which is why the government was unable to detain family units together pending the parents' criminal and removal proceedings while the Zero-Tolerance policy was in effect.

discretion to place unaccompanied children "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Plaintiffs challenge none of this discretionary decision-making.[5]

### (b) Plaintiffs Cannot Circumvent the DFE By Simply Alleging a Constitutional Violation.

Instead of actually engaging with the many examples of discretionary decision-making that the government set forth in its motion, Plaintiffs primarily argue that violations of constitutional mandates categorically preclude application of the FTCA's discretionary function exception. Dkt. No. 22 at 17-20. This argument fails for several reasons.

As a threshold matter, negligence cannot violate the Due Process Clause of the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 331-32 (1986); *Campbell v. Chavez*, 402 F. Supp. 2d 1101, 1102 (D. Ariz. 2005) ("Mere negligence does not amount to a constitutional deprivation."); *Gomez v. Arizona*, No. CV-16-04228, 2017 WL 5517449, at *4 n.1 (D. Ariz. Nov. 17, 2017) (rejecting due process claim, because "[m]ere negligence is insufficient—'the Constitution does not guarantee due care on the part of state officials.'") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998)). Thus, any argument that constitutional violations can defeat the DFE could not save Plaintiffs' negligence claims.

In any event, the DFE is not rendered null by every allegation of unlawful or unconstitutional conduct. Rather, plaintiffs must show that the government official's discretion was limited by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated. In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court recognized that immunity for discretionary acts would not be vitiated simply because alleged conduct might later be held unconstitutional. *Id*. at 506-07 (acknowledging need to protect officials exercising discretion subject to "clearly established constitutional limits"). The Court in that case held that officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity. *Id*. at 507. The Court explained that, were it otherwise, as relevant to the case at bar, "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id*. at 505. *Butz* and subsequent decisions

---

[5] Plaintiffs are simply wrong when they assert that "the Government never disputes" that the Zero-Tolerance policy "violated a host of other mandates." Dkt. 22 at 17 n.3.  Indeed, disputing those violations was a central section of the government's motion to dismiss. *See* Dkt. 17 at 23-24.

1  leave no doubt that even conduct that violates the Constitution may constitute the type of abuse of

2  discretion that falls within the scope of the DFE.

3        Since *Butz*, the Supreme Court has expressly held that government officials who exercise

4  discretionary functions are entitled to qualified immunity under certain circumstances in damages suits

5  for violating the Constitution while exercising their discretion. For example, in *Ziglar v. Abbasi*, 137 S.

6  Ct. 1843 (2017), the Court summarized this immunity as striking a balance between two competing

7  interests and, ultimately, turning on the "clearly established law" at the time the official actions were

8  taken. *Id*. at 1866 (citations omitted). Thus, the Supreme Court has long recognized that conduct may be

9  "discretionary" even if it later is determined to have violated the Constitution.

10        Nevertheless, Plaintiffs' Opposition incorrectly asserts that "no court in any jurisdiction has ever

11 used the 'clearly established' standard when assessing whether the DFE applies." Dkt. No. 22 at 21. On

12 the contrary, several courts have used the "clearly established" standard when assessing whether the

13 FTCA's discretionary function exception is applicable. *See, e.g.*, *Bryan v. United States*, 913 F.3d 356,

14 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional

15 rights, the FTCA claims also fail" under the DFE); *McElroy v. United States*, 861 F. Supp. 585, 593 n.15

16 (W.D. Tex. 1994) ("This requirement [that the 'statutory or constitutional mandate that eliminates

17 discretion must be specific and intelligible'] is not unlike the *Harlow* criteria for qualified immunity in

18 constitutional tort cases, *i.e.*, that the officers must violate a clearly established constitutional right.").

19 Likewise, in *Limone v. United States*, 579 F.3d 79 (1st Cir. 2009), the Court assessed the applicability of

20 the DFE to bar a plaintiff's FTCA claim and held that the DFE did not apply to conduct that the court

21 had previously found constituted "a clear violation of due process." *Id.* at 101-02 (finding government

22 did not possess discretion to withhold exculpatory information).

23        The question then becomes whether a constitutional right was "clearly established" in the

24 specific context of separation of parents and children who were apprehended together after crossing the

25 border between ports of entry in May or June of 2018. Plaintiffs argue that the substantive due process

26 right to family integrity applies in this case, contending that the conduct of government officers was so

27 egregious and outrageous as to shock the conscience. Dkt. No. 22 at 17-19. In support of this contention,

28 Plaintiffs rely on the decisions of three district court judges: (1) the June 6, 2018 and June 26, 2018

decisions in the *Ms. L.* litigation (*Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149 (S.D. Cal. 2018) ("*Ms. L I*"); *Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018)); (2) the July 19, 2018 decision in *Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*, 319 F. Supp.3d 491 (D.D.C. 2018); and (3) the July 13, 2018 decision in *J.S.R. by and through J.S.G. v. Sessions*, 330 F. Supp. 3d 731 (D. Conn. 2018). But decisions of district judges do not demonstrate that a right is "clearly established." *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (decisions of a federal district court judge are not binding precedent). In any event, all of the judicial decisions relied on by Plaintiffs were rendered *after* the occurrence of the conduct that forms the basis for Plaintiffs' claims, and they therefore are irrelevant to the analysis of whether the rights at issue were "clearly established."

Plaintiffs' other arguments seeking to avoid application of the "clearly established law" standard in this case are unpersuasive. First, Plaintiffs argue that "[t]he Government is asking this Court to break new ground" by holding "either that the separation of Plaintiff families was constitutional or that the DFE applies notwithstanding the likely unconstitutionality of that conduct." Dkt. No. 22 at 19. Plaintiffs cite to the supposed "uniform weight of authority in this Circuit" that their allegations plausibly allege a constitutional violation. *Id.* But as with the authority cited above, these decisions are neither binding precedent nor relevant in that they were issued *after* the occurrence of the alleged tortious conduct.

Second, Plaintiffs argue that the "clearly established" standard, even if it applied, should have no "specificity" requirement. *Id.* at 20 n.16, 21 & n.19. Plaintiffs contend that the government's reliance on *United States v. Gaubert* is disingenuous in "assert[ing] that [*Gaubert*] instructs Plaintiffs to 'allege the violation of any constitutional provision with [a] requisite degree of specificity.'" *Id.* at 21 n.19. But the Ninth Circuit itself reserved the question of what level of specificity is necessary before a constitutional provision will preclude the exercise of discretion by a government official. *See Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (expressly declining to decide "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of the actor"). And in *Fazaga v. FBI*, 965 F.3d 1015 (9th Cir. 2020), the Court suggested that the same level of specificity is required regardless of whether a federal constitutional or statutory directive is at issue. *Id.* at 1065 (deferring issue of the DFE's applicability to district court, which must determine whether "any federal constitutional or statutory directives" specifically prescribed a nondiscretionary course of action

1    so that "the FTCA claims may be able to proceed"), *rev'd on other grounds*, 142 S.Ct. 1051 (2022).

2          Finally, Plaintiffs rely on *Galvin v. Hay*, 374 F.3d 745 (9th Cir. 2004), to support their argument

3    that the DFE does not apply where plaintiffs allege that the government violated their constitutional

4    rights, even if the relevant constitutional rights were not clearly established at the time of the alleged

5    conduct. Dkt. No. 22 at 21. In *Galvin*, the plaintiffs alleged constitutional torts under *Bivens* and false

6    arrest under the FTCA. 374 F.3d at 743. Although the court in *Galvin* stated that the DFE did not apply

7    to one example of unconstitutional conduct that the court elsewhere found was not clearly established,

8    the court did so without any analysis of the proper standard for that conduct—and the court then

9    dismissed the FTCA claims on different grounds. 374 F.3d at 758. The Court simply quoted from *Nurse*

10   for the general proposition that "[t]he Constitution can limit the discretion of federal officials such that

11   FTCA's discretionary function will not apply" and from *United States Fid. & Guar. Co. v. United*

12   *States*, 837 F.2d 116, 120 (3d Cir. 1988), for the general premise that "[f]ederal officials do not possess

13   discretion to violate constitutional rights." 374 F.3d at 758. And crucially, for the second constitutional

14   violation at issue—the denial of a march permit—the Court applied the correct standard, upholding

15   dismissal of plaintiff's FTCA claim because the denial "was not a violation of *clearly established law*,

16   [so] the officers 'had reasonable cause to believe the arrest was lawful.'" *Id.* at 758 (emphasis added).

17                           **(ii)    Defendant Satisfies the Second Prong of the DFE Test Because The**
                                       **Decision to Detain Plaintiffs Separately Was Susceptible to Policy**
18                                     **Considerations.**

19         Plaintiffs argue that their separations were not based on policy considerations, but this assertion

20   is flawed for several reasons. To begin, Plaintiffs contend that there must be a link between their

21   separations and a specific policy objective. Dkt. No. 22 at 23 (Defendant "does not name a single policy

22   objective that was served by the forcible and prolonged separation of Plaintiff families"); *see also id.*

23   (the government does not "clearly identif[y] which policy objectives Plaintiffs' separation purportedly

24   served"). But as reconfirmed recently by the Ninth Circuit in *Lam v. United States*, 979 F.3d 665 (9th

25   Cir. 2020), the test is whether the government's actions "were *susceptible* to policy analysis." *Id.* at 674-

26   75 (emphasis in original); *see also GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir.

27   2002) ("The decision need not *actually* be grounded in policy considerations so long as it is, by its

28   nature, susceptible to a policy analysis.") (emphasis in original)). Plaintiffs do not address this critical

1    distinction. Dkt. No. 22 at 23.

2         Plaintiffs also do not discuss the various policies identified by Defendant in its opening

3    memorandum. *See* Dkt. No. 17 at 5-6, 21-22 (describing discretionary policy judgments relating to

4    prosecution, placement and detention of noncitizen adults and minors). Plaintiffs dismiss the

5    government's policy considerations relating to prosecution and detention of noncitizens illegally

6    crossing the border, bizarrely contending that "prosecutorial and detention decisions" are "not the

7    tortious conduct challenged here" and that family separation is the only challenged conduct. Dkt. No. 22

8    at 23. But in describing the Zero-Tolerance policy as a change from the policy of past presidential

9    administrations, Plaintiffs' Complaint highlights that the separations at issue necessarily included

10   detention and are thus directly linked with discretionary decisions to prosecute parents migrating across

11   the border with children. *See* Compl. ¶ 27 (new separation policy is "deviation from the government's

12   prior policy of not prosecuting adults traveling with minor children" and has policy goal to "deter

13   migration"); ¶ 43 (describing memorandum that recommended separating family units and placing

14   adults into adult detention and minors into custody of HHS by increasing prosecution of parents for

15   illegal entry, with the ultimate goal of having a substantial deterrent effect on unauthorized border

16   crossings). Accordingly, the government's decisions regarding whether to prosecute noncitizens for

17   violations of criminal immigration statutes and where to detain noncitizens pending immigration

18   proceedings are inextricably linked with the separation of the Plaintiff families.[6] Those decisions are

19   quintessential discretionary judgments susceptible to policy considerations—as, of course, are the

20   decisions of this Administration repudiating and reversing the policies of which Plaintiffs complain. *See*

21   *Peña Arita*, 470 F. Supp. 3d at 686-87 (implementation of policies resulting in separations are

22   discretionary conduct grounded in social, economic and political policy that court cannot second-guess).

23              **(iii)    Plaintiffs' Allegations Concerning Confinement Should be Dismissed
                          For Lack of Jurisdiction.**

24         Plaintiffs argue that they do not allege any "independent" claims concerning their detention or

25   conditions of confinement. Dkt. No. 22 at 24 n.22. But Plaintiffs bring negligence claims related to their

26

27   _____
         [6] Plaintiffs' efforts to exclude "detention" from the tortious conduct at issue is undermined by
28   their designation as "parties" to this lawsuit "HHS employees . . . responsible for supervising and
     managing the *detention* of children . . . .'" Compl. ¶ 14 (emphasis added).

allegations that their conditions of confinement were crowded and unhygienic and that the government did not provide the Plaintiff parents with sufficient information about their children and did not facilitate sufficiently frequent communication between the parents and their children. *See, e.g.*, Compl. ¶¶ 75, 85, 91, 110, 137. Indeed, Plaintiffs double-down on certain of these allegations in arguing that the Court should not transfer the action to the District of Arizona. *See* Dkt. No. 22 at 9 (relying on, *inter alia*, allegations concerning "the agents in *California* who forced Benjamin into close contact with human waste, prevented him from sleeping, and deprived him of food," and "the agents responsible for subjecting Edwin to extreme heat for a prolonged period in *Tornillo, Texas*"). And contrary to Plaintiffs' suggestion, courts routinely dismiss *portions* of claims where it is clear, as here, that the court lacks jurisdiction to the extent the claims are based on specific conduct.  *See, e.g.*, *Teplin v. United States*, No. 17-cv-02445-HSG, 2018 WL 1471907, at *4 (N.D. Cal. Mar. 26, 2018) ("To the extent Plaintiff's claims against the United States are based on a theory of negligent hiring, supervision, employment, and retention, they fall within the FTCA's discretionary function exception and are accordingly barred by the doctrine of sovereign immunity.").

Courts have repeatedly held that claims based on acts or omissions relating to conditions of confinement are barred by the DFE because they involve discretionary decisions susceptible to policy considerations. *See* Dkt. No. 17 at 23-24 (collecting cases). In particular, the amount of information provided to the Plaintiff parents and their ability to communicate by telephone are the result of their confinement in criminal custody and adult immigration detention facilities. The government's decisions concerning how much and when to furnish information to detainees and when to permit phone use are discretionary decisions susceptible to policy considerations, and thus they fall within the DFE. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests") (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim."). These claims should thus be dismissed for lack of jurisdiction.

2.      **Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law.**

Plaintiffs argue that the government was not executing a statute or regulation when it separated the Plaintiff families. On the contrary, the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3), required the government to transfer the plaintiff children to ORR custody within 72 hours of the determination that the children were "unaccompanied."

As an initial matter, the decision to determine that the Plaintiff children were "unaccompanied" within the meaning of the TVPRA is a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016). Here, adult Plaintiff Ignacio P.G. was criminally prosecuted, and adult Plaintiffs Eduardo I.T. and Benjamin J.R. were held in custody during the early stages of their immigration proceedings. *See, e.g.*, Compl. ¶¶ 95, 167; Dkt. No. 22 at 4 n.4. In those circumstances, the DFE applies to the officials' determination that the Plaintiff children should have been deemed unaccompanied and thus transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995). Once the discretionary decision was made that the Plaintiff children were "unaccompanied," the TVPRA required transfer of the children to the care and physical custody of ORR while the Plaintiff parents were detained.

Plaintiffs also argue that Defendant has failed to show that it was acting with even minimal "due care" in carrying out its statutory duties. *See* Dkt. No. 22 at 26-27. But even under Plaintiffs' unfounded characterization, Defendant demonstrated at least the requisite "minimal concern for the rights of others" when it transferred the minor child Plaintiffs to the custody of state licensed childcare facilities that "provide[d] a safe environment in the least restrictive setting appropriate for the child's needs while [ORR] attempt[ed] to unify unaccompanied children with a qualified sponsor." Dkt. No. 17-2 ¶ 4.

3.      **Plaintiffs' Claims Have No Private Person Analogue.**

Plaintiffs' legal claims uniquely arise out of the exercise of federal statutory authority that only the government possesses. Accordingly, the challenged conduct is that for which a private person could

1    never be sued. This is especially true when, as here, the statutory authority being exercised pertains to

2    enforcement of federal immigration laws—namely, those relating to whether and where to detain

3    noncitizens pending immigration proceedings. *See Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020)

4    ("Controlling immigration and the presence of noncitizens within the country are duties and powers

5    vested exclusively in the sovereign."). Plaintiffs do not dispute that they were lawfully held in criminal

6    custody or secure adult immigration detention pending immigration proceedings; they do not challenge

7    these decisions. Thus, their claims are essentially a challenge to *where* and *with whom* noncitizens are

8    detained, and whether, when, and with whom to remove noncitizens. Such decisions are made pursuant

9    to federal statutory authority and are in the sole province of the federal government; there is no private

10   person counterpart. *See* Dkt. No. 17 at 27-28 (collecting cases).

11                    **4.    Plaintiffs Bring Impermissible Direct Liability or Systemic Tort Claims.**

12           Plaintiffs contend that they have sufficiently alleged that "individual federal employees" engaged

13   in various tortious conduct.  Dkt. No. 22 at 29. But the Complaint is replete with vague references to

14   supposedly tortious conduct of "the government." *E.g.*, Compl. ¶¶ 32, 51, 53. Indeed, virtually all of the

15   causes of action pled by Plaintiffs specifically reference only "the government." *See* Compl. ¶¶ 186-210

16   (counts 1, 3-6 repeatedly reference "government conduct" and do not reference any federal agents).

17   Under the principles of *Lee* and *Adams*, these allegations are too vague and conclusory to hold

18   Defendant liable under the FTCA. *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL

19   6573258, at *6-7 (D. Ariz. Sept. 18, 2020).

20                    **5.    Plaintiffs Have Abandoned Any Claims Based On Independent Contractors.**

21           Despite bringing claims based on the conditions of their confinement in private facilities

22   operated by private contractors, *see* Dkt. No. 17 at 29, Plaintiffs now clarify that they are not "seek[ing]

23   redress for the private contractors' conduct," Dkt. No. 22 at 30. Rightly so, as the parties apparently

24   agree that the United States enjoys sovereign immunity for claims against it based on the acts of private

25   contractors. *See id.*; *see also* Dkt. No. 17 at 29-30 (citing cases).

26   **II.    CONCLUSION**

27           For the foregoing reasons, Defendant respectfully requests that the Court transfer this action to

28   the District of Arizona or, in the alternative, dismiss Plaintiffs' Complaint.

1 | Dated: January 12, 2023

Respectfully submitted,

2

STEPHANIE M. HINDS
United States Attorney

3

4

 /s/ *Kelsey J. Helland*
Kenneth Brakebill
Kelsey J. Helland
Assistant United States Attorneys

5

6

Counsel for Defendant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28