UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDUARDO I.T., et al.,

                    Plaintiffs,

        v.

UNITED STATES OF AMERICA,

                    Defendant.

Case No.  22-cv-05333-DMR

**ORDER ON MOTION TO TRANSFER, OR IN THE ALTERNATIVE, TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Re: Dkt. No. 17

Plaintiffs Eduardo I.T. and his son Edwin E.I.I., Ignacio P.G. and his son Leonel Y.P.G., and Benjamin J.R. and his son William A.J.M. (together "Plaintiffs") assert several claims under the Federal Tort Claims Act ("FTCA") arising out of their forcible separation while in the custody of federal immigration officials.  Defendant United States now moves pursuant to 28 U.S.C. § 1404(a) to transfer venue to the District of Arizona, or in the alternative, to dismiss the case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  [Docket No. 17.]  Plaintiffs opposed, and the United States replied.  [Docket Nos. 22 ("Opp'n"), 27 ("Reply").]  Plaintiffs subsequently filed a statement of recent decision.  [Docket No. 28.]  This matter is suitable for determination without oral argument.  Civ. L.R. 7-1(b).   For the following reasons, the motion is denied.

## I.      BACKGROUND

### A.      Factual Background

The following facts are taken from the complaint.[1]  In early March 2017, the United States began considering a policy that would separate families entering the United States to deter parents

---

[1] When reviewing a motion to dismiss, the court must "accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

United States District Court
Northern District of California

from migrating with their children.  Compl. ¶ 25.  Soon after, the United States piloted a family separation policy in Texas (the "Pilot Program").  *Id.* ¶ 26.  Under the Pilot Program, federal immigration officials separated families arriving in Texas "to pressure migrant parents into foregoing their asylum claims and accepting deportation."  *Id.*  This was a deviation from the United States' longstanding policy of keeping families together.  *Id.* ¶ 23.  The Pilot Program resulted in the separation of at least 280 families.  *Id.* ¶ 32.

On April 6, 2018, the United States effectively adopted the Pilot Program across the entire border.  Compl. ¶ 44.  This effort was formally announced by former Attorney General Jeff Sessions in a memo titled "Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a)" (the "Zero Tolerance Policy").  *Id.*  The Zero Tolerance Policy targeted parents crossing the border for prosecution and then used their prosecution as a pretext to designate their children as "unaccompanied."  *Id.*  As unaccompanied minors ("UACs"), children could then be sent to and detained in Health and Human Services facilities away from their parents.  *Id.*

The United States' family separation policy extended beyond the scope of the Zero Tolerance Policy—federal agents separated children from parents who were being prosecuted for illegal entry, as well as from parents who were never prosecuted.  Compl. ¶ 52.  More than 15 percent of all parents separated from children under the family separation policy were not referred for prosecution, including two of the Plaintiff families.  *Id.*  When parents were prosecuted, the United States kept families separated even after the parent served a cursory sentence like Plaintiff Ignacio P.G.'s "time served" sentence for misdemeanor "illegal entry."  Opp'n at 4, n.4 (acknowledging that the Complaint incorrectly states that Ignacio P.G. was not prosecuted (*see* Compl. ¶ 123)).

The family separation policy was revoked by executive order in June 2018.  Compl. ¶ 58.  While it was in effect, the United States forcibly separated at least 5,648 children from their parents.  *Id.* ¶ 60.  Because the goal of the family separation policy had been to separate families, the United States did not have systems in place to allow for reunification.  *Id.*

Plaintiffs are three father-son pairs who were separated by federal immigration officials in May and early June 2018, when they entered the United States to seek asylum.  Compl. ¶ 66.

United States District Court
Northern District of California

1  Shortly after crossing the border into Arizona, Plaintiffs were apprehended by U.S. Customs and

2  Border Protection ("CBP") Border Patrol Agents and taken to CBP facilities in Arizona where

3  they were forcibly separated.  *Id.* ¶¶ 68-71; 106-112; 127-133.

4      After being separated from their parents, the Plaintiff children were placed in the custody

5  of the Office of Refugee Resettlement ("ORR").  Compl. ¶¶ 79, 121, 150.  Sixteen-year-old Edwin

6  E.I.I. was separated from his father for nearly 15 weeks (Compl. ¶ 71); six-year-old Leonel Y.P.G.

7  was separated from his father for nearly two months (Compl. ¶ 121); and fifteen-year-old William

8  A.J.M. was separated from his father for over nine months (Compl. at 42:10-11).

9      Plaintiffs suffered various harms while in custody: they were forced into contact with

10 human waste (Compl. ¶¶ 72, 114, 136, 138, 152); deprived of the ability to wash or bathe (Compl.

11 ¶¶ 73, 75, 86, 87, 115, 122, 141); deprived of food and potable water (Compl. ¶¶ 68, 73, 75, 85,

12 86, 114, 117, 129, 136, 152); deprived of medical or mental health care (Compl. ¶¶ 80-82, 86, 117,

13 122); and forced to sign documents they could not understand (Compl. ¶¶ 91, 99, 106, 108, 131,

14 144, 145) because they did not speak English and were not provided with Mam- or Q'eqchi'-

15 speaking interpreters (Compl. ¶¶ 88, 91, 108, 117, 121, 130-32, 144).

16     All Plaintiffs now reside in Oakland, California (Compl. ¶¶ 100, 122, 167), where they

17 continue to suffer lasting effects related to their forcible separation.  (Compl. ¶¶ 103-04, 124-25,

18 169).

19     **B.    Procedural Background**

20     On September 20, 2022 Plaintiffs filed this action asserting six claims under the FTCA for

21 intentional infliction of emotional distress, negligence, abuse of process, negligent

22 supervision/breach of fiduciary duty, loss of consortium, and intentional interference with

23 custodial relations.  On November 22, 2022 the United States filed the instant motion to transfer

24 venue to the District of Arizona, or in the alternative, to dismiss the case for lack of subject matter

25 jurisdiction.

26 **II.    LEGAL STANDARDS**

27     **A.  Motion to Transfer**

28     "For the convenience of parties and witnesses, in the interest of justice, a district court may

3

1   transfer any civil action to any other district or division where it might have been brought."  28

2   U.S.C. § 1404(a).  Section 1404(a) "does not condition transfer on the initial forum's being

3   'wrong'. . . [a]nd it permits transfer to any district where venue is also proper . . . or to any other

4   district to which the parties have agreed by contract or stipulation."  *Atl. Marine Const. Co. v. U.S.*

5   *Dist. Court*, 134 S. Ct. 568, 579 (2013).

6          When determining whether a transfer is proper, courts employ a two-step analysis.  *Park v.*

7   *Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013).  First, courts consider

8   the threshold question of whether the case could have been brought in the forum to which the

9   moving party seeks to transfer the case.  *See id.*; *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409,

10  414 (9th Cir. 1985).  Once the party seeking transfer has made this showing, district courts have

11  discretion to consider motions to change venue based on an "individualized, case-by-case

12  consideration of convenience and fairness."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498

13  (9th Cir. 2000) (internal quotations and citations omitted).

14         Pursuant to Section 1404(a), a court should consider the convenience of the parties, the

15  convenience of the witnesses, and the interest of justice.  28 U.S.C. § 1404(a).  A court may

16  consider additional factors, including "ease of access to the evidence; familiarity of each forum

17  with the applicable law; feasibility of consolidation of other claims; any local interest in the

18  controversy; relative court congestion and time to trial in each forum; location where the relevant

19  agreements were negotiated and executed; the parties' contacts with forum; difference in the costs

20  of litigation in the two forums; and availability of compulsory process to compel attendance of

21  unwilling non-party witnesses."  *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1082 (N.D. Cal. 2008)

22  (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Jones v.*

23  *GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)).  "No single factor is dispositive,

24  and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis."

25  *Ctr. for Biological Diversity v. Kempthorne*, No. 08–1339, 2008 WL 4543043, at *2 (N.D. Cal.

26  Oct. 10, 2008) (citing *Stewart Org., Inc.*, 487 U.S. at 29; *Sparling v. Hoffman Constr. Co., Inc.*,

27  864 F.2d 635, 639 (9th Cir. 1988)).

28         "Unless the balance of the § 1404(a) factors 'is strongly in favor of the defendants, the

United States District Court
Northern District of California

plaintiff's choice of forum should rarely be disturbed.'" *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1082 (N.D. Cal. 2008) (quoting *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)).  "The burden is on the defendant to show that the convenience of parties and witnesses and the interest of justice require transfer to another district." *Id.* (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

### B.    Motion to Dismiss

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1).  The challenging party may make a facial or factual attack challenging subject matter jurisdiction.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* at 1039.  A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted).  Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

## III.    DISCUSSION

The United States moves to transfer this case to the District of Arizona or, in the alternative, to dismiss the complaint for lack of subject matter jurisdiction.  The court addresses each motion in turn.

### A.  Motion to Transfer

The United States moves to transfer the case arguing that venue is proper in the District of

Arizona and the balance of relevant factors weighs in favor of litigating in that forum.  Mot. at 10.  Plaintiffs oppose transfer but do not dispute that this action could have been brought in the District of Arizona.  *See* Opp'n at 6.

As an initial matter, the parties dispute the degree of deference that should be given to Plaintiffs' choice of forum.  Plaintiffs argue that "great weight" is generally accorded to their choice.  Opp'n at 6 (citing *Lou v. Belzberg*, 8334 F.2d 730, 739 (9th Cir. 1987)).  The United States contends that the deference is substantially reduced where the chosen forum lacks a significant connection to the activities in the complaint.  Reply at 1 (quoting *Fabus Corp. v. Asiana Exp. Corp.*, No. C-00-3172 PJH, 2001 WL 253185, at *2 (N.D. Cal. Mar. 5, 2001)).[2]

"[T]here is a strong presumption in favor of a plaintiff's choice of forum."  *Getz*, 547 F. Supp. 2d at 1082.  However, "[t]here are situations . . . where a plaintiff's choice of forum is accorded little weight," such as where the operative facts did not occur in the selected forum and that forum has no particular interest in the subject matter or the parties.  *See, e.g.*, *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954, 1082-83 (9th Cir.1968).

Here, all Plaintiffs reside in this district.  Other family separation cases in this circuit have held that venue was proper based on the plaintiffs' residency.  *See e.g.*, *Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022) (examining transfer issue in FTCA case involving the family separation policy and finding that the defendant had not made a sufficient showing that transfer was warranted where the plaintiffs resided in their forum of choice); *E.L.A. v. United States*, No. 2:20-CV-1524-RAJ, 2022 WL 2046135 (W.D. Wash. June 3, 2022), *reconsideration denied,* No. 2:20-CV-1524-RAJ, 2022 WL 11212690 (W.D. Wash. Oct. 19, 2022) (finding it would not be in the interest of justice to transfer the case to a forum wherein the plaintiffs would be unable to litigate); *Nunez Euceda v. United States*, No. 220CV10793VAPGJSX, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) (finding that venue was

---

[2] The United States' reliance on *Fabus Corp.* is somewhat misleading because it quotes only part of the relevant sentence and omits language that has meaning in this case.  *See* Reply at 1.  The entire sentence provides "[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced *where the plaintiff's venue choice is not its residence* or where the forum chosen lacks a significant connection to the activities alleged in the complaint."  *Fabus Corp.*, 2001 WL 253185, at *1 (emphasis added).  Here, Plaintiffs all live in this venue.

United States District Court
Northern District of California

proper in the Central District of California because the plaintiff resided in Los Angeles County).

The United States cites the Northern District of Illinois' recent analysis in *D.A. v. United States*, No. 1:20-cv-03082, ECF No. 85 (N.D. Ill. Aug. 11, 2022).  Mot. at 16; *see also* Docket No. 17-1 (Kelsey J. Helland Decl., Nov. 22, 2022), Ex. C (transcript of the August 11, 2022 hearing on the defendant's motion to transfer in *D.A. v. United States*).  That case does not shed light here, because the plaintiff's choice of forum was not her place of residence, and therefore "carrie[d] less weight."  Helland Decl., Ex. C at 6:18-22.

In addition, significant operative facts occurred in this district.  The complaint contains detailed allegations of Plaintiffs' ongoing emotional trauma in this district following their reunification.  *See* Opp'n at 7 (citing Compl. ¶¶ 102-04, 124-25, 169-70).  The court disagrees with the United States' contention that these allegations are solely relevant to the issue of damages.  *See* Mot. at 14.  The harmful effects of the United States' alleged acts are also relevant to liability for Plaintiffs' intentional infliction of emotional distress claim.  Although other operative facts occurred in Arizona (i.e., each Plaintiff parent and child were apprehended, detained, and separated in Arizona), those facts are insufficient to outweigh the Plaintiffs' forum of choice in light of their residence and other key facts tied to this district.

The convenience of the parties, the convenience of the witnesses, and the interests of justice also weigh against a change of venue pursuant to section 1404(a).  First, the convenience to Plaintiffs weighs against transfer.  Plaintiffs are residents of Oakland, California and are all low-income asylum seekers.  They explain that transfer to another district would "effectively shut them out of court."  Opp'n at 5; *see also* Docket Nos. 23, 24, 25 ("Plaintiff Declarations") ¶¶ 4-5.  The United States does not face this problem.

With respect to the convenience of the witnesses, Plaintiffs argue that all six fathers and sons intend to testify at trial; in contrast, they contend that the United States has failed to identify a single witness in Arizona.  Opp'n at 6-7.  Plaintiffs also explain that non-party witnesses, such as educators, medical providers, and mental health professionals who have interacted with Plaintiffs

since their reunification are likely to reside in this district.[3]  Opp'n at 8; Docket No. 26 (Victoria Petty Decl., Dec. 22, 2022) ¶ 5.

The United States responds that it is not required to identify specific witnesses in the alternate forum; rather, the court should look to the "*foreseeability of witnesses* in the transferee venue."  Reply at 6 (emphasis in original).  To that end, the United States asserts that the critical witnesses who have knowledge of the allegations in the complaint are located in or close to the District of Arizona.  Mot. at 13.

As Plaintiffs point out, courts "discount[] any inconvenience to the parties' employees, whom the parties can compel to testify."  Opp'n at 8 (citing *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008)).  Here, many of the critical witnesses the United States refers to are its employees – for example, "numerous CBP and ICE officials."  *See* Mot. at 14.  Given the lapse of time since the alleged acts, some employees may no longer reside in Arizona; as a result, the District of Arizona may not be convenient to them either.  *See* Opp'n at 8.  That some witnesses may be employees of ORR facilities, which are privately owned and operated, also does not tip the balance of this factor in the United States' favor because only one of those facilities is in Arizona. *See* Reply at 8.

Finally, the court finds that it would not be in the interest of justice to transfer the case to a forum in which it would be very challenging for Plaintiffs to litigate.  *See E.L.A.*, 2022 WL 2046135, at *5.

Other factors do not strongly favor the United States.  The parties do not dispute that at least some of Plaintiffs' claims will be decided under Arizona state law.  *See* Mot. at 12; Opp'n at 12.  "It is appropriate and favored to try a diversity case in a forum that is comfortable with the state law that must govern the case."  *Sloan v. Pfizer, Inc.*, No. C 08-1849 SBA, 2008 WL 4167083, at *6 (N.D. Cal. Sept. 8, 2008) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964)). However, this court can comprehend and apply Arizona and California law as needed, a task

---

[3] The United States disputes these witnesses' relevance to the case, arguing that only one of the Plaintiff children is still in school, and Plaintiffs have not indicated that they obtained healthcare related to their claims in this district.  Reply at 8.

which federal courts are routinely required to perform.

The United States contends that it will cost much more to litigate this case in this district because a "significant amount of discovery will concern initial detention facilities located in Arizona[,]" and "[c]onducting site visits, meeting with witnesses, flying back and forth from California to Arizona while accommodating witness, site and attorney time will entail substantial costs." Mot. at 14. "[T]he location of evidence and witnesses . . . is no longer weighed heavily given the modern advances in communication and transportation." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). In addition, "[t]he convenience of counsel is not considered for purposes of deciding whether a venue is convenient for the purposes of § 1404(a)." *Smith v. Aetna Life Ins. Co.,* No. C 11–2559 SI, 2011 WL 3904131, at *2 (N.D. Cal. Sept. 6, 2011).

The balance of the section 1404(a) factors does not strongly favor transfer. Therefore, the court exercises its broad discretion to deny the United States' motion to transfer this case to the District of Arizona.

## B.     Motion to Dismiss

In the alternative, the United States moves to dismiss the complaint for lack of subject matter jurisdiction.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). "Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The FTCA provides a limited waiver of the government's sovereign immunity for certain torts committed by its employees:

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

9

1    28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 ("The United States shall be liable . . . in the

2    same manner and to the same extent as a private individual under like circumstances[.]").

3            The FTCA waiver is subject to certain exceptions.  The United States argues that

4    Plaintiffs' FTCA claims are barred by the discretionary function exception, the due care exception,

5    the lack of a private person analog, the prohibition against systemic tort claims, and the

6    independent contractor exclusion.

### 1.    Discretionary Function Exception

8            The discretionary function exception states that 28 U.S.C. § 1346(b) shall not apply to:

> Any claim based upon an act or omission of an employee of the
> Government, exercising due care, in the execution of a statute or
> regulation, whether or not such statute or regulation be valid, or based
> upon the exercise or performance or the failure to exercise or perform
> a *discretionary function or duty* on the part of a federal agency or an
> employee of the Government, whether or not the discretion involved
> be abused.

13   28 U.S.C. § 2680(a) (emphasis added).  The discretionary function exception is meant to "prevent

14   judicial 'second-guessing' of legislative and administrative decisions grounded in social,

15   economic and political policy through the medium of an action in tort."  *Sigman v. United States*,

16   217 F.3d 785, 793 (9th Cir. 2000) (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

17   "In cases in which the exception does apply, the court lacks subject matter jurisdiction over the

18   action."  *Sigman*, 217 F.3d at 793.

19           The discretionary function exception is subject to a two-part test.  *Alfrey v. United States*,

20   276 F.3d 557, 561–62 (9th Cir. 2002) (citing *Sigman*, 217 F.3d at 793).  First, a court must

21   determine whether the challenged conduct is discretionary, meaning whether it "involv[es] an

22   element of judgment or choice."  *Id.* (citing *Fang v. United States*, 140 F.3d 1238, 1241 (9th Cir.

23   1998)).  When "a federal statute, regulation or policy specifically prescribes a course of action for

24   an employee to follow," this element is not met.  *Id.* (citing *Fang*, 140 F.3d at 1241).  "Second, if

25   the challenged conduct is discretionary, we 'must determine whether that judgment is of the kind

26   that the discretionary function exception was designed to shield.'"  *Id.* (quoting *Berkovitz v.

27   United States,* 486 U.S. 531, 536 (1988)).  In general, the exception does not shield

28   unconstitutional government conduct.  *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000);

United States District Court
Northern District of California

1   *see also Nieves Martinez v. United States*, No. 19-16953, 2021 WL 1881388, at *7 (9th Cir. May

2   11, 2021) ("[A]gents do not have discretion to violate the Constitution.").

3         The United States argues that Plaintiffs' FTCA claims are barred by the discretionary

4   function exception because detention decisions and conditions of confinement are discretionary.

5   Mot. at 19, 23.  Plaintiffs reject this characterization of their claims.  Opp'n at 15.  They explain

6   that the complaint alleges that government officials engaged in tortious conduct by forcibly

7   separating Plaintiff parents from their children without explanation and subjecting them to

8   constant cruelty for the express purpose of causing them harm.  *Id.*  According to Plaintiffs,

9   separating families cannot be discretionary because it is unconstitutional.  Opp'n at 17.

10        The court agrees.  Several family separation cases in this circuit have previously rejected

11   the United States' arguments in this respect.  *See, e.g.*, *F.R. v. United States*, No. CV-21-00339-

12   PHX-DLR, 2022 WL 2905040, at *5 (D. Ariz. July 22, 2022); *A.I.I.L. v. Sessions*, No. CV-19-

13   00481-TUC-JCH, 2022 WL 992543, at *3 (D. Ariz. Mar. 31, 2022); *A.P.F. v. United States*, 492

14   F. Supp. 3d 989, 996–97 (D. Ariz. 2020); *C.M. v. United States*, No. CV-19-05217-PHX-SRB,

15   2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020); *Nunez Eueda*, 2021 WL 4895748, at *3.

16        As in those cases, the court finds that Plaintiffs have plausibly alleged that the United

17   States' practice of separating families at the border violated their constitutional rights.  *See A.P.F.*,

18   492 F. Supp. 3d at 996 (quoting *Ms. L. v. U.S Immigration & Customs Enf't*, 310 F. Supp. 3d

19   1133, 1144-46 (S.D. Cal. 2018), *modified,* 330 F.R.D. 284 (S.D. Cal. 2019)).  As each of

20   Plaintiffs' claims is predicated on the United States' family separation policy (*see, e.g.*, Count 2 –

21   Negligence) or alleges injuries resulting from their forcible separation pursuant to that policy (*see,*

22   *e.g.*, Count 1 – Intentional Infliction of Emotional Distress), the discretionary function exception

23   does not apply.  *See id.* ("Because government officials lack discretion to violate the Constitution,

24   the discretionary function exception cannot shield conduct related to the government's likely

25   unconstitutional separation of plaintiffs.").

26        The United States contends that Plaintiffs cannot circumvent the discretionary function

27   exception by alleging a constitutional violation for two reasons.  *See* Reply at 11.  First, the United

28   States argues that "negligence cannot violate the Due Process Clause of the Constitution."  This

mischaracterizes Plaintiffs' negligence claim, which asserts that Defendant breached duties owed to Plaintiffs, including duties derived from the Constitution. Compl. ¶¶ 190-192. In contrast to the cases cited by the United States, Plaintiffs are not asserting a constitutional violation predicated on negligence. *See* Reply at 11 (citing *Daniels v. Williams*, 474 U.S. 327, 331-32 (1986) (holding that mere negligence cannot amount to a constitutional violation); *Campbell v. Chavez*, 402 F. Supp. 2d 1101, 1102 (D. Ariz. 2005) (same); *Gomez v. Arizona*, No. CV-16-04228, 2017 WL 5517449, at *4 n.1 (D. Ariz. Nov. 17, 2017) (same)).

Second, the United States asks the court to require Plaintiffs to establish that the constitutional right was clearly established at the time of the conduct at issue, for purposes of defending against an assertion of the discretionary function exception.[4] Reply at 12. The United States made a similar argument in *Fuentes-Ortega v. United States*, No. CV-22-00449-PHX-DGC, 2022 WL 16924223, at *2-3 (D. Ariz. Nov. 14, 2022). The court examined Ninth Circuit law and determined that it does not support the application of a "clearly established" standard:

> The Ninth Circuit has held, however, that "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply." *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000). The opinion in *Nurse* declined to "make any decision regarding the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor." *Id.* ... [*Nurse*] specifically held that mere allegations of a constitutional violation were sufficient to defeat an early motion to dismiss based on the discretionary function exception ... Other Ninth Circuit cases have followed *Nurse* without prescribing the level of constitutional specificity required to defeat the discretionary function exception. If anything, these later cases seem to suggest that a mere constitutional violation is sufficient to defeat the exception. *See Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1251 (9th Cir. 2019), *rev'd on other grounds,*— U.S. ——, 142 S. Ct. 1051, —— L.Ed.2d —— (2022) ("[If] Defendants did not violate any federal constitutional or statutory directives, the discretionary function exception will bar Plaintiffs' FTCA claims."); *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) ("As federal officials do not possess discretion to violate constitutional rights, the discretionary function exception does not apply here.") (citations omitted).

---

[4] The "clearly established" standard derives from the law of qualified immunity.

United States District Court
Northern District of California

1   *Fuentes-Ortega*, 2022 WL 16924223, at *2-3.  This court concurs that Ninth Circuit law does not

2   support the United States' request for application of the "clearly established" standard.

3          At least one other court in this circuit has also rejected the qualified immunity standard and

4   found no reason to deviate from the generally applicable plausibility standard.  *See F.R.*, 2022 WL

5   2905040, at *5 (finding that the allegation of unconstitutionality need only be plausible at the

6   pleading stage).

7          In sum, the discretionary function exception does not bar Plaintiffs' claims.

8                          **2.      Due Care Exception**

9          Next, the United States argues that Plaintiffs' FTCA claims are barred because it cannot be

10   held liable for "[a]ny claim based upon an act or omission of an employee of the Government,

11   exercising due care, in the execution of a statute or regulation, whether or not such statute or

12   regulation be valid."  28 U.S.C. § 2680(a).

13          "[T]he due care exception applies only when an official was 'reasonably executing the

14   mandates of' a statute or regulation."  *C.M.*, 2020 WL 1698191, at *3 (quoting *Welch v. United*

15   *States*, 409 F.3d 646, 651 (4th Cir. 2005)).

16          The United States contends that it was implementing the Trafficking Victims Protection

17   Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3), which requires UACs to be

18   transferred to the custody of ORR within 72 hours.  Reply at 17.  However, as courts in related

19   family separation lawsuits have noted "[t]he [United States' family] separations were conducted

20   pursuant to executive policy, not pursuant to any statute or regulation[.]"  *Wilbur P.G.*, 2022 WL

21   3024319, at *5 (quoting *Nunez Euceda*, 2021 WL 4895748, at *4 (itself citing *A.P.F.*, 2020 WL

22   8173295, at *3 and *C.M.*, 2020 WL 1698191, at *3)).  The United States' attempt to recharacterize

23   its actions as pursuant to the TVPRA is not well taken.

24          Because the separations were conducted pursuant to executive policy and the United States

25   does not cite to any statute or regulation mandating family separation, its actions are not shielded

26   by the due care exception.  *See Nunez Euceda*, 2021 WL 4895748, at *4; *see also* 28 U.S.C. §

27   2680 (using the phrase "statute or regulation" to delimit the due care exception, while using the

28   broader phrase "discretionary function or duty" to delimit the discretionary function exception).

United States District Court
Northern District of California

1    Accordingly, the due care exception does not bar Plaintiffs' FTCA claims.

2         **3.    Private Person Analog**

3    Under the FTCA, the United States may only be liable "in the same manner and to the

4    same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  Plaintiffs must

5    therefore show a "persuasive analogy with private conduct." *Fuentes-Ortega*, 2022 WL

6    16924223, at *4 (citing *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992)).

7    The United States contends that no private person analog exists to support Plaintiffs'

8    FTCA claims because the government is the only entity with the authority to enforce federal

9    criminal and immigrant laws and make detention determinations.  Mot. at 27.

10   The Ninth Circuit has recognized that because "the federal government 'could never be

11   exactly like a private actor,'" courts are only required to "find the most reasonable analogy" to

12   private tortious conduct.  *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016) (quoting

13   *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367 (9th Cir. 1986)).  "The better approach is to focus

14   on the behavior involved, not the legal labels applied, and then look for analogies with private

15   conduct." *Fuentes-Ortega*, 2022 WL 16924223, at *4 (quoting *Arvanis v. Noslo Eng'g*

16   *Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir. 1984)).

17   Here, Plaintiffs assert claims for intentional infliction of emotional distress (IIED),

18   negligence, abuse of process, negligent supervision/breach of fiduciary duty, loss of consortium,

19   and intentional interference with custodial relations.  The United States does not meaningfully

20   engage with any of these specific claims.

21   Family separation cases in this circuit presented with similar tort claims have recognized

22   private analogs.  *See Fuentes-Ortega*, 2022 WL 16924223, at *5 (collecting cases that have

23   recognized the existence of a private analogy to IIED, negligence, and loss of consortium claims).

24   For example, courts have recognized IIED claims under the FTCA where, as here, "[federal]

25   agents' actions were motivated by malice." *C.M.*, 2020 WL 1698191, at *2 (alterations in

26   original) (quoting *Martinez v. United States*, 2018 WL 3359562, at *10–12 (D. Ariz. July 10,

27   2018) (itself citing *Gasho v. United States*, 39 F.3d 1420, 1434 (9th Cir. 1994)).  Likewise, courts

28   have recognized negligence claims under the FTCA where the "plaintiffs alleged that federal

United States District Court
Northern District of California

1   employees' placement of a prisoner in a certain cell was negligent." *C.M.*, 2020 WL 1698191, at

2   *2 (citing *Estate of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *1 (D.

3   Ariz. Mar. 10, 2020)).  In *C.M.* the court reasoned that federal immigration officials, like nursing

4   facility employees and Bureau of Prisons employees, are tasked with the care and custody of

5   detainees, and owe them at least a minimal level of care.  *Id.*

6        The court agrees with the logic and analysis discussed in these cases.  Accordingly, the

7   United States' motion to dismiss on the basis of its narrow characterization of the conduct at issue

8   is denied.  *See Fuentes-Ortega*, 2022 WL 16924223, at *5.

9                **4.       Systemic Tort Prohibition**

10       Finally, the United States contends that Plaintiffs "cannot assert systemic claims or seek to

11  hold the United States directly liable under the FTCA but must instead allege tortious conduct by

12  individual federal employees, acting within the scope of their employment."  Mot. at 28.  The

13  United States argues that the complaint improperly attributes the alleged tortious conduct to the

14  "government as a whole."  Mot. at 29.  Plaintiffs respond that the complaint adequately alleges

15  that individual federal employees acting within the scope of their employment engaged in tortious

16  conduct.  Opp'n at 29.

17       The United States' attempt to analogize *Lee v. United States*, No. CV 19-08051-PCT-DLR

18  (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) is not persuasive.  In *Lee*, the court explained

19  that the plaintiff's claims were "unclear."  2020 WL 6573258, at *5.  To the extent the plaintiff

20  intended to sue for the tortious misconduct of the government itself, the court dismissed the claim

21  for lack of subject matter jurisdiction.  *Id.*, at *5-7.  However, to the extent the plaintiff brought

22  claims against the government based on the alleged conduct of its employees, the court dismissed

23  those claims for failure to state a claim, subject to amendment.  *Id.*, at *5-7, 18.

24       Here, Plaintiffs have properly alleged tortious conduct by individual employees working

25  for governmental agencies.  *See e.g.*, Compl. ¶ 11 ("Defendant the United States of America is the

26  appropriate defendant under the FTCA.  28 U.S.C. § 1346(b).  Defendant acted through the

27  Department of Homeland Security ("DHS"), the Department of Health and Human Services

28  ("HHS"), United States Citizenship and Immigration Services ("USCIS"), and the Department of

Justice ("DOJ")—all "federal agencies" of the United States under 28 U.S.C. § 2671—*and their employees, officers, and agents*, including but not limited to Customs and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE"), subcomponent agencies of DHS that are under the direction, authority, and control of the Secretary of Homeland Security; the Office of Refugee Resettlement ("ORR"), a subcomponent agency of HHS that is under the direction, authority, and control of the Secretary of Health and Human Services; and the Office of the Attorney General within the DOJ.") (emphasis added).  They have also adequately alleged what actions these employees and their agencies took, including, for example, designing the United States' practice of separating families at the border (Compl. ¶¶ 1-3, 20, 25-32, 41-47) and forcibly separating Plaintiff parents from their children (Compl. ¶¶ 69-71, 111-12, 133-35, 139). *See* Opp'n at 29.  That Plaintiffs are unable to name the individual officers and employees by name is not fatal to their action – "particularly given that none of the Plaintiffs spoke English at the time of detention" and that the United States "should be able to determine which individuals were involved based on the allegations in the complaint." *Wilbur P.G.*, 2022 WL 3024319, at *6.

Accordingly, the United States' motion to dismiss is denied on this basis.

### 5.    Independent Contractor Exclusion

The FTCA "protect[s] the United States from vicarious liability for the negligent acts of its independent contractors." *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016).  However, "[t]he independent contractor exception . . . has no bearing on the United States' FTCA liability for its own acts or omissions." *Edison*, 822 F.3d at 518.  On reply, the United States appears to acknowledge that Plaintiffs are not seeking redress for private contractors in this case, thereby conceding the argument. *See* Reply at 18.

//

//

//

//

//

//

16

**IV.    CONCLUSION**

For the reasons set forth above, the United States' motion to dismiss is denied in its entirety.  The United States shall file an answer to the complaint within 14 days of this order.

**IT IS SO ORDERED**

Dated: February 24, 2023

_____
Donna M. Ryu
United States Magistrate Judge