1   ISMAIL J. RAMSEY (CABN 189820)
    United States Attorney
2   MICHELLE LO (NYRN 4325163)
    Chief, Civil Division
3   KENNETH W. BRAKEBILL (CABN 196696)
    Assistant United States Attorney
4   KELSEY J. HELLAND (CABN 298888)
    Assistant United States Attorney
5        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
6        Telephone: (415) 436-7167
         Facsimile: (415) 436-7169
7        Kenneth.Brakebill@usdoj.gov

8   Attorneys for the United States of America

9
                        UNITED STATES DISTRICT COURT
10
                      NORTHERN DISTRICT OF CALIFORNIA
11
                             OAKLAND DIVISION
12

13  EDUARDO I.T., et al.,                  )   CASE NO. 4:22-cv-05333-DMR
                                           )
14          Plaintiffs,                    )
                                           )
15      v.                                 )   **ANSWER TO COMPLAINT FOR DAMAGES**
                                           )   **UNDER THE FEDERAL TORT CLAIMS ACT**
16  UNITED STATES OF AMERICA,              )
                                           )
17          Defendant.                     )   The Hon. Donna M. Ryu
    _____    )
18

19

20

21

22

23

24

25

26

27

28

Defendant, the United States of America ("Defendant"), by and through undersigned counsel, respectfully submits the following Answer to Plaintiffs' Complaint for Damages Under the Federal Tort Claims Act (ECF No. 1) (hereinafter "Complaint").

## GENERAL ANSWER

a.    Plaintiffs quote various documents throughout their Complaint, including United States District Court cases, Congressional statutes, reports and testimony, new media articles, and investigatory reports from federal agencies. Defendant responds to these citations as follows:

i.    In the specific answers that follow, to the extent a paragraph in Plaintiffs' Complaint cites or otherwise references one of these documentary sources solely as support for a factual allegation, Defendant answers the factual allegation in accordance with Federal Rule of Civil Procedure 8 by either admitting, denying, or pleading lack of sufficient information with respect to that factual allegation. The citation of the source underlying the factual allegation is in and of itself not a factual allegation requiring a response.

ii.    To the extent a paragraph in Plaintiffs' Complaint contains a factual allegation, purports to provide a quotation from a documentary source in whole or in part in a manner requiring a response as to its truthfulness or accuracy, or specifically describes a finding or conclusion of a report, policy, or other cited source, Defendant answers those allegations in accordance with Rule 8.

b.    Insofar as Plaintiffs' Complaint contains allegations regarding the subjective mindset, knowledge, or motivation of various Executive Branch officials and employees, those allegations are denied throughout the Answer.

c.    Insofar as allegations relate to or reference the identities, ages, relationships, and nationalities of Plaintiffs, those allegations are denied throughout the Answer on the ground that Defendant lacks information sufficient to form a belief as to the allegations because Plaintiffs are proceeding pseudonymously. Therefore, any specific admissions or denials, in full or in part, of such allegations are qualified by the provision that Defendant is answering based on its belief, but lack of certainty, as to the identities of Plaintiffs.

## SPECIFIC ANSWERS BY PARAGRAPH

## INTRODUCTION

1.      Defendant lacks information sufficient to form a belief as to whether the Plaintiff families are indigenous Guatemalans. Defendant admits that, for a limited period of time in 2018, the United States implemented a Department of Justice ("DOJ") initiated Zero-Tolerance Policy that resulted in the separation of some families at the United States–Mexico border. Defendant denies that it had a "Family Separation Policy." Defendant denies the purpose of the Zero-Tolerance Policy was to cause families emotional harm. Defendant lacks information sufficient to form a belief as to the intent of those individuals who illegally entered the United States at the U.S.-Mexico border. Defendant lacks information sufficient to form a belief as the truth of any remaining parts of this allegation, and on that basis denies them.

2.      Defendant admits that this case concerns the three Plaintiff families identified in the Complaint. Defendant denies that it had a "Family Separation Policy." Defendant lacks information sufficient to form a belief as to Plaintiffs' subjective suffering. Defendant admits that either the persons believed to be Plaintiff children, or the persons believed to be their fathers, represented to Defendant that Plaintiff children were 6, 15 and 16 years old at the time of separation. Defendant lacks information sufficient to form a belief as to the subjective thoughts and opinions of the Plaintiffs. Defendant denies the remaining allegations.

3.      Defendant denies that it had a "Family Separation Policy." Defendant admits there was a DOJ-initiated Zero-Tolerance policy but denies the purpose(s) were as alleged in this paragraph. Defendant lacks information sufficient to form a belief as to the subjective intent of unidentified "policymakers" as alleged in this paragraph, and on that basis denies them.

4.      Defendant denies that the government's conduct was tortious. Defendant denies that it had a "Family Separation Policy." Defendant denies that its purpose in litigating this and other cases involving the Zero-Tolerance Policy is to waste court, attorney, litigant, and agency time and resources, and avers that its purpose is instead to protect the interests of the United States of America. The remaining portion of this paragraph contains Plaintiffs' characterization of this civil action, to which no response is required.

## JURISDICTION, VENUE, AND INTRA-DISTRICT ASSIGNMENT

5.      The allegation that this Court has subject matter jurisdiction is not a statement of fact but a conclusion of law to which no response is required. To the extent a response is required, Defendant denies this allegation. Defendant admits that Plaintiffs bring their suit under the Federal Tort Claims Act ("FTCA"), and that the FTCA contains an administrative exhaustion requirement. Defendant admits that Plaintiffs filed administrative claims to which the relevant federal agencies did not respond within six months.

6.      Defendant lacks information sufficient to form a belief about the current residence of Plaintiffs. The remaining allegations are not statements of fact but are conclusions of law to which no answer is required. To the extent an answer is required, Defendant denies these allegations.

7.      Defendant denies that this action arises in Alameda County and is therefore proper for assignment in the San Francisco/Oakland Division of this District.

## PARTIES

8.      Defendant admits that the person believed to be Eduardo I.T. ("Eduardo I.T.") has a minor son, the person believed to be Edwin E.I.I. ("Edwin"), and that Edwin was represented to be 16 years old when he was separated by government officials from his father. Defendant further admits that Eduardo I.T. and Edwin are from Guatemala but lacks information sufficient to form a belief about whether they are indigenous Maya Q'eqchi' or the location of their current residence. Defendant admits that Eduardo I.T. applied for asylum in the United States; that Edwin has Special Immigrant Juvenile ("SIJ") classification and has applied for lawful permanent residence status; and that both Eduardo I.T. and Edwin applied for parole-in-place. Defendant denies that that the Asylum Office has not yet adjudicated Eduardo I.T.'s asylum application. To the extent Plaintiffs are alleging that SIJ classification grants Edwin any lawful status in the United States, Defendant denies this claim.

9.      Defendant admits that the person believed to be Ignacio P.G. ("Ignacio P.G.") has a minor son, the person believed to be Leonel Y.P.G. ("Leonel"), and that they are from Guatemala. Defendant further admits that Leonel was represented to be 6 years old when he was separated by government officials from his father. Defendant lacks information sufficient to form a belief about whether Ignacio P.G. and Leonel are indigenous Maya Mam, or the location of their current residence.

1   Defendant lacks information sufficient to form a belief about the subjective intent of Ignacio P.G. in

2   bringing this lawsuit and the current residence of Ignacio P.G. and his son. Defendant admits that

3   Ignacio P.G. is in removal proceedings and that he applied for asylum in the United States.

4         10.     Defendant admits that the person believed to be Benjamin J.R. ("Benjamin J.R.") has a

5   son, the person believed to be William A.J.M. ("William"), and that they are from Guatemala.

6   Defendant lacks information to form a belief about whether Benjamin J.R. and William are indigenous

7   Maya Mam. Defendant admits that William was represented to be 15 years old when he was separated

8   by government officials from his father. Defendant lacks information sufficient to form a belief about

9   the current residence of Benjamin J.R. and his son. Defendant admits that Benjamin J.R. applied for

10   asylum in the United States and that William has SIJ classification. To the extent Plaintiffs allege that

11   SIJ classification grants William any lawful status in the United States, Defendant denies this claim.

12         11.     These allegations are not statements of fact but conclusions of law to which no response

13   is required. To the extent a response is deemed required, Defendant admits that the United States of

14   America is the appropriate defendant in an action brought under the FTCA.

15         12.     These allegations are not statements of fact but conclusions of law to which no response

16   is required. To the extent a response is deemed required, Defendant lacks information sufficient to form

17   a belief as to whether every federal official referenced in the Complaint was at all relevant times an

18   employee of the United States, working within the scope and course of their employment with the

19   federal agencies listed in paragraph 11 of the Complaint.

20         13.     Defendant admits that employees of U.S. Customs and Border Protection ("CBP")

21   separated noncitizen adults and minors. Defendant further admits that employees of CBP and U.S.

22   Immigration and Customs Enforcement ("ICE") detained individuals at facilities either owned or

23   contracted by CBP and ICE. Defendant lacks information sufficient to form a belief as to the remaining

24   allegations, and on that basis denies them.

25         14.     Defendant admits that the U.S. Department of Health and Human Services ("HHS")

26   Office of Refugee Resettlement ("ORR") has custody and provides care for each Unaccompanied Alien

27   Child ("UAC"), defined by statute as a child who has no lawful immigration status in the United States;

28   has not attained 18 years of age; and, with respect to whom, there is no parent or legal guardian in the

1  United States, or no parent or legal guardian in the United States available to provide care and physical

2  custody, who is referred to ORR. ORR places Unaccompanied Children ("UCs") in the least-restrictive

3  setting through its network of state licensed ORR-funded care providers that ORR maintains cooperative

4  agreements with for housing and services. While in the custody of HHS, the Plaintiffs children were

5  placed with ORR-funded care providers. The remaining allegations are denied.

6       15.    Defendant denies this allegation.

7  ## FACTUAL ALLEGATIONS

8       16.    Defendant denies that it had a "Family Separation Policy." Defendant admits that the

9  Zero-Tolerance Policy was a policy. Defendant denies the rest of this paragraph.

10       17.    These allegations are not statements of fact but conclusions of law to which no response

11  is required.

12       18.    Defendant denies the first sentence of this paragraph and the last sentence of this

13  paragraph. The remaining allegations are not statements of fact but conclusions of law to which no

14  response is required.

15       19.    Defendant admits that Donald Trump became President of the United States in 2017.

16  Defendant admits that the quoted words are contained in the cited news media article purporting to

17  contain tweets from President Trump. Defendant lacks information sufficient to form a belief as to the

18  accuracy of the referenced tweets or any of the remaining allegations, and on that basis denies them.

19       20.    Defendant denies that in early 2017 federal government officials began considering a

20  "new, unprecedented" "family separation initiative" for the purpose of causing asylum seekers "such

21  extreme emotional distress" that they would abandon their asylum claims. Defendant lacks information

22  sufficient to form a belief as to the remaining allegations, and on that basis denies them.

23       21.    Defendant admits the existence of this document and admits the cited quote is included

24  within the 159-page Advisory Committee report. Defendant lacks information sufficient to form a belief

25  as to the truth or accuracy of the cited quote, and on that basis denies the remaining allegations.

26       22.    Paragraph 22 contains Plaintiffs' citation to a media source to which no response is

27  required. To the extent a response is deemed necessary, Defendant lacks information sufficient to form a

28  belief as to these allegations, and on that basis denies them.

23.     Defendant lacks information sufficient to form a belief as to the first sentence of this allegation, and on that basis denies it. The remaining portion of Paragraph 23 contains citations two DOJ Office of the Inspector General ("DOJ OIG") reports to which no response is required. To the extent a response is deemed necessary, Defendant responds that the citations in question speak for themselves, are best evidence of their contents, and should be read in full context.

24.     Paragraph 24 contains a citation to a media report, to which no response is required. To the extent a response is deemed necessary, Defendant responds that the citations in question speak for themselves, are best evidence of their contents, and should be read in full context. Defendant lacks information sufficient to form a belief as to the accuracy of the cited media report or its contents.

25.     Defendant denies that it had a "Family Separation Policy." Defendant admits that on March 6, 2017, John Kelly was the Secretary of Homeland Security. Paragraph 25 contains citations to a congressional staff report and to a media report, to which no response is required. To the extent a response is deemed necessary, Defendant responds that citations in question speak for themselves, are best evidence of their contents, and should be read in full context. Defendant admits that the partial quotation contained in the first sentence of paragraph 25 and the quotation from an email excerpt from an unidentified DHS official, both of which are referenced in this paragraph, are contained in the cited 551-page Majority Staff Report for the Committee of the Judiciary of the U.S. House of Representatives dated October 2020 ("2020 House Report"). Defendant lacks information sufficient to form a belief as to accuracy of either quotation or the referenced email and on that basis denies the allegation. Defendant further admits that the cited March 3, 2017 Reuters news article does include the information as stated in the last sentence of paragraph 25. Defendant lacks information sufficient to form a belief as to accuracy of the information cited in the March 3, 2017 Reuters article and on that basis denies the allegation.

26.     Defendant denies that there was a Family Separation pilot program. Defendant admits that that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector that resulted in the separations of some family units. Defendant denies the remaining allegations.

27.     Defendant denies that there was a Family Separation policy or pilot program. Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector that resulted in the separations of some family units. Defendant admits the 93-page DOJ OIG Report dated

1    January 2021 ("OIG Report") includes the partial quoted statements as alleged in the second sentence of

2    paragraph 27.  Plaintiffs' characterizations of these quotes are not statements of facts for which a

3    response is required. To the extent a response is deemed necessary, Defendant responds that citations in

4    question speak for themselves, are best evidence of their contents, and should be read in full context.

5    Defendant lacks information sufficient to form a belief as to accuracy of information in these quotes or

6    any of the remaining allegations and on that basis denies them.

7        28.    Defendant denies that there was a Family Separation pilot program. Defendant admits

8    that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector that resulted in

9    the separations of some family units. Defendant admits there was some coordination between the United

10   States Attorney's office for the Western District of Texas and immigration officials on the 2017

11   prosecution initiative in the U.S. Border Patrol El Paso sector. To the extent Plaintiffs allege some

12   additional coordination, Defendant lacks information sufficient to form a belief concerning coordination

13   between the United States Attorney's office and immigration officials.

14       29.    Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol

15   El Paso sector that resulted in parents being prosecuted for illegal entry at the United States–Mexico

16   border. Defendant denies that the purpose of this prosecution initiative was to separate "[parents] from

17   their children." Defendant lacks information sufficient to form a belief as to the remaining allegations,

18   and on that basis denies them.

19       30.    Defendant denies the allegation that there was a Family Separation pilot program.

20   Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector.

21   The allegation that immigration officials were exploiting provisions of the TVPRA as improper pretext

22   to "justify seizing long-term custody" of children from their parents is not a statement of fact but

23   conclusion of law to which no response is required. To the extent a response is required, Defendant

24   denies these allegations. Defendant admits that some children were separated from their parents during

25   the 2017 prosecution initiative. Defendant further admits that, as the result of their parent(s) being

26   referred for criminal prosecution, some children were classified as UCs and referred to ORR for

27   placement with one of their ORR-funded care providers. Paragraph 30 also includes citations to statutes,

28

to which no response is required. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

31.     Defendant denies the allegation that there was a Family Separation pilot program. Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector that resulted in some parents being prosecuted for misdemeanor illegal entry and held in the custody of the U.S. Marshals Service. As a result of their parent(s) being referred for criminal prosecution, some children were classified as UCs and referred to ORR for placement with one of their ORR-funded care providers. Paragraph 31 also contains a citation to a 2021 DOJ OIG report, to which no response is required. To the extent a response is deemed necessary, Defendant responds that the citations in question speak for themselves, are best evidence of their contents, and should be read in full context. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

32.     Defendant denies the allegation that there was a Family Separation pilot program. Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector that resulted in the separations of some family units. Defendant further admits that, as a result of their parent(s) being referred for criminal prosecution, some children were classified as UCs and referred to ORR for placement with one of their ORR-funded care providers. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

33.     Defendant denies the allegation that there was a Family Separation pilot program. Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector that resulted in the separations of some family units. Paragraph 33 includes a citation to a 2021 DOJ OIG report, to which no response is required. To the extent a response is deemed necessary, Defendant responds that citations in question speak for themselves, are best evidence of their contents, and should be read in full context. Defendant admits that the partial quotations in this paragraph are contained in the cited 93-page DOJ OIG Report. Defendant lacks information sufficient to form a belief as to accuracy of these quotations or the information contained therein or the remaining allegations, and on that basis denies them.

34.     Defendant denies the allegation that there was a Family Separation pilot program. Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector that resulted in the separations of some family units. Defendant lacks information sufficient to form a belief as to the subjective knowledge of unidentified high-ranking DOJ officials concerning the "emotional damage" of separation. Paragraph 34 refers to information "documented by the DOJ's Inspector General," without specifically referencing a specific report or source of the information. To the extent this intended reference is to the DOJ OIG report previously cited in footnote 21 of the Complaint, then Defendant notes that this is a citation to an OIG report to which no response is necessary. Should a response be deemed required, Defendant admits that the 93-page DOJ OIG Report references briefings to high-ranking policymakers about the pilot program. Defendant lacks information sufficient to form a belief as to the existence or contents of these briefings or the truth of the information alleged in paragraph 34 that such briefings contained, and on that basis denies the allegation.

35.     Defendant denies the allegation that there was a Family Separation pilot program. Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector that resulted in the separations of some family units. Paragraph 35 contains citations to a congressional report, to which no response is required. To the extent a response is deemed necessary, Defendant responds that citations in question speak for themselves, are best evidence of their contents, and should be read in full context. Defendant admits that the 2020 House Report cited by this paragraph contains information detailing complaints to the DHS Office for Civil Rights and Civil Liberties (CRCL) concerning family separations that occurred prior to May 2018. Defendant lacks information sufficient to form a belief as to accuracy of this information. Plaintiffs' characterizations of this information are not statements of facts for which a response is required.

36.     Defendant denies the allegation that there was a Family Separation pilot program. Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector that resulted in the separations of some family units, but denies that it was terminated in 2018. Paragraph 36 contains a citation to a DOJ OIG report, to which no response is required. To the extent a response is deemed necessary, Defendant responds that the citation in question speaks for itself, is the best evidence of its contents, and should be read in full context. Defendant admits that the DOJ OIG Report cited in

this paragraph contains the purported partial quotation from Acting U.S. Attorney Bash. Defendant lacks information sufficient to form a belief as to accuracy of this quotation or the information contained within. Plaintiffs' characterizations of this quotation are not statements of facts for which a response is required.

37.    Defendant denies that it had a "Family Separation Policy." Defendant admits that Commander Jonathan White was a career officer in the U.S. Public Health Service Commissioned Corps. Paragraph 37 contains a citation to congressional hearing transcript, to which no response is required. To the extent a response is required, Defendant admits that the partial quotation cited in this paragraph appears in the preliminary, unedited transcript of proceedings for the February 7, 2019 House of Representatives, Subcommittee on Oversight and Investigations, Committee on Energy and Commerce. Defendant lacks information sufficient to form a belief as to the accuracy of the information contained within the quote. Defendant admits that Commander White testified before Congress that he raised concerns regarding the possibility of separating children from their parents in early 2017 to senior ORR leadership.

38.    Defendant denies that it had a "Family Separation Policy." Paragraph 38 contains a citation to congressional hearing transcript, to which no response is required. To the extent a response is required, Defendant admits that the quotation referenced in this paragraph appears in the cited preliminary, unedited transcript of Congressional testimony of Dr. Julie Linton, a practicing pediatrician in Greenville, South Carolina and Co-Chair of the American Academy of Pediatrics Immigrant Health Special Interest Group, on February 7, 2019 before the House of Representatives, Subcommittee on Oversight and Investigations, Committee on Energy and Commerce. Defendant lacks information sufficient to form a belief as to the accuracy of the quotation or the information referenced therein.

39.    Defendant denies the allegation that there was a Family Separation pilot program. Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El Paso sector that resulted in the separations of some family units. Defendant lacks information sufficient to form a belief as to the subjective knowledge of unidentified high-ranking DOJ officials and as to the subjective suffering of migrants that were separated. Defendant denies the specific allegation that the emotional

1  pain and suffering of migrants is what motivated the 2017 Border Patrol prosecution initiative or the

2  2018 DOJ Zero-Tolerance policy.

3        40.    Defendant denies the allegation that there was a Family Separation pilot program or

4  policy. Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El

5  Paso sector that terminated in November 2017 and resulted in the separations of some family units.

6  Defendant admits that, for a limited period of time in April, May and June 2018, the United States

7  implemented a separate DOJ Zero-Tolerance policy that resulted in the separation of some families at

8  the United States–Mexico border. Defendant denies the remaining allegations.

9        41.    Paragraph 41 cites a media article, to which no response is required. To the extent a

10  response is deemed necessary, Defendant responds that citations in question speak for themselves, are

11  best evidence of their contents, and should be read in full context. Defendant lacks information

12  sufficient to form a belief to the accuracy of the article or as to these allegations, and on that basis denies

13  them.

14        42.    Paragraph 42 cites an online article, to which no response is required. To the extent a

15  response is deemed necessary, Defendant responds that citations in question speak for themselves, are

16  best evidence of their contents, and should be read in full context. Defendant admits that the undated

17  American Oversight online news article referenced in this paragraph reports that on December 11, 2017

18  ICE Chief of Staff Thomas Blank wrote that he had been asked to take the lead on drafting a decision

19  memo "'on separating Family Units and on vetting sponsors' for minors in the Unaccompanied Alien

20  Children (UAC) program." Defendant lacks information sufficient to form a belief as to the accuracy of

21  this information or the purported writing from Thomas Blank on or around this date, and on that basis

22  denies these allegations.

23        43.    Paragraph 43 cites an online article, to which no response is required. To the extent a

24  response is deemed necessary, Defendant responds that citations in question speak for themselves, are

25  best evidence of their contents, and should be read in full context. Defendant admits that the online news

26  article referenced in this paragraph states that "Press reports later indicate that a draft policy memo dated

27  Dec. 16, 2017, titled 'Policy Options to Respond to Border Surge of Illegal Immigration,' is 'circulated

28  between high level officials at DHS and the Justice Department.'" Defendant lacks information

1   sufficient to form a belief as to the accuracy of this quotation. Defendant further admits that the

2   quotations in this paragraph are contained in the purported policy memo cited in this paragraph.

3   Defendant lacks information sufficient to form a belief as to the authenticity of this redlined policy

4   memo, and on that basis denies these allegations.

5      44. Defendant denies the allegation that there was a Family Separation pilot program or

6   policy. Defendant admits that in 2017 there was a prosecution initiative in the U.S. Border Patrol El

7   Paso sector that resulted in the separations of some family units. Defendant lacks information sufficient

8   to form a belief as to the subjective suffering of migrants separated during the 2017 prosecution

9   initiative. Defendant admits that on April 6, 2018, the Attorney General issued a memorandum for

10   federal prosecutors along the Southwest border regarding "zero-tolerance" for offenses under 8 U.S.C.

11   § 1325(a). The DOJ Zero-Tolerance memorandum speaks for itself in terms of the provisions it outlines

12   for the underlying DOJ Zero-Tolerance policy. Plaintiffs' characterizations of the DOJ Zero-Tolerance

13   policy laid out in this memorandum are not statements of facts for which a response is required.

14      45. Plaintiffs' characterizations of the Zero-Tolerance policy laid out in the DOJ's April 6,

15   2018 Zero-Tolerance memorandum are not statements of facts for which a response is required. The

16   DOJ Zero-Tolerance memorandum speaks for itself in terms of the provisions it outlines for the

17   underlying DOJ Zero-Tolerance policy. To the extent a further response is required, Defendant denies

18   this allegation.

19      46. Paragraph 46 contains a quotation from the 93-page DOJ OIG Report, to which no

20   response is required. To the extent a response is deemed required, Defendant lacks information

21   sufficient to form a belief as to the accuracy of the quotation, and on that basis denies these allegations.

22   Plaintiffs' characterizations of this purported quotation are not statements of facts but conclusions of law

23   for which no response is required.

24      47. Paragraph 47 contains a quotation from the 93-page DOJ OIG Report, to which no

25   response is required. To the extent a response is deemed required, Defendant lacks information

26   sufficient to form a belief as to the accuracy of the quotation, and on that basis denies these allegations.

27      48. Paragraph 48 contains a partial quotation from a news article purporting to transcribe a

28   colloquy between Attorney General Sessions and a Fox News host, Laura Ingraham, to which no

1   response is required. To the extent a response is deemed required, Defendant admits that the complete

2   colloquy referenced in the news article is: "'Fundamentally, we are enforcing the law,' Sessions replied.

3   'If you break into the country …' 'But is it a deterrent, sir?' Ingraham interjected. 'Are you considering

4   it a deterrent?' 'I see that the fact that no one was being prosecuted for this was a factor in a fivefold

5   increase in four years in this kind of illegal immigration,' Sessions said. 'So, yes, hopefully people will

6   get the message and come through the border at the port of entry and not break across the border

7   unlawfully.'" Defendant lacks information sufficient to form a belief as to the accuracy of the quotations

8   or of the colloquy between Sessions and the Fox News host. To the extent a further response is required,

9   Defendant denies this allegation.

10          49.     Paragraph 49 contains a quotation from a transcript of a May 11, 2018 interview of John

11   Kelly by NPR correspondent John Burnett, to which no response is required. To the extent a response is

12   deemed required, Defendant lacks information sufficient to form a belief as to the accuracy of the

13   quotation or of the colloquy between Kelly and Burnett, and on that basis denies these allegations.

14          50.     Paragraph 50 contains a quotation from a news article purporting to transcribe a

15   conference call between reporters and HHS's Acting Assistant Secretary, Steven Wagner, to which no

16   response is required. To the extent a response is deemed required, Defendant lacks information

17   sufficient to form a belief as to the accuracy of the quotation or to the content of the conference call

18   involving Assistant Secretary Wagner and reporters, and on that basis denies these allegations.

19          51.     Defendant denies the allegations in paragraph 51.

20          52.     Defendant denies that it had a "Family Separation Policy." Defendant admits that, for a

21   limited period of time from April to June 2018, the United States implemented a DOJ-initiated Zero-

22   Tolerance policy that resulted in the separation of some families at the United States–Mexico border.

23   Defendant further admits that Plaintiff families were separated. Defendant denies the allegation that the

24   Zero-Tolerance policy was a pretext to justify separation of a child from the child's parent. Defendant

25   denies that Plaintiff Parents were not prosecuted or referred for prosecution. Paragraph 52 contains a

26   citation to the Nov. 25, 2019 DHS OIG Report, to which no response is required. To the extent a

27   response is deemed required, Defendant lacks information sufficient to form a belief as to the accuracy

28   of this quotation or the remaining allegations, and on that basis denies them.

53.     Paragraph 53 contains a quotation from Secretary of Homeland Security Kirstjen Nielsen from her remarks at a June 18, 2018 White House Press Briefing on the illegal immigration crisis at the southern border, to which no response is required. To the extent a response is deemed required, Defendant lacks information sufficient to form a belief as to the accuracy of the information contained therein. Defendant denies the accuracy of the partial quotation from Attorney General Sessions referenced in this paragraph. The correct quotation that is contained in Sessions' interview with Fox News host Laura Ingraham on The Ingraham Angle on June 19, 2018 is: "We want to end this process of children being brought across dangerous territory, placing those children at risk. If they want to claim asylum, let them go through the port of entry. That's the way it should be done." Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

54.     Paragraph 54 contains information from the May 29, 2020 DHS OIG Report, to which no response is required. To the extent a response is deemed required, Defendant lacks information sufficient to form a belief as to the accuracy of this information.

55.     Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

56.     Defendant denies that it had a "Family Separation" pilot program or policy. Defendant admits it had a DOJ-initiated Zero-Tolerance policy, but denies the purpose(s) were as alleged in this paragraph. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

57.     Defendant denies that it had a "Family Separation Policy." Defendant admits that there was litigation by the federal court in *Ms. L.* concerning the Zero-Tolerance policy and that on June 6, 2018 the federal court in that case granted Defendants' motion to dismiss Plaintiffs' claims under the APA and the Asylum Statute, and denied Defendants' motion to dismiss Plaintiffs' due process claim. To the extent paragraph 57 quotes the June 6, 2018 *Ms. L.* decision, that decision speaks for itself.

58.     Defendant denies that it had a "Family Separation Policy." Defendant admits that President Trump issued an Executive Order on June 20, 2018, entitled "Affording Congress an Opportunity to Address Family Separation." Paragraph 58 contains a quotation from Section 3 of aforementioned Executive Order, to which no response is required. Paragraph 58 also contains quotes

attributed to President Trump from (1) an April 28, 2019 *Washington Post* news article purporting to transcribe a colloquy between Trump and a Fox News host, Maria Bartiromo, and (2) an October 23, 2018 Reuters online article purporting to describe comments made by President Trump to reporters at the White House, to which no response is required. To the extent any response is deemed required, Defendant lacks information sufficient to form a belief as to the accuracy of these quotes or of the colloquy between Trump and the Fox News host, or Trump and the White House reporters. Plaintiffs' characterizations of these purported quotes are not statements of facts for which a response is required.

59. Defendant denies that it had a "Family Separation Policy." Defendant admits that on June 26, 2018, the federal court in *Ms. L.* granted the Plaintiffs' motion for a class-wide preliminary injunction. Defendant admits that the *Ms. L.* court held: "This Order does not implicate the Government's discretionary authority to enforce immigration or other criminal laws, including its decisions to release or detain class members. Rather, the Order addresses only the circumstances under which the Government may separate class members from their children, as well as the reunification of class members who are returned to immigration custody upon completion of any criminal proceedings." To the extent this paragraph quotes from the *Ms. L.* decisions, those decisions speak for themselves. Plaintiffs' characterizations thereof are not statements of facts for which a response is required.

60. Defendant denies that it had a "Family Separation Policy." Defendant admits that, for a limited period of time in from April to June 2018, the United States implemented a DOJ-initiated Zero-Tolerance policy that resulted in the separation of some families at the United States–Mexico border. Defendant further admits that Plaintiff families were separated. Paragraph 60 contains citations to statistics from a Status Report, to which no response is necessary. Defendant denies that the goal of the Zero-Tolerance policy was to separate families. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

61. Defendant denies that it had a "Family Separation Policy." Paragraph 61 contains a quotation cited in the *Ms. L.* opinion, to which no response is required. Insofar as the quotation is intended to be an allegation, Defendant lacks information sufficient to form a belief. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

62.     Defendant denies that it had a "Family Separation Policy" or pilot program. Paragraph 62 contains a partial quotation from the February 2020 Physicians for Human Rights document cited, to which no response is required. Plaintiffs' characterizations of these quotes are not statements of facts for which a response is required. To the extent any response is deemed necessary, Defendant lacks information sufficient to form a belief as to the information contained in these partial quotes.

63.     Defendant denies that it had a "Family Separation Policy." Paragraph 63 contains a quotation from the cited judicial opinion attributed to an Assistant Professor of psychology at Yale University, to which no response is required. Paragraph 63 also contains a quotation from the April 2022 Physicians for Human Rights document cited, to which no response is required. Plaintiffs' characterizations of these quotes are not statements of facts for which a response is required. To the extent any response is deemed necessary, Defendant lacks information sufficient to form a belief as to the allegations.

64.     Paragraph 64 contains a quotation that appears in the Congressional testimony of Dr. Julie Linton, a practicing pediatrician in Greenville, South Carolina and Co-Chair of the American Academy of Pediatrics Immigrant Health Special Interest Group, on February 7, 2019 before the House of Representatives, Subcommittee on Oversight and Investigations, Committee on Energy and Commerce, to which no response is required. Plaintiffs' characterizations of these quotes are not statements of facts for which a response is required. To the extent any response is deemed necessary, Defendant lacks information sufficient to form a belief as to the accuracy of the quotation or the information referenced therein.

65.     The first sentence of Paragraph 65 contains a quotation from an Amnesty International report attributed to the American Academy of Pediatrics, to which no response is required. To the extent any response is deemed necessary, Defendant lacks information sufficient to form a belief as to the accuracy of the quotation or the information referenced therein. Paragraph 65 also contains a quotation from an unedited transcript of proceedings for the February 7, 2019 House of Representatives, Subcommittee on Oversight and Investigations, Committee on Energy and Commerce attributed to Commander White, to which no response is required. To the extent a response is deemed required, Defendant lacks information sufficient to form a belief as to the accuracy of the quotation or the

information referenced therein. The judicial opinion cited in this paragraph speaks for itself. Plaintiffs' characterization thereof is not a statement of fact for which a response is required. The last sentence of paragraph 65 is a statement that appears in the preliminary, unedited transcript of Congressional testimony of Jack Shonkoff, a Professor of Child Health and Development at the Harvard Chan School of Public Health and the Graduate School of Education, on February 7, 2019 before the House of Representatives, Subcommittee on Oversight and Investigations, Committee on Energy and Commerce, to which no response is required. To the extent any response is deemed necessary, Defendant lacks information sufficient to form a belief as to the accuracy of the quotation or the information referenced therein.

66.     Defendant denies the allegation that there was a Family Separation policy. This paragraph contains Plaintiffs' characterization of this civil action, to which no response is required. To the extent a response is required, Defendant admits there was a DOJ-initiated Zero-Tolerance Policy. Defendant admits that all three families in this case were separated in order to pursue prosecutions when the Plaintiff parent was deemed amenable for prosecution for illegal entry in violation of 8 U.S.C. § 1325, due to their entry into the United States without permission by crossing from Mexico into the United States at or near San Luis, Arizona in May and early June 2018. Defendant further admits that the Plaintiff parents were detained in government and government-contracted facilities while the Plaintiff minors were referred to ORR as UCs and placed with ORR-funded care providers. Defendant denies that there was a "total lack of information" about any of the processes to which they were subjected. Defendant further denies that all but one Plaintiff spoke little or no Spanish. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

67.     Defendant admits that Eduardo I.T. and Edwin are from Guatemala and that Edwin was 16-years old in 2018. Defendant lacks information sufficient to form a belief as to the truth of the remaining allegations, and on that basis denies them.

68.     Defendant admits that Eduardo I.T. and Edwin entered the United States between the ports of entry at or near San Luis, Arizona on or about May 9, 2018. Defendant further admits that Eduardo I.T. and Edwin were taken into custody by U.S. Border Patrol agents and transported to the Yuma, Arizona Border Patrol Station. To the extent the reference to the Spanish word "*hieleras*" is

1   intended to be an allegation that the temperature of CBP facilities were impermissibly cold, Defendant

2   denies this allegation. Defendant lacks sufficient information to form a belief as to the truth of the

3   remaining allegations of the paragraph, and on that basis denies them.

4         69.    To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation

5   that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation.

6   Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations, and

7   on that basis denies them.

8         70.    Defendant admits that CBP separated Eduardo I.T. and Edwin. Defendant lacks

9   information sufficient to form a belief as to the truth of the remaining allegations, and on that basis

10  denies them.

11        71.    Defendant denies that the time between approximately May 9, 2018 to August 1, 2018 is

12  "nearly 15 weeks." Defendant lacks sufficient information to form a belief as to the truth of the

13  remaining allegations, and on that basis denies them.

14        72.    Defendant denies Eduardo I.T.'s allegations regarding conditions in the Border Patrol

15  station. Defendant lacks sufficient information to form a belief as to the truth of the remaining

16  allegations, and on that basis denies them.

17        73.    To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation

18  that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation.

19  Defendant further denies Eduardo I.T.'s allegation that he was not provided with potable water.

20  Defendant admits that the bathroom in the group holding cells did not have a shower or tub. Defendant

21  lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis

22  denies them.

23        74.    To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation

24  that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation.

25  Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations, and

26  on that basis denies them.

27        75.    To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation

28  that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation.

1    Defendant denies the allegations that the cell in which Edwin was detained lacked a sink and access to

2    drinking water. Defendant lacks sufficient information to form a belief as to the truth of the remaining

3    allegations, and on that basis denies them.

4        76.    Defendant lacks sufficient information to form a belief as to the truth of the allegations,

5    and on that basis denies them.

6        77.    Defendant admits that approximately two days after Edwin was apprehended by Border

7    Patrol agents, he was transferred to San Antonio, Texas. Defendant lacks sufficient information to form

8    a belief as to the truth of the remaining allegations, and on that basis denies them.

9        78.    Defendant lacks sufficient information to form a belief as to the truth of the allegations in

10   this paragraph, and on that basis denies them.

11       79.    Defendant admits that Edwin's UC Case File reflects that Edwin arrived at St. PJ's

12   Children's Home, a state-licensed, ORR-funded care provider, in San Antonio, Texas, on May 13, 2018

13   at 5:45 p.m. and his Initial Intakes Assessment took place on May 14, 2018 at 9:35 a.m.  The Initial

14   Intakes Assessment indicates that Edwin requested "a phone call." Defendant lacks sufficient

15   information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

16       80.    Defendant admits that Edwin's UC Case File reflects that it was documented in his Initial

17   Intakes Assessment that Edwin had a cough, runny nose and body aches and reported a fever the day

18   before. The case file reflects that he underwent a medical evaluation on May 14, 2018, presenting with

19   1-day history of frequent, non-productive cough, headache, chills, sore throat, nasal congestion and

20   rhinorrhea and was diagnosed with a respiratory infection and prescribed over the counter Dayquil as

21   needed for no more than three days. It was also noted in Edwin's UC Case file that he had been exposed

22   to Varicella on May 10, 2018 but did not contract the chicken pox and was cleared. Edwin's UC Case

23   File reflects that on May 25, 2018, Edwin presented for medical evaluation with complaints of a rash

24   and was diagnosed with scabies for which he was prescribed Permethrin ointment and Benadryl.

25   Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations, and

26   on that basis denies them.

27       81.    Defendant admits that Edwin's UC Case File reflects that on May 25, 2018, Edwin

28   presented for medical evaluation with complaints of a rash and was diagnosed with scabies for which he

1    was prescribed Permethrin ointment and Benadryl. Defendant lacks sufficient information to form a

2    belief as to the truth of the remaining allegations, and on that basis denies them.

3        82.    Defendant admits that Edwin's UC Case File reflects that in his Daily Progress Notes that

4    he was regularly reported as doing well during the day with a cooperative and positive disposition and

5    was sleeping well at night. Edwin's UC Case File reflects that on June 15, 2018, Edwin's case manager

6    noted that he was feeling unwell in his placement that day due to worries and concerns about his father's

7    wellbeing and was disappointed that neither his aunt nor cousin was offering to sponsor him, which was

8    causing him to be upset and lose his appetite. Defendant lacks sufficient information to form a belief as

9    to the truth of the remaining allegations, and on that basis denies them.

10       83.    Defendant admits that Eduardo I.T. was detained for one week at the Yuma Border Patrol

11   Station before being transferred to the Wellton Border Patrol Station, both located in the Yuma Sector in

12   Arizona. Defendant lacks sufficient information to form a belief as to the truth of the remaining

13   allegations, and on that basis denies them.

14       84.    Defendant denies that Eduardo I.T. was transferred to or detained in San Diego.

15   To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation that the

16   temperature of CBP facilities were impermissibly cold, Defendant denies this allegation. Defendant

17   lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis

18   denies them.

19       85.    Defendant denies that Eduardo I.T. was transferred to or detained in San Diego.

20   Defendant denies that Eduardo I.T. was not given the opportunity to bathe and that the facility was

21   impermissibly cold. Defendant lacks sufficient information to form a belief as to the truth of the

22   remaining allegations, and on that basis denies them.

23       86.    Defendant denies that Eduardo I.T. was transferred to or detained in San Diego.

24   Defendant further denies Eduardo I.T.'s allegation that he was not provided with clean water. Defendant

25   denies that Eduardo I.T. was not given the opportunity to bathe. Defendant lacks sufficient information

26   to form a belief as to the truth of the remaining allegations, and on that basis denies them.

27       87.    Defendant denies that Eduardo I.T. was transferred to or detained in San Diego.

28   Defendant admits that Eduardo I.T. was transferred back to the Yuma Border Patrol Station for one day

1   and then transferred into ICE custody. Defendant denies that Eduardo I.T. was not given the opportunity

2   to bathe. Defendant lacks sufficient information to form a belief as to the truth of the remaining

3   allegations, and on that basis denies them.

4          88.    Defendant lacks sufficient information to form a belief as to the truth of the allegations in

5   this paragraph, and on that basis denies them

6          89.    Defendant admits that Eduardo I.T. was transferred to ICE custody, first to the Florence

7   staging facility in Florence, Arizona on May 22, 2018, and then to the Florence Service Processing

8   Center on May 24, 2018. Defendant admits that Eduardo I.T. was permitted to wash himself and

9   received fresh clothes when he came into ICE's custody. Defendant lacks information sufficient to form

10  a belief as to the remaining allegations, and on that basis denies them.

11         90.    Defendant admits that while he was in ICE custody in Florence, Arizona, Eduardo I.T.

12  inquired about his son, Edwin, and expressed interest in being reunified with Edwin. Defendant admits

13  that Eduardo I.T. was transferred to the Eloy Detention Center on June 20, 2018. Defendant lacks

14  information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

15         91.    Defendant admits that during his time in ICE custody, immigration officials spoke to

16  Eduardo I.T. in Spanish. Defendant further admits that at least one Government document states that

17  Eduardo I.T. was a monolingual Spanish-speaker and could read and write in that language. Defendant

18  lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies

19  them.

20         92.    Defendant admits that after Eduardo I.T. was transferred to the Eloy Federal Contract

21  Facility, he was able to speak with his son Edwin on the phone. Edwin's UC Case File reflects that on

22  June 19, 2018 at 12:00 pm Edwin spoke with his father by phone for fifteen minutes. Defendant lacks

23  information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

24         93.    Defendant admits that on June 19, 2018, Eduardo I.T. and Edwin spoke by telephone to

25  each other from approximately 12:00 pm to 12:15 p.m. while Eduardo I.T. was in custody at the Eloy

26  Federal Contract Facility and Edwin was placed at St. PJ's Children's Home. Defendant lacks

27  information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

28         94.    Defendant admits that Edwin's UC Case File reflects that, after the June 19, 2018 call,

1   Edwin had phone calls or video chats with Eduardo I.T. on the following dates: June 28, 2018 from

2   11:00 a.m. to 11:10 a.m.; July 5, 2018 from 11:25 a.m. to 11:45 a.m.; July 10, 2018 (video chat) from

3   1:30 p.m. to 2:00 p.m.; and July 19, 2018 from 11:20 a.m. to 11:41 a.m. Defendant lacks information

4   sufficient to form a belief as to the remaining allegations, and on that basis denies them.

5      95. Defendant admits that Edwin's UC Case File reflects that he was referred to RAICES for

6   legal representation and had several questions for the case manager concerning long term foster care.

7   The case manager met with Edwin and addressed his questions. Defendant avers that it was noted that

8   Edwin was grateful that he might be able to remain in the United States with legal relief and planned to

9   inform his father on their next call. Defendant lacks information sufficient to form a belief as to the

10   remaining allegations, and on that basis denies them.

11      96. Defendant denies that it had a "Family Separation Policy." Defendant admits that on June

12   26, 2018, the federal court in *Ms. L.* granted the Plaintiffs' motion for a class-wide preliminary

13   injunction. Defendant admits that the *Ms. L.* court held: "This Order does not implicate the

14   Government's discretionary authority to enforce immigration or other criminal laws, including its

15   decisions to release or detain class members. Rather, the Order addresses only the circumstances under

16   which the Government may separate class members from their children, as well as the reunification of

17   class members who are returned to immigration custody upon completion of any criminal proceedings."

18   The *Ms. L.* decision speaks for itself. Plaintiffs' allegations characterizing the *Ms. L.* decision are not

19   statements of fact for which a response is required. To the extent a response is required, Defendant

20   denies Plaintiffs' allegations characterizing the *Ms. L.* decision. Defendant admits that Edwin was

21   discharged from St. PJ's Children's Home on approximately July 23, 2018 to Southwest Key Programs

22   transportation services for transfer from St. PJ's Children's Home, in San Antonio, TX to BCFS

23   Tornillo, in Tornillo, TX, to be reunified with Eduardo I.T. Defendant lacks information sufficient to

24   form a belief as to the remaining allegations in this paragraph, and on that basis denies them.

25      97. Defendant lacks sufficient knowledge or information to form a belief as to the truth of

26   these allegations and on that basis denies them.

27      98. Defendant admits that on July 26, 2018, Eduardo I.T. was transferred to Karnes County

28   Immigration Processing Center. Defendant further admits that on August 1, 2018, Eduardo was reunited

with Edwin at Karnes County Immigration Processing Center. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

99.     Defendant admits that on July 26, 2018, Eduardo I.T. and Edwin were transferred to Karnes County Residential Center. Defendant further admits that Eduardo I.T. had a credible fear interview conducted by an asylum officer from U.S. Citizenship and Immigration Services on August 9, 2018. Defendant denies that Eduardo I.T. had multiple credible fear interviews between August 8, 2018 and August 14, 2018. Defendant admits that a Q'eqchi' interpreter was provided for the credible fear interview. Defendant lacks sufficient information to admit or deny the allegation that Eduardo I.T. did not understand the interpreter provided during the credible fear interview. Defendant admits that Eduardo I.T. was provided forms to sign after the interview, including a form declining Immigration Judge review of the credible fear determination. Defendant lacks sufficient information to affirm or deny the allegation that Eduardo I.T. did not understand the contents of the forms. Defendant denies that Eduardo I.T. was "cajoled" into signing any forms.

100.    Defendant admits that on August 18, 2018, Eduardo I.T. and Edwin were released from custody. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

101.    Defendant admits that government records do not indicate as of the date of this filing that either Eduardo I.T. or Edwin were ever charged with or convicted of a crime in the United States.

102.    Defendant admits that ICE was aware of Eduardo I.T.'s negative credible fear finding. Defendant denies Plaintiff's characterization that ICE officials intimidated and threatened him. The cases cited therein speak for themselves. Defendant denies that Eduardo I.T.'s asylum application remains pending. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

103.    Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

104.    Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

105.    Defendant admits that Ignacio P.G. and Leonel Y.P.G. are from Guatemala and that

1   Leonel was six years old when they entered the United States without permission. Defendant lacks

2   information sufficient to form a belief as to the truth of the remaining allegations, and on that basis

3   denies them.

4      106. Defendant admits that Ignacio P.G. and Leonel entered the United States between ports

5   of entry at or near San Luis, Arizona, but denies that Ignacio P.G. and Leonel entered the United States

6   on the morning of May 18, 2018. Defendant admits that Ignacio P.G. and Leonel were encountered by

7   U.S. Border Patrol agents. Defendant denies that Border Patrol agents made Ignacio P.G. sign

8   documents. Defendant lacks sufficient information to form a belief as to the truth of the remaining

9   allegations of the paragraph, and on that basis denies them.

10      107. Defendant admits that Ignacio P.G. and Leonel were driven to Border Patrol's Yuma

11   Station in Arizona. Defendant lacks information sufficient to form a belief as to the remainder of the

12   allegations in this paragraph, and on that basis denies them.

13      108. To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation

14   that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation.

15   Defendant admits that Border Patrol agents photographed Ignacio P.G. and Leonel, and that Ignacio

16   P.G. was given papers to sign. Defendant lacks information sufficient to form a belief as to the

17   remaining allegations, and on that basis denies them.

18      109. Defendant admits that CBP separated Ignacio P.G. and Leonel. Defendant lacks

19   information sufficient to form a belief as to the truth of the remaining allegations, and on that basis

20   denies them.

21      110. Defendant admits that Ignacio P.G. spoke on behalf of Leonel to U.S. Border Patrol

22   agents and stated that Leonel spoke the Mam language. Defendant denies that the conditions of Ignacio

23   P.G. and Leonel's confinement were "abysmal." Defendant lacks information sufficient to form a belief

24   as to the truth of that statement or the remaining allegations, and on that basis denies them.

25      111. Defendant admits that Ignacio P.G. told Border Patrol agents that Leonel only spoke

26   Mam. Defendant lacks information sufficient to form a belief as to the truth of the remaining allegations,

27   and on that basis denies them.

28      112. Defendant admits that CBP separated Ignacio P.G. and Leonel. Defendant lacks

1   information sufficient to form a belief as to the truth of the remaining allegations, and on that basis

2   denies them.

3       113.    To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation

4   that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation.

5   Defendant further denies that Ignacio P.G. was held at Yuma for a week after his apprehension before

6   being transferred. Defendant lacks information sufficient to form a belief as to the truth of the remaining

7   allegations, and on that basis denies them.

8       114.    To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation

9   that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation.

10  Defendant further denies that Ignacio P.G. was not provided with potable water. Defendant lacks

11  information sufficient to form a belief as to the truth of the remaining allegations, and on that basis

12  denies them.

13      115.    Defendant lacks information sufficient to form a belief as to these allegations, and on that

14  basis denies them.

15      116.    Defendant admits that Border Patrol transferred Ignacio P.G. to ICE in Yuma, Arizona.

16  Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis

17  denies them.

18      117.    Defendant admits that Ignacio P.G. was taken into ICE custody at the Otero County

19  Processing Center on June 3, 2018. Defendant further admits that Otero County Processing Center was

20  an ICE contractor facility at this time. Defendant denies that facility staff at Otero did not clean the

21  bathrooms and forced those in custody to clean the bathrooms themselves. Defendant further denies that

22  Ignacio P.G. did not receive enough to eat during his time in detention. Defendant lacks information

23  sufficient to form a belief as to the remaining allegations, and on that basis denies them.

24      118.    Defendant admits that Ignacio P.G. was in ICE custody from approximately June 2, 2018

25  to July 19, 2018. Defendant denies the characterization that ICE officials were not available for

26  questions regarding Ignacio P.G.'s son Leonel, and that ICE officials did not give basic information to

27  those within its custody. Defendant avers that Ignacio P.G. was able to request communication with

28  Leonel and was able to call Leonel while he was in ICE custody. Defendant lacks information sufficient

to form a belief as to the remaining allegations, and on that basis denies them.

119.    Defendant admits that Leonel's UC Case File reflects that Ignacio and Leonel spoke by telephone on June 30, 2018. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

120.    Defendant admits that Leonel's UC Case File reflects that Ignacio and Leonel spoke by telephone weekly. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

121.    Defendant admits that Leonel's UC Case File reflects that Leonel was in ORR custody and placed at BCFS Health and Human Services – Harlingen f/k/a Baptist Christian and Family Services (BCFS), a state-licensed, ORR-funded care provider, in Harlingen, Texas, from approximately May 29, 2018 to July 19, 2018. Leonel's UC Case File reflects that Mam interpreter services were made available to Leonel. Leonel's Case File reflects that Leonel was a calm and happy child, who enjoyed drawing, playing with cars and other children, and did not have any concerns with eating, sleeping or nightmares. To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

122.    Defendant admits that on July 19, 2018, Ignacio P.G. was released from ICE custody and was reunited with Leonel. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

123.    Defendant admits that Leonel was never charged with a crime, but denies the allegation that Ignacio P.G. was never charged with a crime. Defendant avers that, on or about May 29, 2018, Ignacio P.G. was charged with illegal entry in violation of 8 U.S.C. § 1325(a)(1), pled guilty to the same on or about June 1, 2018, and was sentenced to time served.

124.    To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation. Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

125.    Defendant denies that Leonel was in "detention" while placed at BCFS. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

126.    Defendant admits that Benjamin J.R. and William A.J.M. are from Guatemala and that William was 15-years old in 2018. Defendant avers that Benjamin J.R. told the U.S. Border Patrol that he speaks Spanish and does not speak any other dialects. Defendant avers that William told U.S. Border Patrol that Spanish was his native language. Defendant lacks information sufficient to form a belief as to the truth of the remaining allegations, and on that basis denies them.

127.    Defendant admits that Benjamin J.R. and William were encountered by Border Patrol agents between ports of entry at or near San Luis, Arizona on or about June 2, 2018. Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations of the paragraph, and on that basis denies them.

128.    Defendant admits that Border Patrol brought Benjamin J.R. and William to the Yuma Border Patrol Station for processing. To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation. Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations of the paragraph, and on that basis denies them.

129.    Defendant denies Benjamin J.R. and William Border's allegations that Patrol agents did not offer them food or water. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

130.    Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

131.    Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

132.    Defendant admits that Benjamin J.R. told U.S. Border Patrol that he speaks Spanish and does not speak any other dialect. Defendant further admits that that William told U.S. Border Patrol agents that his native language is Spanish. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

133.    Defendant admits that CBP separated Benjamin J.R. from William. Defendant lacks

1    information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and

2    on that basis denies them.

3        134.    Defendant lacks sufficient information to form a belief as to the truth of the allegations in

4    this paragraph, and on that basis denies them.

5        135.    Defendant lacks information sufficient to form a belief as to these allegations, and on that

6    basis denies them.

7        136.    Defendant denies that Benjamin J.R. was not given food or water. Defendant denies

8    Benjamin J.R.'s allegations regarding conditions in the Border Patrol station. Defendant lacks

9    information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

10       137.    Defendant admits that Benjamin J.R. was detained at Yuma Border Patrol Station for

11   several days. Defendant lacks sufficient information to form a belief as to the truth of the remaining

12   allegations in this paragraph, and on that basis denies them.

13       138.    Defendant denies that William was never given anything to drink and only given instant

14   soup noodles to eat. Defendant lacks information sufficient to form a belief as to the remaining

15   allegations in this paragraph, and on that basis denies them.

16       139.    Defendant admits that CBP separated Benjamin J.R. from William. Defendant lacks

17   information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and

18   on that basis denies them.

19       140.    Defendant admits that Benjamin J.R. told U.S. Border Patrol agents that he speaks

20   Spanish and no other dialect. Defendant lacks sufficient information to form a belief as to the truth of

21   the remaining allegations in this paragraph, and on that basis denies them.

22       141.    Defendant denies that Benjamin J.R. was detained for a week at Yuma Border Patrol

23   station after his apprehension. Defendant admits that the bathroom in the group holding cells did not

24   have a shower area. Defendant denies that Benjamin J.R. did not receive any personal hygiene products.

25   Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations in this

26   paragraph, and on that basis denies them.

27       142.    Defendant admits that on or about June 6, 2018, Benjamin J.R. was transported to ICE's

28   Florence Staging Facility. Defendant lacks information sufficient to form a belief as to the remaining

allegations in this paragraph, and on that basis denies them.

143.    Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

144.    Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

145.    Defendant denies Plaintiffs' characterization that ICE officials forced Benjamin J.R. to sign documents. Defendant lacks information sufficient to form a belief as to the remaining allegations and on that basis denies them.

146.    Defendant admits that Benjamin J.R. was first booked into ICE's Florence Staging Facility on or about June 6, 2018, was then transferred to the Federal Correctional Institution in Victorville on or about June 9, 2018, and was then transferred to the Adelanto ICE Processing Center on or about July 9, 2018, where he remained until he was released on or about March 18, 2019. Defendant lacks information sufficient to form a belief as to the remaining allegations.

147.    Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

148.    Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

149.    Defendant admits that on June 26, 2018, Benjamin J.R. was able to call his son William and they were able to speak on the phone for approximately fifteen minutes. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

150.    Defendant admits that William's UC Case File reflects that William was referred to ORR custody on June 3, 2018 and placed at Southwest Key Programs Casa Kokopelli (SWK), a state-licensed, ORR-funded care provider, in Mesa, Arizona, where he was admitted on June 4, 2018. On June 26, 2018, Benjamin J.R. was able to call his son William at SWK and they were able to speak on the phone for approximately fifteen minutes. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

151.    Defendant admits that William's UC Case File reflects that while William was placed at SWK, the SWK case manager and officers at the facilities where Benjamin J.R. was being detained

1  regularly scheduled weekly and often bi-weekly phone calls for Benjamin J.R. and William to speak,

2  which lasted between 10 and 20 minutes until William's release to a sponsor on November 2, 2018.

3  Defendant further avers that there were a few times when ICE called the ORR facility to connect with

4  William and there was no answer. Defendant lacks information sufficient to form a belief as to the

5  remaining allegations, and on that basis denies them.

6  152.   Defendant admits that Benjamin J.R. was booked into the Adelanto ICE Processing

7  Center on or about July 9, 2018, a contract facility. Defendant denies that the bathrooms were not

8  cleaned at the facility. Defendant further denies that Benjamin J.R. was not given sufficient food or

9  enough time to eat. Defendant lacks information sufficient at this time to form a belief as to whether

10  Benjamin J.R. was placed in a cell with two sets of bunk beds and three other men. Defendant lacks

11  information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

12  153.   Defendant lacks information sufficient to form a belief as to these allegations, and on that

13  basis denies them.

14  154.   Defendant lacks information sufficient to form a belief as to these allegations, and on that

15  basis denies them.

16  155.   Defendant admits that CBP separated Benjamin J.R. from William and referred William

17  to ORR custody on June 3, 2018. Defendant lacks sufficient information to form a belief as to the truth

18  of the remaining allegations, and on that basis denies them.

19  156.   Defendant admits that William's UC Case File reflects that William spoke both Spanish

20  and Mam while at SWK.  The SWK care providers did not record any problems understanding William,

21  and immediately upon arrival explained to William the reunification and deportation process and the

22  possibility of seeking legal relief. Defendant lacks sufficient information to form a belief as to the truth

23  of the remaining allegations, and on that basis denies them.

24  157.   Defendant admits that William's UC Case File reflects that upon William's arrival, the

25  SWK case manager explained to William the reunification and deportation process and the possibility of

26  seeking legal relief. Defendant lacks sufficient information to form a belief as to the truth of the

27  remaining allegations, and on that basis denies them.

28  158.   Defendant admits that on June 26, 2018, the federal court in *Ms. L.* granted the Plaintiffs'

motion for a class-wide preliminary injunction. Defendant admits that the *Ms. L.* court held: "This Order does not implicate the Government's discretionary authority to enforce immigration or other criminal laws, including its decisions to release or detain class members. Rather, the Order addresses only the circumstances under which the Government may separate class members from their children, as well as the reunification of class members who are returned to immigration custody upon completion of any criminal proceedings." The *Ms. L.* decision speaks for itself. Plaintiffs' allegations characterizing the *Ms. L.* decision are not statements of fact for which a response is required. To the extent a response is required, Defendant denies Plaintiffs' allegations characterizing the *Ms. L.* decision. Defendant admits on or about July 22, 2018, William was transported with a SWK escort to BCFS in Texas, to be reunified with his father; however, the reunification did not take place and William returned to SWK. Defendant lacks information sufficient to form a belief as to the remaining allegations in this paragraph, and on that basis denies them.

159.    Defendant admits on or about July 22, 2018, William was transported with a SWK escort to BCFS in Texas, to be reunified with his father; however, the reunification did not take place and William returned to SWK. Defendant lacks information sufficient to form a belief as to the remaining allegations in this paragraph, and on that basis denies them.

160.    Defendant admits on or about July 22, 2018, William was transported with a SWK escort to BCFS in Texas, to be reunified with his father; however, the reunification did not take place and William returned to SWK. Defendant lacks information sufficient to form a belief as to the remaining allegations in this paragraph, and on that basis denies them.

161.    Defendant admits on or about July 22, 2018, William was transported with a SWK escort to BCFS in Texas, to be reunified with his father; however, the reunification did not take place and William returned to SWK. Defendant lacks information sufficient to form a belief as to the remaining allegations in this paragraph, and on that basis denies them.

162.    Defendant admits that Benjamin J.R. was in ICE custody until his release from ICE custody on or about March 18, 2019. Defendant admits that on or about July 22, 2018, William was transported with a SWK escort to BCFS in Texas, to be reunified with his father; however, the reunification did not take place and William returned to SWK. Defendant avers that, on November 2,

2018, in accordance with Benjamin J.R.'s wishes, William was released to his family member, as an approved sponsor, in Oakland, California. Defendant lacks information sufficient to form a belief as to the remaining allegations in this paragraph, and on that basis denies them.

163.    Defendant denies that Benjamin J.R. never received information about where he was, where his son was, or what the process was for pursuing asylum or release from detention. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

164.    Defendant admits that Benjamin J.R. was in ICE custody until his release from ICE custody on or about March 18, 2019. Defendant admits on or about July 22, 2018, William was transported with a SWK escort to BCFS in Texas, to be reunified with his father; however, the reunification did not take place and William returned to SWK. On November 2, 2018, in accordance with his Benjamin J.R.'s wishes, William was released to his family member, as an approved sponsor, in Oakland, California. Defendant lacks information sufficient to form a belief as to the remaining allegations in this paragraph, and on that basis denies them.

165.    Defendant admits that the last recorded phone call between William, while at SWK, and Benjamin J.R., while in ICE custody, was on or about November 1, 2018, a day before William's release from ORR. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

166.    Defendant admits allegations contained in the first sentence.  Defendant further admits that the credible fear interview was conducted with Mam interpretation and admits that that the asylum officer found that Benjamin J.R. had a credible fear of persecution. Defendant lacks sufficient information to form a belief as to the remaining allegations, and on that basis denies them.

167.    Defendant admits that Benjamin J.R. was released on his own recognizance from ICE custody on or about March 18, 2019 after a $10,000 bond was posted. Defendant lacks information sufficient to form a belief as to the remaining allegations, and on that basis denies them.

168.    Defendant admits neither Benjamin J.R. nor William were ever charged with or convicted of a crime in the United States, but avers that Benjamin J.R. was referred for prosecution, and that such prosecution was declined.

169.    Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

170.    Defendant lacks information sufficient to form a belief as to these allegations, and on that basis denies them.

171.    Defendant lacks information sufficient to form a belief as to the intent of policymakers as alleged in this paragraph. Defendant denies that the purpose of the DOJ initiated Zero-Tolerance policy was as stated in this paragraph. The remaining allegations are not statements of fact but conclusions of law to which no response is required. To the extent a response is deemed required, Defendant denies the allegations in this paragraph.

172.    These allegations are not statements of fact but conclusions of law to which no response is required. To the extent a response is deemed required, Defendant denies the allegations in this paragraph.

173.    Defendant denies that it had a "Family Separation Policy." The remaining allegations are not statements of fact but conclusions of law to which no response is required. To the extent a response is deemed required, Defendant denies the allegations in this paragraph.

174.    Defendant denies that it had a "Family Separation Policy." The remaining allegations are not statements of fact but conclusions of law to which no response is required. To the extent a response is deemed required, Defendant denies the allegations in this paragraph.

175.    These allegations are not statements of fact but conclusions of law to which no response is required. To the extent a response is deemed required, Defendant denies the allegations in this paragraph.

176.    Paragraph 176 contains a citation to a CBP policy, to which no further response is required. To the extent a response is deemed necessary, Defendant admits that the partial quotes in paragraph 176 are contained within the U.S. Customs and Border Protection's *National Standards on Transport, Escort, Detention, and Search* ("TEDS") policy, dated October 2015. Defendant further responds that the citations in question speak for themselves, are best evidence of their contents, and should be read in full context. Defendant denies the rest of the allegations.

177.    Paragraph 177 contains a citation to a CBP policy, to which no further response is

required. To the extent a response is deemed necessary, Defendant admits that the partial quotes in paragraph 177 are contained within the U.S. Customs and Border Protection's *National Standards on Transport, Escort, Detention, and Search* ("TEDS") policy, dated October 2015. Defendant further responds that the citations in question speak for themselves, are best evidence of their contents, and should be read in full context. Defendant denies the rest of the allegations.

178.     These allegations are not statements of fact but conclusions of law to which no response is required. To the extent a response is deemed required, Defendant denies the allegations in this paragraph.

179.     The statements in Paragraph 179, including the numerous legal case citations, are not statements of fact but are conclusions of law to which no response is required. To the extent that an answer is required, Defendant denies these allegations.

180.     Paragraph 180 contains a citation to a CBP policy, to which no response is required. To the extent a response is deemed necessary, Defendant admits that the partial quotes in paragraph 180 are contained within the U.S. Customs and Border Protection's *National Standards on Transport, Escort, Detention, and Search* ("TEDS") policy, dated October 2015. Defendant further responds that the citations in question speak for themselves, are best evidence of their contents, and should be read in full context. Defendant admits Plaintiffs were apprehended by U.S. Border Patrol and in its custody for varying lengths of time in 2018. Defendant denies the rest of the allegations.

181.     Paragraph 181 contains a citation to a CBP policy, to which no further response should be required. To the extent a response is deemed necessary, Defendant admits that the partial quotes in paragraph 181 are contained within the U.S. Customs and Border Protection's *National Standards on Transport, Escort, Detention, and Search* ("TEDS") policy, dated October 2015. Defendant further responds that the citations in question speak for themselves, are best evidence of their contents, and should be read in full context. Defendant admits that Ignacio P.G. spoke on behalf of Leonel Y.P.G to U.S. Border Patrol agents and stated that Leonel spoke the Mam language. Defendant lacks information sufficient as to form a belief as to the truth of this statement. Defendant denies all remaining allegations.

182.     Paragraph 182 contains a citation to CBP policy, to which no further response should be required. To the extent a response is deemed necessary, Defendant admits that the partial quotes in

paragraph 182 are contained within the U.S. Customs and Border Protection's *National Standards on Transport, Escort, Detention, and Search* ("TEDS") policy, dated October 2015. Defendant further responds that the citations in question speak for themselves, are best evidence of their contents, and should be read in full context.  Additionally, Defendant admits that Plaintiffs were apprehended by U.S. Border Patrol and were detained at CBP facilities while in U.S. Border Patrol custody. To the extent the reference to the Spanish word "*hieleras*" is intended to be an allegation that the temperature of CBP facilities were impermissibly cold, Defendant denies this allegation. Defendant denies the remaining allegations.

183.    Defendant denies that it had a "Family Separation Policy." Defendant admits that the U.S. Department of Health and Human Services, Office of the Inspector General Issue Brief, titled Separated Children Placed in Office of Refugee Resettlement, dated January 2019 at page 6, reported an increase in UCs placed in ORR custody in 2017 creating operational challenges including a shortfall of available beds at state-licensed facilities for younger children. The allegation that the government ignored applicable child welfare standards in violation of mandatory duties is not a statement of fact but conclusion of law to which no response is required. The remaining allegations are denied.

184.    Defendant denies these allegations.

185.    Defendant denies that it had a "Family Separation Policy." The remaining allegations are not statements of fact but conclusions of law to which no response is required.

## CAUSES OF ACTION

## COUNT 1 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

186.    Defendant repeats and incorporates by this reference its responses to each and every allegation contained in paragraphs 1 through 185 as if set forth herein. To the extent a response is required, Defendant denies this allegation.

187.    Defendant lacks information sufficient to form a belief as to the subjective knowledge of the unidentified federal officials referenced in this paragraph. The remaining allegations are not statements of fact but conclusions of law to which no response is required. To the extent a response is required, Defendant denies this allegation.

188.    Defendant lacks information sufficient to form a belief as to the emotional states of

Plaintiffs.

189.    This allegation is not a statement of fact but a conclusion of law to which no response is required. To the extent a response is required, Defendant denies this allegation.

**COUNT 2 – NEGLIGENCE**

190.    Defendant repeats and incorporates by this reference its responses to each and every allegation contained in paragraphs 1 through 189 as if set forth herein. To the extent a response is required, Defendant denies this allegation.

191.    This allegation is not a statement of fact but a conclusion of law to which no response is required. To the extent a response is required, Defendant denies this allegation.

192.    This allegation is not a statement of fact but a conclusion of law to which no response is required. To the extent a response is required, Defendant denies this allegation.

193.    This allegation is not a statement of fact but a conclusion of law to which no response is required. To the extent a response is required, Defendant denies this allegation.

**COUNT 3 – ABUSE OF PROCESS**

194.    Defendant repeats and incorporates by this reference its responses to each and every allegation contained in paragraphs 1 through 193 as if set forth herein. To the extent a response is required, Defendant denies this allegation.

195.    This allegation is not a statement of fact but a conclusion of law to which no response is required. To the extent a response is required, Defendant denies this allegation.

196.    This allegation is not a statement of fact but a conclusion of law to which no response is required. To the extent a response is required, Defendant denies this allegation.

**COUNT 4 –NEGLIGENT SUPERVISION/BREACH OF FIDUCIARY DUTY**

197.    Defendant repeats and incorporates by this reference its responses to each and every allegation contained in paragraphs 1 through 196 as if set forth herein. To the extent a response is required, Defendant denies this allegation.

198.    This allegation is not a statement of fact but a conclusion of law to which no response is required. To the extent a response is required, Defendant denies this allegation.

199.    This allegation is not a statement of fact but a conclusion of law to which no response is

1    required. To the extent a response is required, Defendant denies this allegation.

2        200.    This allegation is not a statement of fact but a conclusion of law to which no response is

3    required. To the extent a response is required, Defendant denies this allegation.

4        201.    This allegation is not a statement of fact but a conclusion of law to which no response is

5    required. To the extent a response is required, Defendant denies this allegation.

6    **COUNT 5 – LOSS OF CONSORTIUM**

7        202.    Defendant repeats and incorporates by this reference its responses to each and every

8    allegation contained in paragraphs 1 through 201 as if set forth herein. To the extent a response is

9    required, Defendant denies this allegation.

10       203.    This allegation is not a statement of fact but a conclusion of law to which no response is

11   required. To the extent a response is required, Defendant denies this allegation.

12       204.    This allegation is not a statement of fact but a conclusion of law to which no response is

13   required. To the extent a response is required, Defendant denies this allegation.

14       205.    Defendant lacks information sufficient to form a belief as to the extent of any suffering

15   by Plaintiffs. The remaining allegations are not statements of fact but conclusions of law to which no

16   response is required. To the extent a response is required, Defendant denies these allegations.

17       206.    This allegation is not a statement of fact but a conclusion of law to which no response is

18   required. To the extent a response is required, Defendant denies this allegation.

19   **COUNT 6 – INTENTIONAL INTERFERENCE WITH CUSTODIAL RELATIONS**

20       207.    Defendant repeats and incorporates by this reference its responses to each and every

21   allegation contained in paragraphs 1 through 206 as if set forth herein. To the extent a response is

22   required, Defendant denies this allegation.

23       208.    These allegations are not statements of fact but conclusions of law to which no response

24   is required. To the extent a response is required, Defendant denies these allegations.

25       209.    Defendant lacks information sufficient to form a belief as to the extent of any suffering

26   by Plaintiffs. The remaining allegations are not statements of fact but conclusions of law to which no

27   response is required. To the extent a response is required, Defendant denies these allegations.

28       210.    This allegation is not a statement of fact but a conclusion of law to which no response is

1    required. To the extent a response is required, Defendant denies this allegation.

2                                          **PRAYER FOR RELIEF**

3           WHEREFORE, Plaintiffs seeks the relief identified in Paragraphs A to D at page 61, Defendant

4    avers as follows.

5           A.      This paragraph sets forth Plaintiffs' prayer for relief to which no response is required. To

6    the extent a response is required, Defendant denies that Plaintiffs are entitled to the requested relief.

7           B.      This paragraph sets forth Plaintiffs' prayer for relief to which no response is required. To

8    the extent a response is required, Defendant denies that Plaintiffs are entitled to the requested relief.

9           C.      This paragraph sets forth Plaintiffs' prayer for relief to which no response is required. To

10   the extent a response is required, Defendant denies that Plaintiffs are entitled to the requested relief.

11          D.      This paragraph sets forth Plaintiffs' prayer for relief to which no response is required. To

12   the extent a response is required, Defendant denies that Plaintiffs are entitled to the requested relief.

13                                 **AFFIRMATIVE AND OTHER DEFENSES**

14          1.      The Court lacks subject matter jurisdiction over Plaintiffs' claims.

15          2.      Plaintiffs' claims are barred to the extent that they are based on the exercise or

16   performance or the failure to exercise or perform a discretionary function or duty. 28 U.S.C. § 2680(a).

17          3.      Plaintiffs' claims are barred to the extent that they are based on the execution of federal

18   statutes or regulations. 28 U.S.C. § 2680(a).

19          4.      Plaintiffs have failed to state a claim on which relief may be granted in whole or in part.

20          5.      The United States, through employees, did not owe a legal duty to Plaintiffs.

21          6.      The United States, through employees, did not breach a legal duty owed to Plaintiffs

22          7.      The United States has waived its sovereign immunity only for the actions of "employees

23   of the government" as defined in 28 U.S.C. § 2671.

24          8.      Acts or omissions of the United States, through employees, were not the proximate cause

25   of injury to Plaintiffs.

26          9.      In the event the United States is found to have been negligent or otherwise wrongful,

27   which negligence or wrongful conduct is denied, the superseding and intervening negligence or

28   wrongful conduct of third parties, for whom the United States cannot be held liable, broke any causal

1    connection between the United States' negligence or wrongful conduct and Plaintiffs' alleged injuries,

2    cutting off the legal effect of the United States' negligence or wrongful conduct.

3        10.    Plaintiffs' recovery of damages, if any, is limited by federal and applicable state law.

4        11.    Plaintiffs' recovery against the United States, if any, is limited to the amount stated in

5    timely and properly presented administrative claims. 28 U.S.C. § 2675(b). To the extent Plaintiffs have

6    not timely or properly presented administrative tort claims, or seek relief different from, or in excess of,

7    that set forth in a timely and properly filed administrative tort claim, Plaintiffs have not exhausted their

8    administrative remedies.

9        12.    Plaintiffs may not recover punitive damages, non-monetary damages, or pre-judgment

10   interest under the Federal Tort Claims Act. 28 U.S.C. § 2674.

11       13.    To the extent the Court enters a money judgment against the United States, Plaintiffs are

12   entitled to post-judgment interest only in accordance with the provisions of 28 U.S.C. § 1961(b) and 31

13   U.S.C. § 1304(b).

14       14.    Plaintiffs' claims are barred by any exception to or limitation on the United States'

15   waiver of sovereign immunity.

16       15.    Under the FTCA, the United States only may be held liable in the same manner and to the

17   same extent as a private individual under like circumstances. 28 U.S.C. § 2674.

18       16.    To the extent that there are persons who were comparatively at fault, whether or not they

19   are currently parties to this lawsuit, principles of comparative fault apply, and liability must be

20   apportioned or any judgment reduced as set forth under applicable state law.

21       17.    Plaintiffs' claims are barred or diminished by Plaintiffs' failure to mitigate damages.

22       18.    Plaintiffs' claims are barred to the extent they are based on misrepresentations. 28 U.S.C.

23   § 2680(h).

24       19.    The United States specifically reserves the right to raise additional affirmative defenses

25   which become evident through discovery, and to amend its Answer to raise any affirmative defense –

26   including, but not limited to, those identified by Federal Rule 8(c) – not currently known and/or which it

27   may have or through discovery learn may be applicable. asserts that it has, or may have, additional

28   affirmative defenses that are not known to the United States at this time but may be ascertained through

1   discovery.

2   **<u>JURY DEMAND</u>**

3   Defendant demands a trial by jury on any claim so triable.

4   **<u>PRAYER FOR RELIEF</u>**

5   WHEREFORE, Defendant prays that:

6   1.      Plaintiffs take nothing by their Complaint;

7   2.      The Complaint be dismissed with prejudice;

8   3.      Judgment be entered in favor of Defendant;

9   4.      Defendant be awarded its costs of suit;

10  5.      The Court award such other and further relief as it may deem proper.

11

12

13  Dated: April 12, 2023                                Respectfully submitted,

14                                                       ISMAIL J. RAMSEY
                                                         United States Attorney
15
                                                          /s/ *Kelsey J. Helland*
16                                                       Kenneth Brakebill
                                                         Kelsey J. Helland
17                                                       Assistant United States Attorneys

18                                                       Counsel for Defendant

19

20

21

22

23

24

25

26

27

28