| | |
|---|---|
| PILLSBURY WINTHROP SHAW PITTMAN LLP<br>BLAINE I. GREEN (SBN 193028)<br>blaine.green@pillsburylaw.com<br>DUSTIN CHASE-WOODS (SBN 318628)<br>dustin.chasewoods@pillsburylaw.com<br>Four Embarcadero Center, 22nd Floor<br>San Francisco, CA 94111-5998<br>Telephone:     415.983.1000<br>Facsimile:     415.983.1200 | LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA<br>BREE BERNWANGER (SBN 331731)<br>bbernwanger@lccrsf.org<br>VICTORIA PETTY (SBN 338689)<br>vpetty@lccrsf.org<br>131 Steuart Street #400<br>San Francisco, CA 94105<br>Telephone:     415.814.7631 |

Attorneys for Plaintiffs Eduardo I.T.; Edwin E.I.I.; Ignacio P.G.; Leonel Y.P.G., a minor child; Benjamin J.R.; and William A.J.M.

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
KENNETH W. BRAKEBILL (CABN 196696)
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorneys
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7167
Fax: (415) 436-6748
kenneth.brakebill@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EDUARDO I.T., EDWIN E.I.I., Ignacio P.G., Leonel Y.P.G., a minor child, Benjamin J.R., and William A.J.M.,<br><br>       Plaintiffs,<br><br>       vs.<br><br>UNITED STATES OF AMERICA,<br><br>       Defendant. | Case No. 4:22-cv-05333-DMR<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Honorable Donna M. Ryu<br><br>Initial Case Management Conference: May 17, 2023 |

The parties to the above-captioned action jointly submit this INITIAL CASE MANAGEMENT STATEMENT pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9:

**1. Jurisdiction and Service**

Plaintiffs bring this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*. There are no issues regarding personal jurisdiction, venue, or service, known at this time. Defendant has been served.

Defendant asserts that the Court lacks subject-matter jurisdiction for the reason that Congress has not waived the federal government's sovereign immunity from claims for money damages in the circumstances presented in this case.

**2. Facts**

Plaintiffs' statement[1]:

The following facts are taken from the complaint. In early March 2017, the United States began considering a policy that would separate families entering the United States to deter parents from migrating with their children. Compl. ¶ 25. Soon after, the United States piloted a family separation policy in Texas (the "Pilot Program"). *Id.* ¶ 26. Under the Pilot Program, federal immigration officials separated families arriving in Texas "to pressure migrant parents into foregoing their asylum claims and accepting deportation." *Id*. This was a deviation from the United States' longstanding policy of keeping families together. *Id*. ¶ 23. The Pilot Program resulted in the separation of at least 280 families. *Id*. ¶ 32.

On April 6, 2018, the United States effectively adopted the Pilot Program across the entire border. Compl. ¶ 44. This effort was formally announced by former Attorney General Jeff Sessions in a memo titled "Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a)" (the "Zero Tolerance Policy"). *Id*. The Zero Tolerance Policy targeted parents crossing the border for prosecution and then used their prosecution as a pretext to designate their children as "unaccompanied." *Id*. As unaccompanied minors ("UACs"), children could then be sent to and detained in Health and Human Services facilities away from their parents. *Id*.

---

[1] Duplicated from the Court's order on Defendant's motion to dismiss. ECF 30.

The United States' family separation policy extended beyond the scope of the Zero Tolerance Policy—federal agents separated children from parents who were being prosecuted for illegal entry, as well as from parents who were never prosecuted. Compl. ¶ 52. More than 15 percent of all parents separated from children under the family separation policy were not referred for prosecution, including two of the Plaintiff families. *Id*. When parents were prosecuted, the United States kept families separated even after the parent served a cursory sentence like Plaintiff Ignacio P.G.'s "time served" sentence for misdemeanor "illegal entry." Opp'n at 4, n.4 (acknowledging that the Complaint incorrectly states that Ignacio P.G. was not prosecuted (see Compl. ¶ 123)).

The family separation policy was revoked by executive order in June 2018. Compl. ¶ 58. While it was in effect, the United States forcibly separated at least 5,648 children from their parents. *Id*. ¶ 60. Because the goal of the family separation policy had been to separate families, the United States did not have systems in place to allow for reunification. *Id*.

Plaintiffs are three father-son pairs who were separated by federal immigration officials in May and early June 2018, when they entered the United States to seek asylum. Compl. ¶ 66. Shortly after crossing the border into Arizona, Plaintiffs were apprehended by U.S. Customs and Border Protection ("CBP") Border Patrol Agents and taken to CBP facilities in Arizona where they were forcibly separated. Id. ¶¶ 68-71; 106-112; 127-133.

After being separated from their parents, the Plaintiff children were placed in the custody of the Office of Refugee Resettlement ("ORR"). Compl. ¶¶ 79, 121, 150. Sixteen-year-old Edwin E.I.I. was separated from his father for nearly 15 weeks (Compl. ¶ 71); six-year-old Leonel Y.P.G. was separated from his father for nearly two months (Compl. ¶ 121); and fifteen-year-old William A.J.M. was separated from his father for over nine months (Compl. at 42:10-11).

Plaintiffs suffered various harms while in custody: they were forced into contact with human waste (Compl. ¶¶ 72, 114, 136, 138, 152); deprived of the ability to wash or bathe (Compl. ¶¶ 73, 75, 86, 87, 115, 122, 141); deprived of food and potable water (Compl. ¶¶ 68, 73, 75, 85, 86, 114, 117, 129, 136, 152); deprived of medical or mental health care (Compl. ¶¶ 80-82, 86, 117, 122); and forced to sign documents they could not understand (Compl. ¶¶ 91, 99, 106, 108, 131, 144, 145) because they did not speak English and were not provided with Mam- or Q'eqchi'- speaking interpreters (Compl. ¶¶ 88, 91,

108, 117, 121, 130-32, 144).

All Plaintiffs now reside in Oakland, California (Compl. ¶¶ 100, 122, 167), where they continue to suffer lasting effects related to their forcible separation. (Compl. ¶¶ 103-04, 124-25, 169).

Defendant's statement:

Defendant denies that there was a family separation policy. Defendant admits that in 2018, the United States implemented a Zero-Tolerance policy which directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." Defendant further admits that On May 4, 2018, Secretary Nielsen approved Option 3 - to refer all amenable adults who unlawfully cross the Southwest border for criminal prosecution - of the DHS Referral Memorandum entitled "Increasing Prosecutions of Immigration Violations." Defendant further admits that some families were separated at the United States–Mexico border during the implementation timeframe for the Zero-Tolerance policy, and some children were classified as Unaccompanied Children ("UCs") and referred to the Office of Refugee Resettlement ("ORR") for placement with an ORR-funded care provider. Defendant contends that federal law required that children be placed into ORR custody once the children were classified as UCs. Defendant denies that the Zero-Tolerance policy was a pretext to justify separation of a child from the child's parent or that such a policy was implemented "to pressure migrant parents into foregoing their asylum claims and accepting deportation." Defendant admits that the three Plaintiff families in this action were separated in May and June 2018.

**3. Legal Issues**

Plaintiffs assert six causes of action under applicable state tort law for intentional infliction of emotional distress, negligence, abuse of process, negligent supervision/breach of fiduciary duty, loss of consortium, and intentional interference with custodial relations arising out of Plaintiffs' separation after crossing into the United States. ECF No. 1 ¶¶ 186-210. Plaintiffs claim that they suffered extreme emotional distress when they were separated, during their separation and after they were reunified. *Id*. ¶ 2. Defendant denies that Plaintiffs are entitled to the requested relief and asserts various defenses, including that Plaintiffs' claims are barred to the extent that they are based on the exercise or performance, or the failure to exercise or perform, a discretionary function or duty. ECF No. 35 at 39-

40.

Accordingly, the parties believe the Court may be called upon to resolve a number of legal issues, including but not limited to: (1) whether Defendant intentionally inflicted emotional distress upon Plaintiffs; (2) whether Defendant breached any duties of care to Plaintiffs that proximately caused them damages; (3) whether Defendant abused judicial process in the conduct of proceedings against Plaintiffs; (4) whether Defendant breached a fiduciary duty in its supervision of, or negligently supervised, Plaintiff children, thereby proximately causing them damage; (5) whether Plaintiffs suffered a loss of consortium; (6) whether Defendant intentionally interfered with Plaintiffs custody over their children, thereby causing them harm (7) whether Plaintiffs' claims are barred by the discretionary function exception to the FTCA; (8) whether Plaintiffs' claims are barred by the FTCA's exception for actions taken while reasonably executing the law; and (9) whether Plaintiffs' claims are barred because the challenged government actions have no private-person analogue.

**4. Motions**

On November 23, 2022, Defendant filed a Motion to Transfer; Motion to Dismiss, which the parties fully briefed. ECF Nos. 17, 22, 27. The Court denied Defendant's motions on February 24, 2023. ECF No. 30. The parties have met and conferred and at this time do not have any immediate plans for further motion practice before summary judgment motions.

**5. Amendments to the Pleadings**

The parties do not anticipate any amendments to the Complaint or Answer at this time.

**6. Evidence Preservation**

The parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. Defendant acknowledges its duty to preserve relevant materials in accordance with applicable rules and case law.

**7. Disclosures**

The parties have met and conferred as part of their Rule 26 obligations and agreed as follows. First, the parties will have an initial disclosure exchange on June 7, 2023. Second, the parties agreed to a

90-day document disclosure period ("90-Day Disclosure Period"), commencing on the date of the Court's initial case management conference, during which the parties will make rolling document productions. During the 90-Day Disclosure Period, Defendant will produce: (1) Common Discovery, defined to be all documents that it disclosed or otherwise produced in *A.P.F. et al. v. United States*, Civil Action No. 20-cv-00065-PHX-SRB (D. Ariz.), and *C.M. v. United States*, Civil Action No. 19-cv-05217-PHX SRB (D. Ariz.), that are not specific to the plaintiffs in those two actions, and (2) documents that specifically relate to Plaintiffs in this case. Plaintiffs will produce documents specifically relating to their allegations in this case. The aforementioned documents that the parties agree to produce include the following topics:

<u>Documents to be produced by Defendant</u>

- All Common Discovery documents produced in *A.P.F.* and *C.M.* bearing their original Bates stamps, including, but not limited to documents related to:
    - The creation, development and implementation of the Zero-Tolerance policy (with particular emphasis on application of the Zero-Tolerance policy to adults traveling with family units)
    - The creation, development, and implementation of the DHS Referral Policy (with particular emphasis on application of the DHS Referral Policy to adults traveling with family units)
    - Designation of children as UACs when being separated from a parent while in Border Patrol custody
    - ORR placement of UACs after being separated from a parent while in Border Patrol custody
    - Tracking of UACs and establishing communication with parents after being separated while in Border Patrol custody
    - Policies or procedures of CBP, ICE and HHS concerning separation, detention during separation, or reunification
- The deposition transcripts of the 15 "policy related" witnesses deposed in *C.M.* and *A.P.F.*, consisting of: Kevin McAleenan, Chad Wolf, Thomas Homan, Robert Gaudian, Commander Jonathan White, Tracy Short, Ronald Vitello, Gene Hamilton, John Bash, Matthew Albence, Mellissa Harper, Michael Dougherty, James McCament, Brian Hastings, and Tricia Swartz
- The orders in *C.M.* and *A.P.F.* subject to the court's grant of Defendant's unopposed motion in those cases to share certain sealed discovery orders with other litigants in family separation FTCA cases (*see C.M.*, 2:19-cv-05217 ECF No. 363)
- Plaintiff specific documents, including:

- o Each Plaintiff's Alien File ("A-File") existing as of the date of its disclosure for purposes of this 90-Day Disclosure Period and subject to updated disclosures at least two weeks before deposition of any Plaintiff for that particular Plaintiff (if any changes have occurred in the A-File since the previous disclosure) and an additional updated disclosure prior to the close of fact discovery (if any changes have occurred since the previous disclosure).

- o For each Plaintiff, his/her I-213s, CBP subject activity logs, and any transfer or detention records

- o For each child Plaintiff, his/her ORR UC case file

<u>Documents to be produced by Plaintiffs</u>

- Any records received or maintained by each Plaintiff concerning his respective apprehensions, detentions, separations, reunifications and injuries therefrom, including but not limited to journals, diaries or similar writings/drawings

- Medical and mental health records of each Plaintiff concerning his alleged emotional distress or other injuries, including any documents concerning counseling, therapy or doctor visits, treatment through other service providers, medication, prescriptions, and any billing or receipts

- Any educational records for the Plaintiff children since their release from ORR custody

- Any records documenting employment, paid or unpaid work or any volunteer activities of the Plaintiff fathers since their release from ICE custody

- Any written correspondence or records relating to contact between Plaintiffs while they were in government custody

Disclosure of documents is dependent on the execution of privacy waivers by each Plaintiff and an appropriate protective order. The parties will refrain from serving further discovery requests until after the 90-day Disclosure Period. Following the Period, the parties may seek further discovery, documentary or otherwise, in accordance with Federal Rule of Civil Procedure 26. If Defendant produces new documents in *C.M.* or *A.P.F.* responsive to the above-mentioned Common Discovery document categories, or produces new versions of such documents with redactions removed from previously-redacted material, Defendant will supplement its production to Plaintiffs in this matter, including after the conclusion of the 90-Day Disclosure period.

    The parties agree to effectuate service of disclosures, any future discovery requests and responses, and document productions electronically between counsel of record for the parties, with any documents exchanged bearing unique bates-stamping numbering on each page.

///

**8. Discovery**

In their Rule 26(f) meet and confer, the parties discussed the subject of discovery and made the following agreements.

First, the parties agreed upon a discovery plan involving a close of fact discovery in approximately 16 months, to be followed by a period for expert discovery and then dispositive motions. The parties have agreed to the specific schedule listed in Section 16 below.

Second, the parties agreed that the time period to serve written and/or other discovery under the Federal Rules of Civil Procedure shall commence the day following completion of the 90-Day Disclosure Period. The parties' agreement to the 90-Day Disclosure Period shall not prejudice any party's right to propound discovery requests, nor shall participation in the 90-Day Disclosure Period relieve any party of its obligations under the Federal Rules of Civil Procedure.

Finally, the parties discussed the entry of an appropriate protective order that would permit the parties to make the document disclosures and discovery contemplated by their plan. The parties will submit a modified version of the Model Protective Order.

**9. Class Actions**

This case is not a class action.

**10. Related Cases**

None to report.

**11. Relief Sought**

Plaintiffs' Complaint seeks the following relief: compensatory damages, punitive damages, attorney's fees and costs, and "[s]uch other and further relief as the Court deems just."

Defendant's Answer seeks the following relief: that Plaintiffs take nothing by their Complaint; the Complaint be dismissed with prejudice; judgment be entered in favor of Defendant; Defendant be awarded its costs of suit; and the Court award such other and further relief as it may deem proper.

**12. Settlement and ADR**

In 2021, the government engaged in negotiations to globally settle district court cases and pending administrative tort claims arising from family separations at the U.S.-Mexico border. Neither the Plaintiffs in this case nor their counsel were part of those negotiations. No settlement was reached.

In their Rule 26(f) conference, the parties discussed prospects for ADR and settlement. Plaintiffs believe that the basic facts about the Plaintiffs' arrests, separations, detentions, and harms inflicted in general as a result, as well as the Family Separation Policy, are understood by all parties, even prior to discovery. Accordingly, Plaintiffs believe that it is not too early for the parties to engage in settlement discussions.

Defendant believes that it would be premature to engage in an ADR event at this time. Defendant disagrees that the "basic facts" about Plaintiffs' injuries are understood by all parties, and further avers that any settlement discussions would have a significantly greater likelihood of success following the Court's rulings on the expected motions for summary judgment in this matter. Defendant therefore submits that any ADR event should not be scheduled until after the parties are able to conduct fulsome discovery, including fact discovery, completion of medical examinations of Plaintiffs and expert discovery, and the Court rules on the parties' expected summary judgment motions.

**13. Other References**

None.

**14. Narrowing of Issues**

The parties agreed to meet and confer as necessary to narrow the issues in the case.

**15. Expedited Trial Procedure**

None suggested at this time.

**16. Scheduling**

The parties have discussed and agreed upon the following schedule, subject to the Court's availability and discretion:

| Event | Plaintiffs' Proposal | Defendant's Proposal |
|---|---|---|
| Exchange of Initial Disclosures | June 7, 2023 | June 7, 2023 |
| Completion of 90-Day Disclosure Period | August 15, 2023 | August 15, 2023 |
| Close of Fact Discovery | June 17, 2024 | September 13, 2024 |
| Initial Expert Disclosures | July 3, 2024 | September 27, 2024 |
| Rebuttal Expert Disclosures | July 31, 2024 | October 25, 2024 |

| Event | Plaintiffs' Proposal | Defendant's Proposal |
|---|---|---|
| Close of Expert Discovery | August 16, 2024 | November 22, 2024 |
| Deadline to move for summary judgment | September 13, 2024 | February 6, 2025 |
| Deadline to file opposition to motion for summary judgment | October 18, 2024 | March 6, 2025 |
| Deadline to file reply to motion for summary judgment | November 13, 2024 | April 3, 2025 |
| Hearing on Dispositive Motions | December 5, 2024 | May 22, 2025 |
| Pre-trial conference | February 10, 2025 | October 8, 2025 |
| First day of trial | February 17, 2025 | October 20, 2025 |

**17. Trial**

Plaintiffs and Defendant agree that claims brought under the FTCA are tried by the Court.

At this stage in the case, Plaintiffs estimate that trial will take between 6-8 court days and will update this estimate, if needed, at subsequent CMCs.

Defendant believes it is premature to estimate the number of days required for trial, given the uncertainty as to the number of legal issues, claims and defenses that could be at issue in a trial depending on the outcome of summary judgment.

**18. Disclosure of Non-Party Interested Entities or Persons**

Plaintiff is unaware of any non-party interested entities or persons.

Defendant is exempt from this requirement as a federal government entity.

**19. Professional Conduct**

The parties' counsel have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20. Such Other Matters As May Facilitate Just, Speedy and Inexpensive Resolution**

None.

Dated: May 10, 2023                                   Respectfully submitted,


ISMAIL J. RAMSEY
United States Attorney

 /s/ Kelsey J. Helland
Kenneth Brakebill
Kelsey J. Helland
Assistant United States Attorneys

*Counsel for Defendant*


PILLSBURY WINTHROP SHAW PITTMAN, LLP

/s/ Dustin Chase-Woods
Blaine I. Green
Dustin Chase-Woods

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA

/s/ Victoria Petty
Bree Bernwanger
Victoria Petty

*Counsel for Plaintiffs*

**[PROPOSED] ORDER**

Pursuant to Stipulation, and good cause appearing, IT IS SO ORDERED that the above JOINT CASE MANAGEMENT STATEMENT and the below discovery and dispositive motion schedule is approved as the Case Management Order for this case and all parties shall comply with its provisions.

| Event | Proposed Date |
| --- | --- |
| Exchange of Initial Disclosures | June 7, 2023 |
| Completion of 90-Day Disclosure Period | August 15, 2023 |
| Close of Fact Discovery (including completion of independent medical examinations of Plaintiffs) | June 17, 2024 / September 13, 2024 |
| Initial Expert Disclosures | July 3, 2024 / September 27, 2024 |
| Rebuttal Expert Disclosures | July 31, 2024 / October 25, 2024 |
| Close of Expert Discovery | August 16, 2024 / November 22, 2024 |
| Deadline to move for summary judgment | September 13, 2024 / February 6, 2025 |
| Deadline to file opposition to motion for summary judgment | October 18, 2024 / March 6, 2025 |
| Deadline to file reply to motion for summary judgment | November 13, 2024 / April 3, 2025 |
| Hearing on Dispositive Motions | December 5, 2024 / May 22, 2025 |
| Pre-trial conference | February 10, 2025 / October 8, 2025 |

| Event | Proposed Date |
|---|---|
| First day of trial | February 17, 2025 / October 20, 2025 |

Dated: _____

                         _____
                         HONORABLE DONNA M. RYU
                         Chief Magistrate Judge, U.S. Magistrate Court