1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PILLSBURY WINTHROP SHAW PITTMAN LLP
BLAINE I. GREEN (SBN 193028)
blaine.green@pillsburylaw.com
DUSTIN CHASE-WOODS (SBN 318628)
dustin.chasewoods@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:       415.983.1000
Facsimile:       415.983.1200

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
JORDAN WELLS (SBN 326491)
jwells@lccrsf.org
VICTORIA PETTY (SBN 338689)
vpetty@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:     415.814.7631

Attorneys for Plaintiffs Eduardo I.T.; Edwin E.I.I.;
Ignacio P.G.; Leonel Y.P.G., a minor child; Benjamin
J.R.; and William A.J.M.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EDUARDO I.T., EDWIN E.I.I., Ignacio P.G., Leonel Y.P.G., a minor child, Benjamin J.R., and William A.J.M., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 4:22-cv-05333-DMR <br><br> **[UNOPPOSED] MOTION TO APPROVE SETTLEMENT INVOLVING CLAIMS OF A MINOR** <br><br> Honorable Donna M. Ryu <br><br> Trial Date: March 5, 2025 |

MOT. TO APPROVE SETTLEMENT INVOLVING CLAIMS OF A MINOR
CASE NO.:  4:22-CV-05333-DMR                1

## I.    INTRODUCTION

Leonel Y.P.G., a minor child, and his father, Ignacio P.G. ("P.G. Plaintiffs"), filed an action against the United States under the Federal Tort Claims Act ("FTCA"), seeking damages for the harms they suffered as a result of the federal government's family separation policy when they entered the country in 2018. The United States has stipulated to a compromise settlement release of all claims.

Pursuant to Fed. R. Civ. P. 17, the P.G. Plaintiffs move this Court for approval of the proposed settlement on behalf of the minor plaintiff, Leonel Y.P.G. Defendant has been notified of this motion and does not oppose the relief sought herein.

## II.    BACKGROUND OF MINOR'S CLAIMS[1]

Plaintiff Leonel Y.P.G. was six years old when he fled Guatemala with his father, Ignacio P.G., to seek asylum in the United States. Dkt. 68, Compl. at ¶ 105. They entered the United States on or about May 18, 2018, near San Luis, Arizona. *Id.* at ¶ 106. Shortly after they crossed the border, they encountered U.S. Customs and Border Protection (CBP) officers who apprehended them and took them to a CBP facility in Yuma, Arizona known as "hielera," or "ice box," because of its frigid temperatures. *Id.* at ¶¶ 107-08.

After waiting for what felt like hours, CBP officers presented Ignacio with papers to sign in Spanish, a language he did not understand or read well enough to understand the documents. *Id.* at ¶ 108. No one explained the documents to him or provided him with an interpretation, but he felt pressure to sign, so he did. *Id.* After about an hour, Ignacio and Leonel were sent to cells in separate rooms. *Id.* at ¶ 109.

The next morning, the CBP agents told Ignacio that they would be taking Leonel away and that he needed to come tell Leonel not to cry. *Id.* at ¶ 111. Ignacio tried to voice his concern to the agents, explaining that Leonel was too small, that he did not speak Spanish, and that he would not be able to communicate without his father, but the agents told him that Leonel would be taken to another state. *Id.* Ignacio explained to Leonel that the agents were taking Leonel away, and both father and son cried as Leonel was taken away. *Id.* Unbeknownst to Ignacio and Leonel, Leonel was detained in Office of

---

[1] This section is based on the allegations as pled in the Complaint. *See generally* Dkt. 68.

1   Refugee Resettlement (ORR) custody in Harlingen, Texas. *Id.* at ¶ 121.

2       Leonel did not see his father until nearly two months later and when reunited, neither father nor

3   son recognized the other due to the abysmal conditions they both faced. *Id.* at ¶ 122. Following his

4   detention, Leonel was malnourished, depressed, filthy, and had a head full of lice. *Id.* Even following

5   reunification with his father, Leonel experienced issues with sleeping, depression, and his appetite. *Id.* at

6   ¶ 125.

7       The separation of Ignacio and Leonel was carried out pursuant to the Department of Justice's

8   Zero Tolerance policy, devised to deter Central American asylum seekers at the border through

9   systematic family separation. *Id.* at ¶ 44. Under that policy, immigration officials would separate the

10  parent from the child and then designate the child an "unaccompanied minor," detaining the minor in

11  HHS facilities far away from where their parents were being held. *Id.*

12                          **III.    LEGAL BACKGROUND**

13      "District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to

14  safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th

15  Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty

16  requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best

17  interests of the minor.'" *Id.* (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)). Upon

18  a showing that "the net recovery to each minor plaintiff is fair and reasonable in light of their claims and

19  average recovery in similar cases, the district court should approve the settlement as proposed by the

20  parties." *Id.* at 1182.

21                          **IV.    SETTLEMENT OFFER**

22      On September 20, 2022, the P.G. Plaintiffs jointly filed this action (alongside similarly-situated

23  Plaintiffs) for damages under the FTCA because their claims involve the same set of facts. Dkt. 68.

24  Specifically, they alleged that Defendant's conduct constituted torts of intentional infliction of emotional

25  distress, negligence, abuse of process, negligent supervision/breach of fiduciary duty, loss of

26  consortium, and intentional interference with custodial relations. Dkt. 68, Compl. at ¶¶ 186-210. The

27  P.G. Plaintiffs sought damages for the severe harm they both suffered as a result of their unlawful

28  separation. Dkt. 68.

1    Following filing, Defendant moved to transfer venue or alternatively to dismiss Plaintiffs' case.

2    Dkt. 17. On February 24, 2023, the Court denied Defendant's motion. Dkt. 30 (Order amended Feb. 27,

3    2023, Dkt. 31). The parties subsequently agreed to a scheduling order and began discovery in June 2023.

4    Dkt. 46. Following settlement discussions, the Court granted a joint request to vacate all deadlines and

5    stay this action as to the P.G. Plaintiffs.[2] Dkt. 75.

6    While the United States does not admit liability, Defendant has offered to settle the P.G.

7    Plaintiffs' claims, and the parties reached an agreement to a proposed settlement in August 2024. *See*

8    Declaration of Dustin Chase-Woods ("Chase-Woods Decl.") filed herewith, Exhibit A thereto (proposed

9    settlement terms). Under the proposed settlement, the United States will settle and compromise all of the

10   P.G. Plaintiffs' claims for a total of $270,000, paid into Pillsbury's IOLTA, which Pillsbury will

11   promptly split equally between the P.G. Plaintiffs (i.e., Leonel Y.P.G. will receive $135,000). *Id.* at ¶ 3;

12   *see also* Chase-Woods Decl., ¶ 4.

13   The settlement is fair, reasonable, and in the best interests of Leonel Y.P.G.. *See* Chase-Woods

14   Decl. at ¶¶ 5-7; *see also A.I.I.L. et al. v. United States,* Civil Action No. 19-cv-00481-TUC-JCH (D.

15   Ariz.), Dkt. 133, 134 (approving lower settlement amounts for similarly situated plaintiffs separated at

16   the southern border).

17                          **V.    FEES AND COSTS**

18   Although the proposed settlement limits any attorneys' fees owed by the P.G. Plaintiffs relating

19   to this matter to a maximum of 25% of the settlement amount (consistent with 28 U.S.C. § 2678) (see

20   Chase-Woods Decl., Ex. A at ¶ 3.d.), Plaintiffs' counsel will not be taking any part of the settlement

21   amount, either as fees or reimbursement for costs. Chase-Woods Decl., ¶ 8.

22                       **VI.    APPLICATION OF PROCEEDS**

23   Ignacio P.G., who has been appointed *guardian ad litem* for his son Leonel Y.P.G. (see Dkt. 21),

24   is in agreement with the settlement to avoid further litigation that would require Ignacio and Leonel to

25   relive their separation and result in the re-traumatization of Leonel and himself; therefore, Ignacio

26   believes the settlement is in the best interest of Leonel. Chase-Woods Decl., ¶ 6.

27

28
---
[2] The Court granted a similar stay for the other plaintiffs on June 6, 2024. Dkt. 77.

It is proposed that settlement funds owed to Leonel ($135,000) be placed into a blocked, interest-bearing account belonging solely to Leonel, which, pursuant to this Court's order, he will be able to access upon his eighteenth birthday. *Id.* at ¶ 9. Pillsbury will arrange to set up the account once the settlement funds are received into its IOLTA. *Id.*

### VII.    REQUEST FOR APPROVAL OF SETTLEMENT

Based on all of the foregoing, Plaintiffs request that the Court enter an order as follows:

1.    Approving the settlement offer set forth above;

2.    Directing disbursement of settlement funds as set forth above; and

3.    Providing further relief as the Court may deem just and proper.


Dated:   September 10, 2024                    Respectfully submitted,

                                               PILLSBURY WINTHROP SHAW PITTMAN LLP

                                                */s/ Dustin Chase-Woods*
                                               Blaine I. Green
                                               Dustin Chase-Woods

                                               LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA
                                               Jordan Wells
                                               Victoria Petty

                                               *Counsel for Plaintiffs*